IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 24-90468 (ARP) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING, EFFECTIVE
*NUNC PRO TUNC* TO THE PETITION DATE, (A) THE
REJECTION OF CERTAIN UNEXPIRED LEASES AND (B) ABANDONMENT
OF CERTAIN PERSONAL PROPERTY, AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by this Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within 21 days from the date this Motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within 21 days from the date this Motion was filed. Otherwise, this Court may treat the pleading as unopposed and grant the relief requested.**
>
> **COUNTERPARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND CORRESPONDING LEASES ON THE REJECTION SCHEDULE ATTACHED TO THE ORDER AS SCHEDULE 1.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2] A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion are set forth in greater detail in the *Declaration of Joe Marinucci, Co-Founder and Chief Executive Officer of Digital Media Solutions, Inc. and Certain of its Affiliates, in Support of Chapter 11 Filing and First Day* (the "First Day Declaration"), filed contemporaneously with the filing of this Motion and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing, effective *nunc pro tunc* to the Petition Date (as defined herein), (i) the rejection of certain unexpired leases, including any guaranties thereof and any amendments, modifications, subleases, termination agreements, or other ancillary documents thereto (each, a "Lease"), identified on Schedule 1 to the Order (the "Rejection Schedule") and (ii) the abandonment of certain equipment, fixtures, furniture, or other personal property, as applicable (collectively, the "Personal Property") that may be located at the premises (the "Premises") of each Lease listed on the Rejection Schedule; and (b) granting related relief.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by this Court.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The bases for the relief requested herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. § 101–1532 (the "Bankruptcy Code") and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5. On September 11, 2024 (the "Petition Date"), the Debtors commenced filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have filed a

2

motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## Leases to Be Rejected

6.  In the lead up to these chapter 11 cases, the Debtors, with the assistance of their advisors, undertook a comprehensive review of their Leases to identify those that are no longer necessary for the Debtors' operations or that are otherwise burdensome on the Debtors' estates. The Leases on the Rejection Schedule fall into one or both of those categories and include the following:

(a) ***West Conshohocken Lease***. On June 7, 2019, DMS LLC entered into a Lease with AREP 1 FF Owner LP ("AREP"), pursuant to which the Debtors lease office space at 200 Four Falls Corporate Center, Suite 225, 1001 Conshohocken State Road, West Conshohocken, Pennsylvania 19428. The Debtors previously used the leased Premises as office space before vacating the Premises on or before September 10. Additionally, the Lease expires on November 7, 2024, and the Debtors do not plan to renew the Lease term. Accordingly, the Debtors determined that it is no longer necessary or desirable to maintain this Lease for the brief remainder of the Lease term during the postpetition period. Rejection of this Lease will reduce potential administrative expenses in these chapter 11 cases.

(b) ***Memphis Lease***. On March 9, 2018, Crisp Marketing, LLC ("Crisp") entered into a Lease with MalmoMemphis Real Estate Inc. ("Malmo"), pursuant to which Malmo leased office space to Crisp at 3839 Forest Hill Irene, Suite 105, Memphis, Tennessee 38125. The Lease expires on April 30, 2025. Crisp operated at the leased Premises prior to the Debtors' purchase of certain assets from Crisp in 2021. Pursuant to this transaction, the Debtors assumed certain lease obligations from Crisp, but dispute the assumption of other obligations asserted by Malmo in connection with this transaction. As of the Petition Date, the Debtors do not occupy the Premises and seek to formally reject the Lease. Rejection of this Lease will provide clarity on a go-forward basis with respect

to the Debtors' obligations under the Lease and reduce potential administrative expenses asserted against the Debtors by Malmo in these chapter 11 cases.[3]

(c)  **San Diego Master Lease**.  On February 20, 2019, Debtor UE Authority Co. entered into a Lease with 225 Broadway LLC, pursuant to which 225 Broadway LLC leased office space to Debtor UE Authority Co. at 225 Broadway, Suite 2200, San Diego, California 92101.  The Debtors previously used the leased Premises as office space before vacating the Premises in or around March 2020.  Debtor UE Authority currently pays approximately $51,466 per month for the Lease, and subleases the Lease for approximately $19,000 a month, as further explained below.  Thus, notwithstanding the sublease, the Debtors are maintaining this Lease at a net loss of approximately $32,466 per month.  The Lease expires on July 31, 2025, and the Debtors do not plan to renew the Lease term.  The Debtors determined that it is no longer necessary or desirable to maintain this Lease because the Debtors no longer use the office space and are also subleasing the Lease at a net loss.  Accordingly, rejection of this Lease will be beneficial to the Debtors' estates and reduce potential administrative expenses in these chapter 11 cases.

(d)  **San Diego Sublease.**  The Debtors are party to that certain Sublease for a Single Sublessee ("Sublease"), dated November 23, 2021, by and between Debtor UE Authority Co. and Chatmeter Inc., pursuant to which Debtor UE Authority Co. subleases the office space at 225 Broadway, Suite 2200, San Diego, California 92101 to Chatmeter Inc. Chatmeter Inc. pays approximately $19,000 per month to Debtor UE Authority for the Sublease.  The Sublease expires on January 31, 2025, and the Debtors do not plan to renew the Sublease term.  The Debtors have determined that it is no longer necessary or desirable to maintain this Sublease because the Debtors are rejecting the underlying master lease agreement to the office space and are operating the Sublease at a net loss.  Rejection of the master lease requires rejection of the Sublease because the agreements operate in tandem, with the same underlying obligations of payment to the landlord.  Additionally, contemporaneously with providing notice of surrender of the Premises to the landlord, the Debtors also provided notice of such surrender to the subtenant.  Accordingly, rejection of this Lease will reduce potential administrative expenses in these chapter 11 cases and is beneficial to the Debtors' estates.

7.  The Debtors seek authority to reject the Leases effective *nunc pro tunc* to the Petition Date.  The retroactive rejection date applicable to each Lease is appropriate as to limit administrative costs associated with such Leases that the Debtors no longer occupy or have already

---

[3] For the avoidance of doubt, the Debtors' rejection of this Lease does not serve as an admission as to the validity of the Lease or the existence of any obligations owed by the Debtors thereunder, and all of the Debtors' rights and defenses are reserved with respect thereto.

4

vacated. Accordingly, the Debtors request that this Court approve rejection of each Lease be deemed effective *nunc pro tunc* to the Petition Date.

### Personal Property to Be Abandoned

8. To the extent that any Personal Property remains at the Premises as of the Petition Date, the Debtors have evaluated such Personal Property and have determined either that (a) the Personal Property is of inconsequential value or (b) the cost of removing and storing the Personal Property for future use, marketing, or sale exceeds its value to the Debtors' estates. Specifically, the Debtors believe that the only remaining personal property, if any, left at the Premises is office supplies or furniture with *de minimis* value to the Debtors' estates and whose removal costs likely exceed such value. Because the Debtors have ceased or will cease operations at the Premises prior to or as of the Petition Date, any Personal Property will no longer be necessary for the administration of the Debtors' estates.

9. The Debtors believe in their business judgment that the abandonment of the Personal Property that may be located at each of the Premises, if any, is appropriate and in the best interests of the Debtors, their estates, and their creditors.[4]

### Basis for Relief

**I.   The Rejection of the Leases Is a Sound Exercise of the Debtors' Business Judgment and Provides the Debtors with Significant Cost Savings.**

10. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(a) "allows a [debtor in possession] to relieve the bankruptcy

---

[4] Prior to the Petition Date, the Debtors sent notices of surrender and abandonment to each landlord counterparty to a Lease listed on the Rejection Schedule. Accordingly, the Debtors believe any property remaining has already been abandoned, but nevertheless seek the relief herein out of an abundance of caution.

estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir., 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of unexpired leases is to permit the debtor in possession to renounce title to and abandon burdensome property of the estate).

11.     A debtor's rejection of an unexpired lease is governed by the "business judgment" standard. *See, e.g.*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. Of Institutional Inv'rs v. Chi., M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943)); see also *In re Tex. Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts."). The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of "bad faith, whim, or caprice." *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

12.     Rejection of an unexpired lease is appropriate where such rejection would benefit the estate, as determined by the debtor in its business judgment. *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."). Upon finding that a debtor exercised its sound business judgment in determining that rejection of certain leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection

under section 365(a) of the Bankruptcy Code.  *See In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

13.     The Debtors, in consultation with their advisors, have determined in their business judgment that the Leases are not necessary for the Debtors' ongoing business nor a source of potential value for the Debtors' estates and are otherwise burdensome to the Debtors' estates. Rejecting the Leases will further the Debtors' chapter 11 goals.

**II.     This Court Should Deem the Leases Rejected Effective *Nunc Pro Tunc* to the Petition Date.**

14.     Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively.  *See, e.g.*, *In re Romacorp, Inc.*, 2006 WL 6544088, at *4 (Bankr. N.D. Tex. Feb. 2, 2006) ("This court is not alone in allowing retroactive rejection of unexpired leases; in fact, a number of other courts around the country have recognized this equitable practice.") (collecting cases); *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (authorizing *nunc pro tunc* rejection where debtors were "receiving no benefit" from an unexpired lease and the lease counterparty "had unequivocal notice of Debtors' intent to reject prior to the filing" of the rejection motion); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection).

15.     Here, the balance of the equities supports deeming the Leases rejected *nunc pro tunc* to the Petition Date because the Debtors risk incurring additional administrative expenses absent retroactive rejection while the non-Debtor counterparties to the leases (the "Counterparties") are not unduly prejudiced by such retroactive rejection.  **First**, the Debtors have surrendered the corresponding Premises under the Leases as of the Petition Date.  **Second**,

section 365(g) of the Bankruptcy Code provides that rejection of an unexpired lease constitutes a breach of such unexpired lease as of the time immediately before the date a debtor filed its petition. *See* 11 U.S.C. § 365(g)(1).  Because breach of the Leases is deemed to occur immediately prior to the Petition Date, the Counterparties' remedies under the appliable Leases are the same whether rejection occurs as of the Petition Date or later in the case.  ***Third***, the Debtors will promptly serve notice of this Motion on the Counterparties, each of whom will have a sufficient opportunity to respond.  Accordingly, the Counterparties are not prejudiced by retroactive rejection.

16. In contrast, the Debtors and their estates will be harmed if the Leases are not rejected as of the Petition Date.  Without a retroactive date of rejection, the Debtors may be forced to incur administrative expenses and obligations in connection with the Leases with no corresponding benefit to the Debtors' estates.  *See* 11 U.S.C. § 365(d)(3).  Because of the potential harm to the Debtors' estates and the absence of prejudice against the Counterparties, the balance of equities favors rejection *nunc pro tunc* to the Petition Date.

17. Courts in this district and elsewhere routinely approve relief similar to the relief requested herein.  *See, e.g.*, *In re SmileDirectClub Inc.*, No. 23-90786 (CML) (Bankr. S.D. Tex. Nov. 4, 2023) (authorizing retroactive rejection of unexpired leases); *In re Genesis Care Pty Ltd.*, No. 23-90614 (DRJ) (Bankr. S.D. Tex. July 27, 2023) (same); *In re Center for Autism and Related Disorders, LLC*, No. 23-90709 (DRJ) (Bankr. S.D. June 12, 2023) (same).

18. Accordingly, the Debtors request that this Court deem the Leases identified on the Rejection Schedule rejected effective *nunc pro tunc* to the Petition Date.

**III. The Personal Property Is De Minimis in Value and/or Burdensome to Remove From the Premises and Abandonment Will Not Prejudice the Lessors.**

19. Section 554(a) of the Bankruptcy Code provides that a debtor in possession may abandon, subject to court approval, "property of the estate . . . that is of inconsequential value and

8

benefit to the estate." 11 U.S.C. § 554(a).  A bankruptcy court may authorize property to be abandoned when the property is either (a) burdensome to the estate or (b) of inconsequential value and benefit to the estate.  *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 499–500 (1986).

20. The Debtors satisfy the standard set forth in section 554(a) of the Bankruptcy Code because any Personal Property that would remain on the Premises at certain properties would not be feasible to remove and/or would provide nominal or no value to the Debtors or their estates. Specifically, the Debtors believe that the only remaining personal property, if any, left at the Premises is office supplies or furniture with *de minimis* value to the Debtors' estates and whose removal costs likely exceed such value.  Therefore, this Court should grant the Debtors the authority to abandon the Personal Property in accordance with section 554(a) of the Bankruptcy Code.  The Debtors request that the abandonment of the Personal Property be effective as of the Petition Date, which is also the proposed effective date of rejection of the Leases.

21. Bankruptcy courts in this district previously approved similar relief in other chapter 11 cases.  *See, e.g.*, *In re SmileDirectClub Inc.*, No. 23-90786 (CML) (Bankr. S.D. Tex. Nov. 4, 2023) (authorizing the abandonment of certain personal property in connection with rejection of certain unexpired leases); *In re Genesis Care Pty Ltd.*, No. 23-90614 (DRJ) (Bankr. S.D. Tex. July 27, 2023) (same); *In re Benefytt Techs. Inc.*, No. 23-90566 (CML) (Bankr. S.D. Tex. July 12, 2023) (same).

**IV.    This Motion Satisfies the Requirements of Bankruptcy Rules 6006(e) and 6006(f).**

22. Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to reject multiple unexpired leases in one motion, subject to Bankruptcy Rule 6006(f).  *See* Fed. R. Bankr. P. 6006(e).  Motions to assume or reject multiple unexpired leases must satisfy six requirements.

*See* Fed. R. Bankr. P. 6006(f). These requirements are procedural in nature. A motion to reject multiple executory contracts or unexpired leases that are not between the same parties shall:

    a.    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

    b.    list parties alphabetically and identify the corresponding contract or lease;

    c.    specify the terms, including the curing of defaults, for each requested assumption or assignment;

    d.    specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

    e.    be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

    f.    be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to unexpired leases. This Motion, together with the Rejection Schedule, satisfies the procedural requirements of Bankruptcy Rule 6006(f).[5] Accordingly, the omnibus rejection of the Leases should be approved.

## Reservation of Rights

23.    Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief

---

[5] Bankruptcy Rules 6006(f)(3) and 6006(f)(4) are inapplicable to the relief requested in this Motion because the Debtors do not seek to assume or assume and assign any of the Leases listed on the Rejection Schedule.

10

requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume or adopt any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

24. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition Agent and counsel thereto; (d) counsel to the DIP Lenders; (e) the agent under the DIP Facility and counsel thereto; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the Office of the United States Attorney for the Southern District of Texas; (h) the Internal Revenue Service; (i) any statutory committee appointed in these chapter 11 cases; (j) the Counterparties; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice is required.

WHEREFORE, the Debtors request that this Court enter the Order granting the relief requested herein and such other relief as this Court deems appropriate under the circumstances.

Houston, Texas
Dated:  September 12, 2024

/s/  *John Higgins*
_____

| | |
|---|---|
| **PORTER HEDGES LLP** | **KIRKLAND & ELLIS LLP** |
| John F. Higgins (TX Bar No. 09597500) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| M. Shane Johnson (TX Bar No. 24083263) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Megan Young-John (TX Bar No. 24088700) | Elizabeth H. Jones (*pro hac vice* pending) |
| James A. Keefe (TX Bar No. 24122842) | 601 Lexington Avenue |
| 1000 Main St., 36th Floor | New York, New York 10022 |
| Houston, Texas 77002 | Telephone:  (212) 446-4800 |
| Telephone:  (713) 226-6000 | Facsimile:  (212) 446-4900 |
| Facsimile:  (713) 226-6248 | Email:  joshua.sussberg@kirkland.com |
| Email:  jhiggins@porterhedges.com | elizabeth.jones@kirkland.com |
| sjohnson@porterhedges.com | |
| myoung-john@porterhedges.com | -and- |
| jkeefe@porterhedges.com | |
| | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| | 333 West Wolf Point Plaza |
| *Proposed Co-Counsel to the Debtors* | Chicago, Illinois 60654 |
| *and Debtors in Possession* | Telephone:  (312) 862-2000 |
| | Facsimile:  (312) 862-2200 |
| | Email:  alexandra.schwarzman@kirkland.com |
| | |
| | *Proposed Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**Certificate of Service**

I certify that on September 12, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins