United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 16, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) Case No. 24-90468 (ARP) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**ORDER (I) APPROVING THE BIDDING PROCEDURES,
(II) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,
(III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(IV) APPROVING THE STALKING HORSE AGREEMENT AND EXPENSE
REIMBURSEMENT, (V) ESTABLISHING NOTICE AND PROCEDURES FOR
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (VI) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
OF ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VII)
AUTHORIZING THE SALE OF ASSETS, AND (VIII) GRANTING RELATED RELIEF**

[Relates to Docket No. 22, 23, 134, 180, 181]

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") (a) authorizing and approving the

Bidding Procedures, attached hereto as **Exhibit 1**, (b) scheduling certain related dates and

deadlines in connection with the Bidding Procedures, (c) approving the form and manner of the

notice of the Sale Transaction and Auction, if any (the "Sale and Auction Notice"), attached hereto

as **Exhibit 2**, (d) approving the form and notice of successful bidder (the "Successful Bidder

Notice") attached hereto as **Exhibit 4**, (e) authorizing and approving the Stalking Horse Bidder

---

[1]   A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax
    identification numbers may be obtained on the website of the Debtors' claims and noticing agent at
    https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of
    business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101,
    Clearwater, Florida 33762.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the
    Bidding Procedures as applicable.

and Expense Reimbursement (as defined in the Bidding Procedures) on the terms substantially set forth in the Stalking Horse Agreement, attached as <u>Exhibit 1</u> to the Bidding Procedures, (f) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with any sale and approving the form and manner of notice thereof, attached hereto as **<u>Exhibit 3</u>**, and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Sandahl Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is **FOUND AND DETERMINED THAT**:

A.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     <u>Bases for Relief</u>.  The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006(a), and 9007, and Bankruptcy Local Rule 9013-1.  The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion.

D.     <u>Notice of the Bidding Procedures Motion</u>.  As reflected in the certificates of service filed on September 12, 2024, [Docket No. 37] and on September 18, 2024, [Docket No. 117] (collectively, the "<u>Certificates of Service</u>"), the Motion and notice of the Hearing were served on the Court's electronic filing system and the parties set forth in the Motion.  Further, the Debtors filed the *Notice of Adjournment of Hearing on Critical Vendors Motion, DIP Motion, Bidding Procedures Motion, and Lease Rejection Motion* [Docket No. 158] on October 7, 2024, and served it on the Court's electronic filing system and master service list, as reflected in the certificate of service filed on October 9, 2024 [Docket No. 175].  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

E.     <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, which are fair,

reasonable, and appropriate under the circumstances, are designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest, and are consistent with the Debtors' exercise of their respective duties under applicable law.

F.      <u>Sale and Auction Notice</u>.  The Sale and Auction Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is reasonably calculated to provide interested parties with timely and proper notice of the Auction and proposed Sale Transaction, including, without limitation:  (a) the date, time, and place of the Auction (if any); (b) the Bidding Procedures and certain dates and deadlines related thereto; and (c) a description of the Sale Transaction as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable purchase agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale Transaction proceeds, and no other or further notice of the Auction or Sale Transaction shall be required.

G.      <u>Successful Bidder Notice</u>.  The Successful Bidder Notice, substantially in the form attached hereto as **<u>Exhibit 4</u>**, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Successful Bid, including, without limitation: (a) the Successful Bidder; (b) the Back-Up Bidder, if applicable; (c) the key terms of the proposed Sale Transaction; and (d) the date, time, and place of the Sale Hearing.

H.      <u>Stalking Horse Agreement</u>.  The Stalking Horse Bid contemplated by the Stalking Horse Agreement, attached to the Bidding Procedures as <u>Exhibit 1</u>, satisfies the requirements necessary to be deemed a Qualified Bid.

I.      <u>Expense Reimbursement</u>.  The Expense Reimbursement provided to the Stalking Horse Bidder (a) is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) is commensurate

to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder, and (c) is fair, reasonable, and appropriate, including in light of the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Bidder.  The Expense Reimbursement is a material inducement for, and a condition of, the Stalking Horse Bidder to be bound by the Stalking Horse Agreement.

J.      <u>Assumption and Assignment Procedures</u>.  The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Contracts with proper notice of the potential assumption and assignment of their Contract, the proposed cure amounts relating thereto, and the related Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required; *provided* that the mere listing of any Contract on the Cure Notice does not require or guarantee that such Contract will be assumed and assigned, and all rights of the Debtors with respect to such Contracts are reserved. The Assumption and Assignment Procedures are reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

K.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

**IT IS HEREBY ORDERED THAT**:

1.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

## I.    **Important Dates and Deadlines.**

2.     The following dates and deadlines are approved, subject to the right of the Debtors to modify the following dates without further order of the Court by filing notice of such modification with the Court or otherwise in accordance with the terms of this Order:

| Event or Deadline | Date and Time<br>(all times in Central Time) |
|---|---|
| Bidding Procedures Objection Deadline and Stalking Horse Agreement Objection Deadline | October 2, 2024, at 4:00 p.m. |
| Bidding Procedures Hearing | October 16, 2024, at 1:00 p.m. |
| Deadline to Serve the Sale and Auction Notice and Publish the Publication Notice | No later than three business days after entry of the Bidding Procedures Order |
| Deadline to Serve the Cure Notice | As soon as reasonably practicable after entry of the Bidding Procedures Order |
| Bid Deadline | October 25, 2024, at 4:00 p.m. |
| Auction (if Necessary) | October 29, 2024 |
| Deadline to file Successful Bidder Notice | As soon as reasonably practicable after the Auction |
| Sale Transaction Objection Deadline | November 1, 2024, at 4:00 p.m. |
| Assumption and Assignment Objection Deadline; Cure Objection Deadline | November 1, 2024, at 4:00 p.m. |
| Adequate Assurance Objection Deadline | November 1, 2024, at 4:00 p.m. |
| Sale Transaction Reply Deadline | November 4, 2024, at 10:00 a.m. |
| Sale Hearing | November 4, 2024, at 10:00 a.m. |

3.     All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court so as to be *actually received* no later than the applicable deadline, including as established herein, by Clerk of the Court and the following parties:

| Proposed Co-Counsel to the Debtors | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Attn.: Joshua A. Sussberg, P.C. and<br>Elizabeth Jones<br><br>and<br><br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Attn.: Alexandra F. Schwarzman, P.C. | Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Attn:  John F. Higgins,<br>M. Shane Johnson,<br>Megan Young-John, and<br>James A. Keefe |

| Counsel to the DIP Lenders |
|---|
| Ropes & Gray LLP<br>191 North Wacker Drive, 32nd Floor<br>Chicago, Illinois 60606<br>Attn: Benjamin M. Rhode and<br>Eric P. Schriesheim |

| Office of the United States Trustee (Region 7) |
|---|
| Office of The United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002 |

| Proposed Co-Counsel to the Official Committee of Unsecured Creditors | Proposed Co-Counsel to the Official Committee of Unsecured Creditors |
|---|---|
| Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attn.:  Brian S. Lennon and James H.<br>Burbage<br><br>and<br><br>Willkie Farr & Gallagher LLP<br>600 Travis Street<br>Houston, Texas 77002<br>Attn.:  Jennifer J. Hardy | Venable LLP<br>151 West 42nd Street<br>New York, New York 10036<br>Attn.:  Jeffrey S. Sabin, Carol Weiner Levy,<br>and Arie Peled<br><br>and<br><br>Venable LLP<br>600 Massachusetts Avenue NW<br>Washington, District of Columbia 20001<br>Attn.:  Andrew J. Currie |

4.      If any party fails to timely file an objection by the applicable deadline, including as established herein, or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to the Sale Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction, including the transfer of the Assets to the Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

5.      The Debtors shall present the results of the Auction, if any, or otherwise present any Successful Bidders to the Court in advance of the Sale Hearing.

**II.     The Bidding Procedures.**

6.      The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, are approved in their entirety and incorporated by reference as though fully set forth herein.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures.  The Debtors are authorized to solicit Bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures and to take all actions as are necessary or appropriate to implement the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids, and any party desiring to submit a Bid for the Assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.

7.      Each bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or any Sale Transaction, as set forth in the Bidding Procedures and the Auction, if any, shall be transcribed or recorded.

8.     Pursuant to the Bidding Procedures the Debtors may, in consultation with the Consultation Parties:  (a) determine which Qualified Bid is the highest or otherwise best offer for some or all of the Assets; (b) at any time prior to entry of an order of the Court approving the Successful Bid, reject any Bid (other than the Stalking Horse Bid) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; (c) waive terms and conditions set forth herein with respect to all Qualified Bidders to the extent permissible under this Order or the Bidding Procedures; (d) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases; and (e) modify the Bidding Procedures, including the dates and deadlines set forth therein.

9.     If the Debtors receive more than one Qualified Bid from Qualified Bidders, then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.  If one or more Qualified Bid(s) exist for acquiring specific sub-groups of the Assets, then the Debtors may after consulting with the Consultation Parties, in the exercise of their reasonable business judgment, first conduct a sub-Auction for each of the Assets that has at least one Qualified Bid pursuant to the Bidding Procedures.

10.     If no Qualified Bids (or Bid that may be remedied into a Qualified Bid pursuant to the Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) other than the Stalking Horse Bid is received by the Bid Deadline, or the Debtors (in consultation with the Consultation Parties) determine not to conduct an Auction, the Debtors shall (a) notify the Court in writing that the Auction is cancelled and (b) file a notice of cancellation of the Auction.

III.    **Sale and Auction Notice.**

11.    The Sale and Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is approved.  Within three business days of the entry of this Order, the Debtors shall cause the Sale and Auction Notice to be served upon parties in interest and posted on the Debtors' Case Website:  https://omniagentsolutions.com/DMS.

12.    Within three business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall place a publication version of the Sale and Auction Notice for one day in *The New York Times* (national edition), *Financial Times* (global edition), and any such other national publications that the Debtors deem appropriate and disclose in the Claims and Noticing Agent's affidavits of service to provide notice to any other potential interested parties. Such notice shall be deemed sufficient and proper notice of the Sale Transaction with respect to any potential interested parties.

IV.    **The Successful Bidder Notice.**

13.    The Successful Bidder Notice, substantially in the form attached hereto as **Exhibit 4**, is approved.  Promptly after the conclusion of the Auction (if any), the Debtors shall cause the Successful Bidder Notice to be served upon parties in interest and posted on the Debtors' Case Website:  https://omniagentsolutions.com/DMS.

V.    **The Stalking Horse Bid, Designation of Stalking Horse Bidder, and Expense Reimbursement.**

14.    The Debtors are authorized to enter into the Stalking Horse Agreement, attached as Exhibit 1 to the Bidding Procedures, with an acquisition entity to be formed by their DIP Lenders, and the terms of the Stalking Horse Agreement are approved in their entirety.  The Stalking Horse Bidder is deemed a Qualified Bidder and the Stalking Horse Bid is deemed a Qualified Bid.

15.     The Expense Reimbursement is approved in its entirety and is payable in accordance with, and subject to the terms of, the Stalking Horse Agreement.  The Debtors' obligation to pay the Expense Reimbursement shall survive termination of the Stalking Horse Agreement, dismissal or conversion of any of the chapter 11 cases, and confirmation of any plan of reorganization.  No person or entity other than the Stalking Horse Bidder shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

16.     The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Expense Reimbursement, the Bidding Procedures, and the entry into the Stalking Horse Agreement.

**VI.     Assumption and Assignment Procedures.**

17.     The Assumption and Assignment Procedures set forth below are approved:

(a)     **Cure Notice.**  As soon as reasonably practicable after entry of this Order, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, attached as Exhibit 3 to this Order, on the Contract Counterparties, and post the Cure Notice to the Case Website:  https://omniagentsolutions.com/DMS.

(b)     **Content of Cure Notice.**  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale Transaction, and contain the following information: (i) a list of the Assigned Contracts; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the Cure Costs; and (iv) the Cure Objection deadline; *provided* that service of a Cure Notice does not constitute an admission that such Contract is an executory contract or unexpired lease or that such Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

(c)    **Cure Objection**s.   Cure Objections, if any, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **November 1, 2024 at 4:00 p.m. (prevailing Central Time)** (the "Cure Objection Deadline"); *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

(d)    **Effects of Filing a Cure Objection.**   A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

(e)    **Dispute Resolution.**   Any Cure Objection to the proposed assumption and assignment of a Contract or Cure Costs that remains unresolved after the Sale Hearing, shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the applicable Successful Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such Contract.   Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs, the applicable Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(f)    **Supplemental Cure Notice.**   If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with a Sale Transaction, the Debtors may, after consultation with the Successful Bidder and the Consultation Parties, at any time before the closing of the Sale Transaction supplement the Cure Notice with previously omitted Contracts or modify a previously filed Cure Notice,

including by modifying the previously stated Cure Costs associated with any Contracts (the "<u>Supplemental Cure Notice</u>").  The Debtors shall serve such Supplemental Cure Notice on the Contract Counterparties to Contracts that were added or removed or to the Contract Counterparties to Contracts for which the Cure Costs were changed.

(g)    **Objection to the Supplemental Cure Notice.**  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "<u>Supplemental Cure Objection</u>") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs included in the Supplemental Cure Notice, if any.  All Supplemental Cure Objections must:  (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

(h)    **Dispute Resolution of Supplemental Cure Objection.**  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts.  If there is no such objection, then the Debtors shall obtain an order of the Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.  Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to the Cure Costs, the applicable Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(i)    **No Cure Objections.**  If there are no Cure Objections or Supplemental Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection or a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other

claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

(j) **Other Assumption Objections.** All other assumption objections ("Other Assumption Objections") shall be made by the Sale Transaction Objection Deadline. If there are no Other Assumption Objections, or if an objecting party does not file and serve an Other Assumption Objection in a manner that is consistent with the requirements set forth above for Cure Objections, and absent a subsequent order of the Court, (i) the assumption shall be effective, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract, and will be forever barred from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

18.     Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract must be filed with the Court no later than **November 1, 2024, at 4:00 p.m. (prevailing Central Time)** (the "Adequate Assurance Objection Deadline").

19.     The inclusion of a Contract in a Cure Notice or Supplemental Cure Notice will not: (a) obligate any Debtor to assume such Contract or a Successful Bidder to take assignment of such Contract; or (b) constitute any admission or agreement of the Debtors that such contract is an executory contract or unexpired lease. Only those Contracts that are included on a schedule of Assigned Contracts attached to the executed definitive asset purchase agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Successful Bidder.

**VII.    Miscellaneous.**

20.     The Debtors and Cigna Health and Life Insurance Company ("Cigna") are parties to a fully insured group medical and dental policy ("Cigna Policy"), pursuant to which Cigna provides medical and dental insurance benefits to Debtors' employees. Notwithstanding anything in this Order or in any subsequent notice to the contrary, unless Cigna and the Debtors agree

otherwise, the Debtors shall provide to Cigna, through its counsel, no later than 12:00 p.m., prevailing Central Time, two business days prior to the Sale Hearing, written notice (email sufficient) of the Debtors' irrevocable (subject to closing of the Sale Transaction) decision as to whether or not the Debtors propose to assume and assign the Cigna Policy to the Successful Bidder as part of the proposed Sale Transaction.  This fully resolves the objection filed by Cigna at Docket No. 134.

21.     Any bidder holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid"); *provided*, that such Credit Bid complies with the terms of the Bidding Procedures.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

24.     Notwithstanding anything to the contrary herein or in the Bidding Procedures, the Debtors may determine in their reasonable business judgment after consulting with the Consultation Parties, to suspend or cancel the sale process with respect to all or any portion of the Assets.

25.     The requirements set forth in Bankruptcy Local Rules and the Complex Rules are satisfied by the contents of the Motion.

26.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a

final order by the Court in connection with the Motion and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

27.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

28.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

29.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies, or defenses that the Debtors have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking relief from the Court with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items.

30.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: October 16, 2024

Alfredo R Pérez
United States Bankruptcy Judge

## Exhibit 1

## Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 24-90468 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES

On September 11, 2024 (the "<u>Petition Date</u>"), the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") commenced filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

On October [●], 2024, the Court entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] approving the procedures (the "<u>Bidding Procedures</u>") for conducting a marketing process and auction (the "<u>Auction</u>") for a sale of some or substantially all of the Debtors' assets (collectively, the "<u>Assets</u>") pursuant to one or more sale transactions (each a "<u>Sale Transaction</u>").

---

[1]   A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS.  The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2]   Unless otherwise specified herein, terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Order or the *Declaration of Joe Marinucci, Co-Founder and Chief Executive Officer of Digital Media Solutions, Inc. and Certain of its Affiliates, in Support of Chapter 11 Filing and First Day Motions* [Docket No. 17] (the "<u>First Day Declaration</u>"), as applicable.

On September 11, 2024, following a robust prepetition marketing process for the Debtors' assets (the "Prepetition Sale Process"), the Debtors entered into an asset purchase agreement with an acquisition entity of the DIP Lenders (the "Stalking Horse Bidder" and such asset purchase agreement, the "Stalking Horse Agreement" or "Stalking Horse Bid") whereby the Stalking Horse Bidder will serve as the stalking horse bidder for the Assets.  The Debtors obtained approval of the Stalking Horse Agreement pursuant to the Bidding Procedures Order.  The Stalking Horse Agreement is attached hereto as **Exhibit 1**.

---

**Copies of the Bidding Procedures Order and other related documents are available by visiting the Debtors' restructuring website at https://omniagentsolutions.com/DMS or by telephone at (866) 680-8083 in the U.S. and Canada or (818) 574-6886 internationally.**

---

## I.   ASSETS TO BE AUCTIONED.

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers for the Debtors' Assets.  The majority of the Debtors' Assets may be categorized in one of the Debtors' three main verticals—education, insurance, and consumer (as further described in the First Day Declaration)—and Potential Bidders (as defined herein) may submit a Bid (as defined herein) for all or substantially all Assets, consistent with the Stalking Horse Bid, or for the Assets comprising one or more verticals (each such set of Assets, an "Asset Package", including the "Education Package," the "Insurance Package," and the "Consumer Package").

For the avoidance of doubt, the Debtors, in the exercise of their business judgment, and in consultation with the Consultation Parties,[3] may elect to exclude any Assets from the Bidding Procedures and sell such Assets at either a private or public sale, subject to Court approval of any alternative sale method.  Further, the Debtors may determine, in consultation with the Consultation Parties, whether to proceed with any Sale Transaction pursuant to the Bidding Procedures.

---

[3]   The "Consultation Parties" are (a) secured lenders with liens on the Assets being sold, including, for the avoidance of doubt, the Prepetition Lenders (as defined in the First Day Declaration), (b) the DIP Lenders (as defined in the First Day Declaration), (c) the agent under the DIP Facility, and (d) the Official Committee of Unsecured Creditors (the "Committee"); *provided* that, to the extent that any party in clause (a), (b), (c) or a member of the Committee described in clause (d) submits a Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, such Prepetition Lender, DIP Lender, agent under the DIP Facility, or the Committee member shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in the Prepetition Lender's, DIP Lender's, agent under the DIP Facility's, or Committee member's Bid, or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures and the Bidding Procedures Order.

Except as otherwise provided in the Stalking Horse Agreement or the Modified APA (as defined herein) submitted by a Successful Bidder (as defined herein), all of the Debtors' right, title, and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests"), subject only to the Assumed Liabilities and Permitted Encumbrances (each as defined in the Stalking Horse Agreement or the Modified APA of the applicable Successful Bidder), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale(s) of the Assets with the same validity, force, effect, and priority as such Interests applied against the Assets as of the date the Debtors' commenced these chapter 11 cases, subject to any rights, claims, and defenses of the Debtors.

## II.    KEY DATES AND DEADLINES; PUBLIC ANNOUNCEMENT OF AUCTION.

| Event or Deadline | Date and Time (all times in Central Time) |
|---|---|
| Bidding Procedures Objection Deadline and Stalking Horse Agreement Objection Deadline | October 2, 2024, at 4:00 p.m. |
| Bidding Procedures Hearing | October 16, 2024, at 1:00 p.m. |
| Deadline to Serve the Sale and Auction Notice and Publish the Publication Notice | No later than three business days after entry of the Bidding Procedures Order |
| Deadline to Serve the Cure Notice | As soon as reasonably practicable after entry of the Bidding Procedures Order |
| Bid Deadline | October 25, 2024, at 4:00 p.m. |
| Auction (if Necessary) | October 29, 2024 |
| Deadline to file Successful Bidder Notice | As soon as reasonably practicable after the Auction |
| Sale Transaction Objection Deadline | November 1, 2024, at 4:00 p.m. |
| Assumption and Assignment Objection Deadline; Cure Objection Deadline | November 1, 2024, at 4:00 p.m. |
| Adequate Assurance Objection Deadline | November 1, 2024, at 4:00 p.m. |
| Sale Transaction Reply Deadline | November 4, 2024, at 10:00 a.m. |
| Sale Hearing | November 4, 2024, at 10:00 a.m. |

Within three business days after entry of the Bidding Procedures Order, or as soon thereafter as is reasonably practicable, the Debtors shall serve on the parties that receive notice of the Motion (a) the Bidding Procedures Order and the Bidding Procedures and (b) a notice setting forth (i) the date, time, and place of the Auction and the hearing to consider the approval of the Sale Transaction(s) and (ii) the deadlines and procedures for objecting to the proposed Sale Transaction(s) in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale and Auction Notice").  In addition, within three business days after the entry of the Bidding Procedures Order, or as soon thereafter as is practicable, the Debtors will post the Sale and Auction Notice on

the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/DMS and publish the Sale and Auction Notice, with any modifications necessary for ease of publication, on one occasion in *New York Times* (national edition), *Financial Times* (global edition) and/or another national publication that the Debtors deem appropriate to provide notice to any potential interested parties.

### III.    CONTACT PARTIES; PARTICIPATION REQUIREMENTS.

####    A.    Contact Parties.

Prior to launching the Prepetition Sale Process, the Debtors, in consultation with the Debtors' proposed investment banker, Houlihan Lokey Capital Inc. ("Houlihan"), developed a list of buyers whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, one or more Sale Transactions.  The list of potential buyers includes, among others, parties the Debtors or Houlihan previously contacted regarding a possible transaction, regardless of whether these parties expressed any interest in pursuing a transaction (collectively, the "Contact Parties").   On April 23, 2024, Houlihan distributed a teaser and other promotional materials to the Contract Parties, advising them of the opportunity to acquire the Debtors' Assets, in whole or in part.  Of those Contact Parties reached out to by Houlihan, 38 executed a form confidentiality agreement.

The Debtors may distribute (if not already distributed) to each Contact Party and any other Potential Bidder an "Information Package" consisting of:

>   (i)    a copy of the Bidding Procedures and Bidding Procedures Order;

>   (ii)    a form confidentiality agreement (if one is not signed already); and

>   (iii)    any other materials appropriate under the circumstances.

####    B.    Participation Requirements.

To participate in the bidding process for a Sale Transaction and to receive access to due diligence materials (the "Diligence Materials"), a person or entity must deliver or have previously delivered to Houlihan:  (i) an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement") and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction with respect to the Assets in which the party is preliminarily interested, as determined by the Debtors in their reasonable business judgment (together with the Confidentiality Agreement, the "Preliminary Bid Documents").   ***No party will be permitted to conduct any due diligence prior to entering into a Confidentiality Agreement.*** Such person or entity that has delivered an executed Confidentiality Agreement and reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction with respect to the Assets in which the party is preliminarily interested, as determined by the Debtors in their reasonable business judgment, shall be considered a potential bidder (a "Potential Bidder").

Each Potential Bidder, including any Qualified Bidder (as defined herein), shall comply with all reasonable requests with respect to information and due diligence access requested by the Debtors or their advisors regarding such Potential Bidder, as applicable, and its contemplated Sale

Transaction.  Failure by a Potential Bidder, including any Qualified Bidder, to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that such Potential Bidder or Qualified Bidder may no longer participate in diligence (including access to the Diligence Materials) or the Auction, or that a bid made by such Potential Bidder is not a Qualified Bid (as defined herein).

### C.    Diligence Materials.

The Debtors will afford any Potential Bidder the time and opportunity to conduct due diligence within the deadlines set forth in these Bidding Procedures.  Until the Bid Deadline (as defined herein), Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "Data Room").  Subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.  In addition, the Debtors will provide Potential Bidders with due diligence access and additional information, as may be requested by a Potential Bidder, to the extent that the Debtors determine that such requests are reasonable and appropriate under the circumstances; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' business judgement, in consultation with the Consultation Parties, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to consummate any Sale Transaction.  The Debtors will endeavor to post substantially all written due diligence provided to any Potential Bidder to the Data Room.

The Debtors reserve the right, in consultation with the Consultation Parties, to withhold or modify any Diligence Materials that the Debtors determine in good faith are business-sensitive or otherwise not appropriate for disclosure to a Potential Bidder who is a competitor, vendor, or customer of the Debtors or is directly or indirectly affiliated with any competitor, vendor, or customer of the Debtors.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any party that is not determined to be a Potential Bidder.

All requests for diligence and any and all substantive direct communications with Potential Bidders and Qualified Bidders shall be through Houlihan (email being sufficient).

---

The Debtors have designated Brian Marks and Seth McIntyre of Houlihan to coordinate all reasonable requests for additional information and due diligence access.  They can be reached at BAMarks@HL.com and Seth.McIntyre@HL.com.

---

### D.    Restrictions on Communications.

There shall be no communications between or among Potential Bidders, or between Potential Bidders and the Consultation Parties, unless Houlihan has previously authorized such communication in writing (email being sufficient).  Should any Potential Bidder attempt to communicate directly with a Consultation Party, such Consultation Party shall immediately direct the Potential Bidder to Houlihan.  Potential Bidders shall not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent (email being sufficient) of the Debtors.

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties, to disqualify any Potential Bidders that have communications between or amongst themselves without the prior authorization of the Debtors' advisors. The Debtors further reserve their right, in their business judgment, to disqualify any Potential Bidders that have communications with a Consultation Party, and to strip any Consultation Party that violates this provision of its consultation rights hereunder.

## IV.    BID DEADLINE.

To be eligible to participate in the Auction, a Potential Bidder must submit a written offer for a Sale Transaction of some or all of the Debtors' Assets (each, a "Bid") that must (i) be determined by the Debtors, in consultation with the Consultation Parties, to satisfy each of the conditions set forth in Section V Qualified Bid Requirements and (ii) be ***actually received*** by Houlihan and Kirkland & Ellis LLP ("Kirkland") **on or before October 25, 2024 at 4:00 p.m. (prevailing Central Time)** (the "Bid Deadline").

The Debtors may extend the Bid Deadline for any reason whatsoever, in their business judgment, in consultation with the Consultation Parties, for all or certain Potential Bidders.

The Debtors shall provide the Committee with copies of any Bid received within 24 hours of expiration of the Bid Deadline. Notwithstanding the foregoing, the Debtors shall not send the Committee copies of any Bids if any member of the Committee submits a Bid for any Assets.

The notice and contact information of the Debtors and certain of the Debtors' advisors is listed in the chart below (collectively, the "Notice Parties"). Unless specifically provided otherwise herein, e-mail notice shall be sufficient.

| NOTICE PARTIES AND CONTACT INFORMATION |
|---|
| **Debtors** |
| Digital Media Solutions, Inc.<br>4800 140th Avenue North, Suite 101<br>Clearwater, FL 33762<br>Attn: Vanessa Guzmán-Clark (vguzmanclark@dmsgroup.com), Legal Department<br>(legal@dmsgroup.com) |
| **Proposed Co-Counsel to the Debtors** |
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Attn.:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Elizabeth H. Jones<br>(elizabeth.jones@kirkland.com)<br><br>and |

| |
|---|
| Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Attn.:  Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com)<br><br>and<br><br>Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Attn:  John Higgins (jhiggins@porterhedges.com), M. Shane Johnson<br>(sjohnson@porterhedges.com), Megan Young-John (myoung-john@porterhedges.com), and<br>James A. Keefe (jkeefe@porterhedges.com) |
| **Proposed Investment Banker to the Debtors** |
| Houlihan Lokey Capital Inc.<br>111 S Wacker Dr., Floor 37<br>Chicago, IL 60606<br>Attn:  Ryan Sandahl (RSandahl@HL.com), Brian Marks (BAMarks@HL.com), and Seth<br>McIntyre (Seth.McIntyre@HL.com) |

## V.     QUALIFIED BID REQUIREMENTS.

To participate in the Auction, a Potential Bidder must deliver to Houlihan and Kirkland an irrevocable Bid, and shall meet the following criteria, in each case, on or prior to the Bid Deadline:

1.     Identity & Corporate Authority:  Each Bid must fully disclose (a) the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the Sale Transaction(s) contemplated by such Bid), and (b) the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties, and has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.  A Bid must also fully disclose any business relationships, affiliations, or agreements with the

Debtors, any known, prospective bidder or Qualified Bidder, or any officer, director, or equity security holder of the Debtors;

2. <u>Identity of Assets and Assumed Liabilities; Purchase Price</u>:  Each Bid must clearly state the following:  (a) the particular Assets or the Asset Package to be purchased; (b) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; and (c) any executory contracts (the "<u>Executory Contracts</u>") and any unexpired leases (the "<u>Unexpired Leases</u>") to be received by assignment.  Each Bid must also clearly set forth the aggregate purchase price to be paid (the "<u>Purchase Price</u>").  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Bid should be viewed as a separate Bid for one or more Asset Packages.  The Debtors reserve the right to ask any Potential Bidder to allocate the value ascribed to a Bid for any particular Asset and to inquire about any significant assumptions on which such valuations are based;

3. <u>Same or Better Terms; Bid Documents</u>:  Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "<u>Bid Documents</u>").  The Bid Documents shall include:  (a) a purchase agreement based on the Stalking Horse Agreement that the Debtors shall make available to Potential Bidders via the Data Room pursuant to the diligence process (each such amended and modified purchase agreement, a "<u>Modified APA</u>"), duly executed by the Potential Bidder and including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid, and containing only changes to the Stalking Horse Agreement that are reasonably necessary to effectuate the Bid; (b) a redline copy of the Modified APA marked to reflect any amendments or modifications made to the Stalking Horse Agreement; (c) any other material documents integral to such Bid; and (d) a statement from the Potential Bidder that (i) it is prepared to enter into and consummate the proposed Sale Transaction contemplated in the Modified APA, no later than 30 days after the conclusion of the Auction (the "<u>Closing</u>"), subject to any necessary regulatory approvals, as specified by the Potential Bidder (or, if no Auction is held, the Bid Deadline) and (ii) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or the Back-Up Bid (both as defined herein)) until the consummation of the Sale Transaction, or if the Back-Up Bid, until the time period set forth in Section XI;

4. <u>Good Faith Deposit</u>:  Each Bid, other than the Stalking Horse Bid or a Credit Bid (as defined herein), must be accompanied by a cash deposit in the amount equal to 10% of the cash purchase price contemplated in such Bid, before any adjustments to the purchase price, to be wired to an interest-bearing escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>").  To the extent that a Bid is modified

before, during, or after the Auction in any manner that increases the purchase price contemplated by such Bid, and such Bid is determined to be the Successful Bid or the Back-Up Bid, the Successful Bidder or the Back-Up Bidder (as defined herein) shall, promptly and in no event later than one business day following the conclusion of the Auction, adjust its Good Faith Deposit so that it equals 10% of the increased cash purchase price.  Each Bid shall include a written acknowledgement from the bidder that, in the event of the bidders' breach of, or failure to perform under, the Modified APA, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform, and pursue all other available legal and equitable remedies.  For the avoidance of doubt, the Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or a Back-Up Bidder's breach of failure to perform, and all such rights and remedies are preserved;

5. <u>Minimum Bid</u>:  Each Bid must consist of consideration to be paid at the Closing of the Sale Transaction in an amount no less than the amount of the Stalking Horse Bid, *plus* the amount of the Expense Reimbursement (as defined herein), *plus* $500,000 (the "<u>Bid Increment</u>") for the sale of all or substantially all of the Debtors' Assets;

6. <u>Sources of Financing</u>:  Each Bid must include written evidence that the Debtors conclude, in consultation with the Consultation Parties, demonstrates that the bidder has the necessary financial ability to timely close the Sale Transaction contemplated by such Bid within the time frame acceptable to the Debtors.  To the extent that the Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

7. <u>No Qualified Bidder Bid Protections</u>:  Other than the Stalking Horse Bidder, a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets; *provided* that

the Debtors are authorized to provide the Expense Reimbursement to the Stalking Horse Bidder in accordance with these Bidding Procedures;

8.      Employee Obligations:   Each Bid must indicate whether the Potential Bidder intends to hire all employees of the Debtors;

9.      Contingencies; No Financing or Diligence Outs:  Each Bid shall not include any conditions or contingencies relating to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects, internal approvals, or the absence of any material adverse effect);

10.     As-Is, Where-Is:  Each Bid must include a written acknowledgement and representation that the Potential Bidder:  (a) has had an opportunity to conduct any and all due diligence regarding the Sale Transaction prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; (c) did not rely on or receive from any person or entity (including any of the Debtors or their advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith or the Auction (if any), except as expressly stated in the Potential Bidder's purchase agreement; and (d) agree that upon Closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Assets, to the extent expressly provided in the Court's order approving the Sale Transaction with respect to such Assets.  Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Court's order approving a Sale Transaction with respect to such Assets;

11.     Joint Bids and Merger Proposals:   The Debtors will be authorized to approve joint Bids in their business judgment, in consultation with the Consultation Parties, on a case-by-case basis, including, but not limited to, any bids that contemplate acquiring equity or assets through a merger or similar transaction, including if a Bid contemplates additional financing from one or several participating parties; *provided* that the Bid is otherwise in compliance with the Bidding Procedures and the Potential Bidder(s) have adhered to the restrictions on communications between Potential Bidders, as set forth herein;

12. <u>Adequate Assurance of Future Performance</u>:  Each Bid must (i) provide for the payment of all cure amounts (the "<u>Cure Amounts</u>") related to the Executory Contracts and Unexpired Leases to be assumed by the Potential Bidder, and (ii) demonstrate, in the Debtors' business judgment, in consultation with the Consultation Parties, that the Potential Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code;

13. <u>Acknowledgement of No Collusion</u>:  Each Bid shall include a written acknowledgement from the Potential Bidder that it has not engaged and will not engage in any collusion with respect to any Bids or the Sale Transaction;

14. <u>Good Faith Offer</u>:  Each Bid must be timely and properly submitted and represent an irrevocable, binding, good faith, and *bona fide* offer to consummate the Sale Transaction for the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid;

15. <u>Back-Up Bid</u>:  Each Bid shall provide that the Potential Bidder will serve as Back-Up Bidder if the Potential Bidder's Bid is selected as the next highest or otherwise best bid for the applicable Assets after the Successful Bid;

16. <u>Regulatory and Third-Party Approvals</u>:  Each Bid must include:  (a) a description of all governmental, licensing, regulatory, or other approvals or consents that are required for the Potential Bidder to consummate the Sale Transaction(s), if any; (b) evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals, and those actions the bidder will take to ensure receipt of such approvals as promptly as possible; and (c) all forms necessary for submission of such regulatory consents or approvals (other than Hart-Scott-Rodino and non-U.S. antitrust filings), if any.  Each Bid must further include:  (x) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale Transaction(s); (y) the basis for such estimate; and (z) in the case that receipt of any such governmental, licensing, regulatory, or other approvals or consents is estimated to take more than 30 days following execution and delivery of the applicable purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible; and

17. <u>Consent to Jurisdiction; Waiver of Jury Trial</u>:  Each Potential Bidder must (a) consent to the jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s) and the

construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable; and (b) waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable.  Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

Only Bids fulfilling all of the preceding requirements contained in this section as determined or otherwise waived in the Debtors' business judgment, in consultation with the Consultation Parties, may be deemed qualified bids (the "Qualified Bids"), and only those parties submitting Qualified Bids, in the Debtors' business judgment, in consultation with the Consultation Parties, may be deemed to be qualified bidders (the "Qualified Bidders").

As soon as practicable after the Bid Deadline and in any event prior to the Auction, the Debtors and their advisors shall determine, in consultation with the Consultation Parties, which Potential Bidders are Qualified Bidders and will notify such Potential Bidders whether the Bids submitted constitute Qualified Bids.  Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may, in consultation with the Consultation Parties, provide (but shall not be obligated to provide) such Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction.  The Debtors, in consultation with the Consultation Parties, shall have the right to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the requirements above.

Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by the Qualified Bid or otherwise improve the terms thereof in a manner that is more favorable to the Debtors, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any such Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## VI.      STALKING HORSE BIDDER AND EXPENSE REIMBURSEMENT.

In connection with the Stalking Horse Agreement and in recognition of the Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors are authorized to reimburse the Stalking Horse Bidder's reasonable and documented out-of-pocket fees and expenses (including attorney's fees and expenses) actually incurred in connection with the negotiation, diligence, execution, performance and enforcement of the Stalking Horse Agreement, which amount shall not exceed $1 million (the "Expense Reimbursement").

For the avoidance of doubt, no other Qualified Bidder for the Assets shall be entitled to any form of bid protections.

## VII.   CREDIT BIDDING.

Any party that has a valid and perfected lien on any Assets (a "Secured Creditor") shall have the right to submit a credit bid (a "Credit Bid") consisting of all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code by no later than the Bid Deadline; *provided* that a Secured Creditor shall have the right to Credit Bid its claim only with respect to the collateral by which such Secured Creditor is secured.  For the avoidance of doubt, the agent under the DIP Facility and the Prepetition Agent shall have the right to submit a Credit Bid on behalf of the DIP Lenders and the Prepetition Lenders, respectively, in each case, in an amount up to, respectively, the full amount of the DIP Obligations and Prepetition Obligations (each as defined in the Interim and Final DIP Orders) on the terms set forth in the Interim and Final DIP Orders.

Any credit bid by a Secured Creditor will be deemed to be a cash Bid solely for purposes of evaluating Bids (including the Debtors' evaluation of Qualified Bids and Overbids (as defined herein)).  Notwithstanding anything to the contrary contained herein or the Bidding Procedures Order, any Secured Creditor submitting a Credit Bid, whether acting as the Stalking Horse Bidder or otherwise, shall be deemed to be a Potential Bidder, shall be deemed to have submitted a Qualified Bid, and may participate in any Auction with respect to any Assets constituting collateral of such Secured Creditor without the requirement to submit a Good Faith Deposit, any additional diligence information, or any Bid Documents other than a Modified APA or each other Bid Documents as reasonably requested by the Debtors; *provided* that any such Credit Bid must be submitted no later than the Bid Deadline.

## VIII.   EVALUATION OF QUALIFIED BIDS.

Prior to the Auction (if held), the Debtors shall, in consultation with the Consultation Parties, evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, the highest or otherwise best Qualified Bid or combination of Qualified Bids for one or more Assets, as applicable (the "Starting Bid").  The Debtors shall promptly provide to the Consultation Parties copies of all Bids received by the Debtors, including the Starting Bid; *provided* that the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates:  (a) the amount of the Purchase Price of the Qualified Bid; (b) the number, type, and nature of any changes to the Modified APA requested by each bidder, including the Assets to be acquired; (c) the extent to which such modifications are likely to delay Closing of the Sale Transaction contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (d) the assets and liabilities excluded from the Qualified Bid and any Executory Contracts or Unexpired Leases or

13

other liabilities proposed to be assumed; (e) any contingencies or conditions to the Closing of the Sale Transaction contemplated by such Qualified Bid; (f) the likelihood of the bidder's ability to close the Sale Transaction contemplated by such Qualified Bid and the timing thereof; (g) the tax consequences of such Qualified Bid; (h) any regulatory requirements applicable to the Debtors or the Qualified Bidder; (i) the net effect of any changes to the value to be received by the Debtors' estates; and (j) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances (collectively, the "Bid Assessment Criteria").  Prior to or at the start of the Auction, the Debtors shall notify the Stalking Horse Bidder and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Assets.  At such time, the Debtors shall also distribute copies of the Starting Bid to each Qualified Bidder.

## IX.   AUCTION.

Other than as expressly set forth herein, if more than one Qualified Bid is received for any particular Asset or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder (or Back-Up Bidder, as applicable) in their business judgment, in consultation with the Consultation Parties, with respect to one or more Asset Packages in accordance with the Auction Procedures (as defined herein).

If no Qualified Bids (or Bid that may be remedied into a Qualified Bid pursuant to these Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) other than the Stalking Horse Bid is received by the Bid Deadline for any Assets, the Debtors may, in consultation with the Consultation Parties, cancel the Auction with respect to such Assets, designate the Stalking Horse Bid as the Successful Bid, and pursue entry of an order approving the Stalking Horse Bid.  The Debtors shall file notice of any cancellation of the Auction and designation of the Stalking Horse Bid as the Successful Bid with the Court within one business day of making such a determination.

### A.   Location and Date of Auction.

The Auction (if any) shall take place on **October 29, 2024**, in person at Kirkland & Ellis LLP, 333 W Wolf Point Plaza, Chicago, IL 60654, or such other time or other place as the Debtors determine, and shall be conducted according to the Auction Procedures.

### B.   Attendees and Participants.

Except as otherwise determined by the Debtors, only the following parties, and their respective representatives and counsel, may attend the Auction: (i) the Debtors and their advisors; (ii) any Qualified Bidder and their advisors; (iii) each Consultation Party; and (iv) any other parties that the Debtors deem appropriate.  Only Qualified Bidders will be entitled to make any Bids at the Auction.  Each Qualified Bidder must appear in person or through one or more duly-authorized representatives (other than their counsel) bearing a valid and enforceable power of attorney or

other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the Debtors prior to the commencement of the Auction.

All parties attending the Auction must comply with their applicable Confidentiality Agreements.

### C.    Auction Procedures.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"), in consultation with the Consultation Parties:

1.    <u>The Debtors Shall Conduct the Auction</u>:  The Debtors, with the assistance of their advisors, shall direct and preside over the Auction.  In the event the Debtors receive Bids for one or more of the Asset Packages in lieu of all of the Debtors' Assets, the Debtors may run one or more separate Auctions for one or more of the Asset Packages.  For the avoidance of doubt, if the Debtors only receive Bids for all or substantially all of the Debtors' Assets, only one Auction will be conducted.  Other than as expressly set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for the Assets so long as such conduct is not inconsistent in any material respect with the other terms and provisions of these Bidding Procedures;

2.    <u>Additional Procedures</u>:  At the commencement of or during the Auction, the Debtors may announce additional or modified procedures for conducting the Auction and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s), or otherwise modify the Bidding Procedures, including the Auction Procedures, at any time;

3.    <u>Starting Bid</u>:  Bidding shall begin with the Starting Bid;

4.    <u>Terms of Overbids</u>:  Subsequent Bids at the Auction (each, an "Overbid"), including any Bids by the Staking Horse Bidder, must be made in minimum increments of $500,000 (*i.e.*, the Bid Increment) of additional value over the prevailing highest or otherwise best bid (the "Prevailing Highest Bid"), and each successive Overbid shall exceed the then-Prevailing Highest Bid by an amount not less than the Bid Increment;

5.    <u>Announcement and Consideration of Overbids</u>:  All Overbids shall be made and received on an open basis.  At the start of the Auction, the Debtors shall announce the order of bidding.  The first Qualified Bidder to bid at the Auction must submit an Overbid in an amount equal to the Starting Bid *plus* at least the Bid Increment for its bid to be considered, in the Debtors' business judgment, and in consultation with the Consultation Parties, the Prevailing Highest Bid.  The bidding will continue one Qualified Bidder at a time, with each Qualified Bidder being required to submit an Overbid to the then-Prevailing Highest Bid before the next Qualified Bidder is

permitted to bid.  Each Qualified Bidder will be permitted a reasonable time to respond to the Overbids at the Auction, as determined by the Debtors;

6.   <u>No Overbid-Skipping</u>:  To remain eligible to participate in the Auction, each Qualified Bidder must submit an Overbid to the then-Prevailing Highest Bid.  To the extent a Qualified Bidder fails to submit an Overbid during its turn, such Qualified Bidder shall be disqualified from continuing to participate in the Auction; *provided* that the Debtors may waive such requirement in their reasonable business judgment, in consultation with the Consultation Parties;

7.   <u>Transcription</u>:  The Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

8.   <u>Acknowledgment of No Collusion</u>:  Each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction.  For the avoidance of doubt, this requirement does not restrict Qualified Bidders from working with other Qualified Bidders with the Debtors' prior written consent;

9.   <u>Acknowledgment of Good Faith</u>:  Each Qualified Bidder will be required to confirm on the record that its bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction(s) if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction); and

10.  <u>Reservation of Rights</u>:  The Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (a) facilitate discussions between the Debtors and individual Qualified Bidders; (b) allow Qualified Bidders to consider how they wish to proceed; and (c) give Qualified Bidders the opportunity to provide the Debtors with additional evidence that the Qualified Bidder has sufficient internal resources, or has received sufficient non contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law.

**X.   ACCEPTANCE OF THE SUCCESSFUL BID.**

The Auction shall continue until (a) there is only one Qualified Bid for the Assets (or one or more Qualified Bids for the Asset Packages) that the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, is (or are) the highest or otherwise best Qualified Bid (or Qualified Bids) (each such Qualified Bid, a "<u>Successful Bid</u>" and

16

the Qualified Bidder submitting any such Successful Bid, the "Successful Bidder"), taking into account any factors the Debtors reasonably deem relevant to the value and certainty of the Qualified Bid(s) to the Debtors' estates and may include, but are not limited to, the Bid Assessment Criteria, and (b) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

The Debtors shall, promptly after the conclusion of the Auction, file with the Court and serve on the parties that receive notice of the Motion, the notice of Successful Bid and the Successful Bidder in the form attached to the Bidding Procedures Order as Exhibit 4 (the "Successful Bidder Notice").  Following conclusion of the Auction and selection of a Successful Bidder, the Debtors shall present the results of the Auction at the Sale Hearing (as defined herein) and shall seek Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "Sale Order").

Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XI.    DESIGNATION OF A BACK-UP BIDDER.

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next highest or otherwise best Bid to the Successful Bid(s) at the Auction for the applicable Assets (each a "Back-Up Bid"), as determined by the Debtors, in the exercise of their reasonable business judgment, and in consultation with the Consultation Parties, will be designated as a back-up bidder (each a "Back-Up Bidder").  The identity of the Back-Up Bidder(s) and the amount and material terms of the Back-Up Bid(s) shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder(s).

If a Successful Bid is terminated for any reason prior to consummation of the Sale Transaction contemplated thereby (a "Successful Bid Failure"), the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed the Successful Bidder and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable.  The Debtors shall be authorized, without further order or direction of the Court, to consummate the Sale Transaction contemplated by the applicable Back-Up Bid with the applicable Back-Up Bidder; *provided* that the Debtors shall file notice of such Successful Bid Failure with the Court at least 24 hours prior to the consummation of the Back-Up Bid.

The Back-Up Bidder(s) shall be required to keep its (or their) initial Qualified Bid(s) open and irrevocable until the earliest to occur of (a) 60 days after the Sale Hearing, (b) consummation of a Sale Transaction with one or more Successful Bidders, or (c) the release of such Back-Up Bid by the Debtors in writing (email being sufficient).

**XII.    SALE HEARING AND APPROVAL OF THE SALE TRANSACTION.**

A hearing to consider the approval of the Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on **November 4, 2024, at 10:00 a.m. (prevailing Central Time)** or as soon as reasonably practicable thereafter, before Honorable Judge Perez, at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, or conducted consistent with the procedures established pursuant to the Court.

At the Sale Hearing, certain findings will be sought from the Court, including, among other things, that:  (a) the Auction was conducted (if held) and each Successful Bidder was selected, in each case in accordance with the Bidding Procedures; (b) the Auction (if held) was fair in substance and procedure; (c) the Successful Bid(s) and Back-Up Bid(s) were Qualified Bids as defined in the Bidding Procedures; and (d) consummation of any Sale Transaction as contemplated by the Successful Bid(s) will provide the highest or otherwise best offer for the Assets and is in the best interests of the Debtors and their estates.  **The Sale Hearing may be continued to a later date by the Debtors by sending notice to creditors or other parties in interest prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder, if any).**

All general objections to the Sale Transaction and entry of any Sale Order must:  (a) be in writing; (b) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (c) comply with the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and all orders of the Court; and (d) be filed with the Court and served **so as to be actually received by the Debtors and the Notice Parties by November 1, 2024 at 4:00 p.m. (prevailing Central Time)**.

**XIII.    RETURN OF GOOD FAITH DEPOSITS.**

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.  Any such Good Faith Deposits will be returned to (a) Qualified Bidders that are not Successful Bidders or Back-Up Bidders on the date that is five business days after the Auction, if any, and (b) Back-Up Bidders on the date that is five business days after the earliest to occur of (i) 60 days after the Sale Hearing, (ii) consummation of a Sale Transaction with one or more Successful Bidders, or (iii) the release of such Back-Up Bid by the Debtors in writing (email being sufficient).

All such deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order or direction of the Court.

**XIV.    RESERVATION OF RIGHTS OF THE DEBTORS AND MODIFICATIONS.**

The Debtors reserve the right to modify these Bidding Procedures in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the sale of the applicable Assets, including, without limitation:  (a) extending the deadlines set

forth in the Bidding Procedures; (b) adjourning the Auction without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable Bid Increment.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

## XV.    FIDUCIARY OUT.

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, or special committee of any board of any Debtor, to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

## **Exhibit 1**

**Stalking Horse Agreement**

[See Docket No. 22-1]

## **Exhibit 2**

**Sale and Auction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 24-90468 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF AUCTION FOR THE**
**SALE OF THE DEBTORS' ASSETS FREE AND**
**CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that on October [●], 2024, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct a marketing and sale process, potentially including an auction (the "Auction"), to sell the Assets. The sale process and Auction, if any, will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order and attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"). **All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

Copies of the Bidding Procedures Order, the Bidding Procedures, or other documents related thereto are available on the Debtors' restructuring website at https://omniagentsolutions.com/DMS or by telephone at (866) 680-8083 in the U.S. and Canada or (818) 574-6886 internationally.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.  The Bid Deadline is **October 25, 2024, at 4:00 p.m. (prevailing Central Time)**.  The Auction will be held on **October 29, 2024**, or such other time and place as the Debtors determine.  If the Auction is cancelled pursuant to the Bidding Procedures, the Debtors will file a notice of cancellation of the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sale Transaction at the Sale Hearing, which is presently scheduled to commence on **November 4, 2024, at 10:00 a.m. (prevailing Central Time)**, before the Judge Perez in the United States Courthouse, 515 Rusk Street, 4th Floor Courtroom 400, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right in their reasonable business judgment to modify the Bidding Procedures in accordance with the Bidding Procedures and/or terminate discussions with any Potential Bidders.

**PLEASE TAKE FURTHER NOTICE** that except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale Transaction **must**:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) if you object to proposed Cure Costs, be filed with the Court or a proposed assignment to the Successful Bidder of any Assigned Contract or the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court and **actually received no later than November 1, 2024** at **4:00 p.m. (prevailing Central Time)** (the "**Sale Transaction Objection Deadline**," the "**Assumption and Assignment Objection Deadline**," and the "**Cure Objection Deadline**").

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE TRANSACTION OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

## NO SUCCESSOR LIABILITY

The Sale Order is expected to provide, among other things, that the Successful Bidder from the Sale Transaction will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, by virtue of the consummation of the transactions contemplated under the Stalking Horse Agreement: (i) neither the Successful Bidder nor any of its affiliates, members, or shareholders are a continuation of any Debtor or its respective estate, there is not substantial continuity between any of the Successful Bidder or its affiliates, members, or shareholders and the Debtors, and there is no continuity of enterprise between the Debtors and the Successful Bidder or its affiliates, members, or shareholders; (ii) neither the Successful Bidder nor any of its affiliates, members, or shareholders are holding themselves out to the public as a continuation of the Debtors or their respective estates; (iii) the transactions do not amount to a consolidation, merger, or *de facto* merger of the Successful Bidder or its affiliates, members, or shareholders and the Debtors and/or the Debtors' estates; and (iv) neither the Successful Bidder nor any of its affiliates, members, or shareholders is a successor or assignee of the Debtors or their estates for any purpose including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), and, except as contemplated in the Stalking Horse Agreement or Modified APA or Sale Order, neither the Successful Bidder nor any of its affiliates, members, or shareholders shall have any liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq. or the Comprehensive Environmental Response Compensation and Liability Act and neither the Successful Bidder nor any of its affiliates, members, or shareholders shall be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act. Except for the Assumed Liabilities or as otherwise contemplated in the Stalking Horse Agreement of Modified APA, (x) the transfer of the Acquired Assets to the Successful Bidder and (y) the assumption and assignment to Successful Bidder of the Assigned Contracts do not and will not subject the Successful Bidder nor any of its affiliates, members, or shareholders to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity including, without limitation, any theory of antitrust or successor or transferee liability.

Houston, Texas
Dated:  October [●], 2024

/s/  *DRAFT*
_____

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:        (713) 226-6000
Facsimile:        (713) 226-6248
Email:            jhiggins@porterhedges.com
                  sjohnson@porterhedges.com
                  myoung-john@porterhedges.com
                  jkeefe@porterhedges.com


*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Elizabeth H. Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                  elizabeth.jones@kirkland.com

-and-

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            alexandra.schwarzman@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit 3</u>**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 24-90468 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on October [●], 2024, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] by which the Court approved procedures for the assumption and assignment of executory contracts and unexpired leases and granted related relief, as set forth in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain of the Contracts listed on **<u>Exhibit A</u>** hereto (the "<u>Potential Assumption List</u>"), which include Contracts to which you are a counterparty, upon approval of a sale or other transaction (including, as the case may be, confirmation of a chapter 11 plan). The Debtors have conducted a review of their books and records and have included in the Potential Assumption List the amount of unpaid monetary obligations under each Contract set forth therein (the "<u>Cure Costs</u>"). The Cure Costs

---

[1]   A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Motion, as applicable.

reflect amounts outstanding as of the Petition Date and have not been reduced by any postpetition payments made pursuant to any order of the Court, including any order approving payments to critical vendors.[3]  For the avoidance of doubt, if the Debtors have already satisfied all or some of the amounts of the Cure Costs listed on the Potential Assumption List on or prior to the date of the filing of this notice, any such payments shall reduce the Cure Costs necessary to be paid in connection with assumption of any such Assigned Contract.  Further, the inclusion of an Assigned Contract on the Potential Assumption List does not constitute an admission as to the executory or non-executory nature of the Assigned Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Assigned Contract.

 **PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to the proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract or the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court and **actually received no later than November 1, 2024** at **4:00 p.m. (prevailing Central Time)** (the "**Sale Transaction Objection Deadline**," the "**Assumption and Assignment Objection Deadline**," and the "**Cure Objection Deadline**") by the following parties: (a) proposed co-counsel for the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Elizabeth H. Jones (elizabeth.jones@kirkland.com) and Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. and (ii) Porter Hedges LLP, 1000 Main Street., 36th Floor, Houston, Texas 77002, Attn.: John F. Higgins (jhiggins@porterhedges.com), M. Shane Johnson (sjohnson@porterhedges.com), Megan Young-John (myoung-john@porterhedges.com), and James A. Keefe (jkeefe@porterhedges.com); (b) the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jana Whitworth (Jana.Whitworth@usdoj.gov) and Andrew Jimenez (Andrew.Jimenez@usdoj.gov); (c) counsel to the DIP Lenders, Ropes & Gray LLP, 191 North Wacker Drive, Chicago, Illinois 60606, Attn: Benjamin M. Rhode (benjamin.rhode@ropesgray.com) and Eric P. Schriesheim (eric.schriesheim@ropesgray.com); (d) counsel to the agent under the DIP Facility, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Mark Somerstein (mark.somerstein@ropesgray.com) and Patricia Chen (patricia.chen@ropesgray.com); and (e) proposed co-counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"),

---

[3]  *See Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and Foreign Claimants and (II) Granting Related Relief* [Docket No. 65]; *Second Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and Foreign Claimants and (II) Granting Related Relief* [Docket No. 171]; and *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and Foreign Claimants, and (II) Granting Related Relief* [Docket No. 190].

(i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019, Attn.: Brian S. Lennon (blennon@willkie.com) and James H. Burbage (jburbage@willkie.com), (ii) Willkie Farr & Gallagher LLP, 600 Travis Street Houston, Texas 77002, Attn.: Jennifer J. Hardy (jhardy2@willkie.com), (iii) Venable LLP, 151 West 42nd Street New York, New York 10036, Attn.: Jeffrey S. Sabin (jssabin@venable.com), Carol Weiner Levy (cwlevy@venable.com), and Arie Peled (apeled@venable.com) and, (iv) Venable LLP 600 Massachusetts Avenue NW, Washington, District of Columbia 20001, Attn.: Andrew J. Currie (ajcurrie@venable.com) (collectively, the "Objection Notice Parties").

PLEASE TAKE FURTHER NOTICE that, notwithstanding the foregoing, if the Debtors file one or more revised versions of this Cure Notice (a "Supplemental Cure Notice"), as set forth in the Bidding Procedures Order, any counterparty to a Contract that is (a) added to the Potential Assumption List pursuant to a Supplemental Cure Notice or (b) that is subject to an amended proposed cure amount shall have 14 calendar days following the service of such Supplemental Cure Notice to file an objection.

PLEASE TAKE FURTHER NOTICE that notwithstanding that the deadline to submit a written proof of claim is November 14, 2024, at 5:00 p.m. (prevailing Central Time),[4] if you disagree with the proposed Cure Costs, your objection must be filed with the Court and **actually received no later than the Cure Objection Deadline**, and the procedures set forth herein and the Assumption and Assignment Procedures in the Bidding Procedures Order will control for all Cure Cost purposes.

PLEASE TAKE FURTHER NOTICE that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale Transaction.

PLEASE TAKE FURTHER NOTICE that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

PLEASE TAKE FURTHER NOTICE that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in

---

[4]    *Order (I) Establishing Deadlines for the Filing of Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof, (III) Approving the Form and Manner of Filing Proofs of Claim, and (IV) Granting Related Relief* [Docket No. 47].

accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

*[Remainder of page intentionally left blank]*

Houston, Texas
Dated:  October [●], 2024

/s/  *DRAFT*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:       (713) 226-6000
Facsimile:       (713) 226-6248
Email:           jhiggins@porterhedges.com
                 sjohnson@porterhedges.com
                 myoung-john@porterhedges.com
                 jkeefe@porterhedges.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Elizabeth H. Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                 elizabeth.jones@kirkland.com

-and-

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           alexandra.schwarzman@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

## **Exhibit A**

Potential Assumption List

## <u>Exhibit 4</u>

**Form of Successful Bidder Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) Case No. 24-90468 (ARP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF SUCCESSFUL BIDDER

 **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") on September 11, 2024.

 **PLEASE TAKE FURTHER NOTICE** that, on October [●], 2024, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"), authorizing the Debtors to solicit and select the highest or otherwise best offer(s) for a Sale Transaction of (a) all or substantially all of the assets or (b) one or more, or any combination of, assets of one or more Debtors (collectively, the "Assets").[2]

 **PLEASE TAKE FURTHER NOTICE** that, on **October 29, 2024, at [●] a.m./p.m. (prevailing Central Time)**, pursuant to the Bidding Procedures Order, the Debtors conducted the

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS.  The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2] Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 22] (the "Bidding Procedures Motion") and the Bidding Procedures Order, as applicable.

Auction with respect to the Assets at Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654.

**PLEASE TAKE FURTHER NOTICE** that, upon the conclusion of the Auction, the Debtors, in the exercise of their reasonable, good-faith business judgement have selected (a) [●] as a Successful Bidder (the "Purchaser"), and (b) [●] as a Back-Up Bidder.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors (collectively, the "Sellers") and [●] (as Purchaser) entered into that certain purchase and sale agreement (the "Purchase Agreement") to effectuate the Sale Transaction on the terms set forth in the Purchase Agreement, a copy of which is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that a list of the proposed Assigned Contracts to be assumed and assigned pursuant to the Purchase Agreement and in connection with the Sale Transaction is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have determined to effectuate the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction of these Assets to the Purchaser at the Sale Hearing scheduled to commence on **November 4, 2024, at 10:00 a.m. (prevailing Central Time)** before the Honorable Judge Perez, in the United States Courthouse, 515 Rusk Street, 4th Floor Courtroom 400, Houston, Texas 77002. The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

**PLEASE TAKE FURTHER NOTICE** that objections specific to the Auction, the Successful Bidder, or the Back-Up Bidder must be made on or before ***November 1, 2024, at 4:00 p.m. (prevailing Central Time)*** (the "Sale Transaction Objection Deadline"). Objections must be made in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to chambers, and must be filed no later than the Sale Transaction Objection Deadline, as applicable, and must be served on the following parties (the "Notice Parties"): (a) proposed co-counsel for the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Elizabeth H. Jones (elizabeth.jones@kirkland.com) and Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. and (ii) Porter Hedges LLP, 1000 Main Street., 36th Floor, Houston, Texas 77002, Attn.: John F. Higgins (jhiggins@porterhedges.com), M. Shane Johnson (sjohnson@porterhedges.com), Megan Young-John (myoung-john@porterhedges.com), and James A. Keefe (jkeefe@porterhedges.com); (b) the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jana Whitworth (Jana.Whitworth@usdoj.gov) and Andrew Jimenez (Andrew.Jimenez@usdoj.gov); (c) counsel to the DIP Lenders, Ropes & Gray LLP, 191 North Wacker Drive, Chicago, Illinois 60606, Attn: Benjamin M. Rhode (benjamin.rhode@ropesgray.com) and Eric P. Schriesheim (eric.schriesheim@ropesgray.com); (d) counsel to the agent under the DIP Facility, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Mark Somerstein (mark.somerstein@ropesgray.com) and Patricia Chen (patricia.chen@ropesgray.com); and

(e) proposed co-counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"), (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019, Attn.:  Brian S. Lennon (blennon@willkie.com) and James H. Burbage (jburbage@willkie.com), (ii) Willkie Farr & Gallagher LLP, 600 Travis Street Houston, Texas 77002, Attn.:  Jennifer J. Hardy (jhardy2@willkie.com), (iii) Venable LLP, 151 West 42nd Street New York, New York 10036, Attn.:  Jeffrey S. Sabin (jssabin@venable.com), Carol Weiner Levy (cwlevy@venable.com), and  Arie  Peled  (apeled@venable.com)  and,  (iv)  Venable  LLP  600 Massachusetts Avenue NW, Washington, District of Columbia 20001, Attn.:  Andrew J. Currie (ajcurrie@venable.com) (collectively, the "Objection Notice Parties").

PLEASE TAKE FURTHER NOTICE, that at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid by the Purchaser and authority to enter into the Purchase Agreement.  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction, and there will be no further bidding at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that this Successful Bidder Notice is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.

PLEASE TAKE FURTHER NOTICE that copies of the Bidding Procedures, the Bidding Procedures Order, this notice, and any other related documents are available:  (a) upon request to Omni by calling (866)-680-8083; (b) by visiting the Debtors' restructuring website at https://omniagentsolutions.com/DMS;  or  (c) for  a  fee  via  PACER  by  visiting https://ecf.txsb.uscourts.gov.

*[Remainder of page intentionally left blank]*

Houston, Texas
Dated:  [●], 2024

/s/  *DRAFT*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:       (713) 226-6000
Facsimile:       (713) 226-6248
Email:            jhiggins@porterhedges.com
                  sjohnson@porterhedges.com
                  myoung-john@porterhedges.com
                  jkeefe@porterhedges.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Elizabeth H. Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                  elizabeth.jones@kirkland.com

-and-

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:            alexandra.schwarzman@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## **Exhibit A**

Purchase Agreement

## **Exhibit B**

Proposed Assigned Contracts