IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | Case No. 24-90468 (ARP) |
| Debtors. | (Jointly Administered) |
| PRESIDIO INTERACTIVE CORPORATION, | |
| Plaintiff, | Adversary Proceeding No. _____ |
| v. | |
| DIGITAL MEDIA SOLUTIONS, LLC | |
| Defendant. | |

# **COMPLAINT**

This action arises out of Defendant/Debtor Digital Media Solutions, LLC ("DMS")'s abuse of process in *Presidio Interactive Corporation v. Digital Media Solutions, LLC*, Case No. 24-002498-CI (Fla. Cir. Ct.), Arbitration Case No. 01-23-0002-8197 (Am. Arbitration Ass'n) ("Underlying Action"). As set forth below, DMS deliberately delayed resolving an arbitration claim and the confirmation of the resulting award (the "Award") by Plaintiff Presidio Interactive Corporation ("Presidio"). DMS did so in a bad-faith effort to run the clock until it could file for bankruptcy in an effort to escape liability. DMS's misconduct caused Presidio substantial damages, including attorneys' fees and expenses incurred in prosecuting the Underlying Action.

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

The Award itself compensates Presidio's costs in defending a consumer class action arising from DMS's alleged statutory violations of the Telephone Consumer Protection Act ("TCPA"). As a AAA arbitrator found, DMS failed to indemnify and defend Presidio in that action in violation of its contractual and common-law obligations. Presidio filed claims for this harm before the bar claims date in the underlying bankruptcy proceeding. (Claim No. 30). The Court should confirm the Award and find Presidio's damages non-dischargeable under 11 U.S.C. § 523(a)(6) because DMS's abusive tactics were willful and malicious.

## THE PARTIES

1. Presidio is a Delaware Corporation with its principal headquarters located in Ponte Vedra Beach, Florida 32082.

2. DMS is a Delaware limited liability company with its principal headquarters in Clearwater, Florida.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. This adversary proceeding is a core proceeding to be heard and determined by the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(A), (B) & (I).

5. To the extent that any matter herein is non-core, Presidio hereby consents to the Court's entry of a final judgment resolving this Adversary Proceeding.

6. Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This adversary proceeding is commenced pursuant to Rule 3007(b) and 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 362(k) and 506 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

## BACKGROUND

8. In 2021, Presidio engaged DMS to perform telemarketing services on Presidio's behalf. Among other things, DMS agreed to comply with the TCPA and to defend and indemnify Presidio for DMS's TCPA violations or related liability.

9. At the time, DMS was one of only two publicly traded telemarketing vendors, then worth billions of dollars, and was regarded as a reliable vendor. Presidio paid a premium for what it believed was a reliable, well-capitalized vendor.

10. On January 17, 2023, Presidio was named as a defendant in a putative class action alleging TCPA liability arising from calls DMS made to a consumer. *Antosi v. Presidio Interactive Corporation, et al.*, Case No. 1:23-cv-00395 (S.D.N.Y.) (the "Antosi Action").

11. Presidio demanded that DMS defend and indemnify it in the Antosi Action, per the Agreement requiring DMS to do so. After stalling for months, DMS ultimately refused to defend and indemnify Presidio.

12. Accordingly, on June 22, 2023, Presidio served an arbitration demand against DMS, alleging that DMS had breached its contractual and common law duties to Presidio by refusing to defend and indemnify it in the Antosi Action.

13. Presidio's story is common. DMS's reputation plummeted in the two years after Presidio retained the company. DMS was named in multiple lawsuits for failing to comply with the TCPA. And in September 2023, it was delisted from the New York Stock Exchange for failing

to meet minimum capitalization requirements. By the time Presidio initiated its arbitration proceeding, DMS's share price fell from $150 to $5.

14. Upon information and belief, DMS knew as early as June 2023 that it would ultimately file bankruptcy and purposefully sought to delay the arbitration and confirmation process with frivolous filings and requests. DMS did this to stop Presidio from obtaining a judgment before DMS could declare bankruptcy.

15. Throughout the dispute, DMS steadfastly refused to engage in any settlement negotiations, even after receiving multiple adverse rulings from the Arbitrator. DMS's posture had no discernable connection to the merits of its defense. Presidio ultimately realized that DMS would never voluntarily pay—and that DMS's goal in the arbitration was to delay by any means possible.

16. On September 25, 2023, Presidio served a settlement proposal pursuant to Fla. Stat. 768.79 and Fla. R. Civ. P. 1.442 (the "Proposal"). In characteristically obstinate fashion, DMS failed to respond to the Proposal and thereby rejected it.

17. The Arbitrator ultimately found that DMS breached its duty to defend Presidio and held an evidentiary hearing to determine the extent that the invoices Presidio paid to defend the Antosi Action were attributable to DMS's breach. DMS refused to examine Presidio's counsel about those invoices. Instead, DMS demanded that it be allowed to challenge the invoices by briefing, which would take longer to resolve.

18. In its briefing, DMS challenged multiple invoice entries that mentioned the words "indemnity" and "Tranzact" (the "Challenged Entries"), claiming that work was necessarily related to the indemnity action against DMS and defending MG LLC d/b/a Tranzact, another defendant in the Antosi Action.

19. On March 21, 2024, the Arbitrator entered the interim Award in favor of Presidio. Overruling most of DMS's objections, the Arbitrator awarded Presidio $100,743.77 in damages.

20. A few weeks later, DMS effectively moved for reconsideration asking the Arbitrator to modify the interim Award. DMS's motion raised many of the same arguments it raised in the evidentiary briefing. DMS further argued that because the Arbitrator sustained some of DMS's objections, she had no choice but to exclude all Challenged Entries.

21. DMS's motion was frivolous as the AAA only permits modification for "clerical, typographical, or computational errors in the award." AAA Rule 50. But DMS didn't care because its motion to modify was intended to delay Presidio from resolving its claims.

22. The Arbitrator denied DMS's motion in May 2024.

23. On July 8, 2024, the Arbitrator entered an order confirming the Award and closing the underlying arbitration. See Award, attached as **Exhibit 1**.

24. As the damages set forth in the Award were at least 25 percent greater than the Proposal, Presidio is entitled under Florida law to the attorney's fees it incurred (and continues to incur) after serving the Proposal.

25. Presidio promptly filed a petition to confirm the Award in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida ("Florida Circuit Court")—more than three months before DMS filed for chapter 11 protection.

26. Continuing its pattern of delay, DMS filed a baseless motion to vacate the Award in the Florida Circuit Court.

27. In an intentionally dishonest reading of Presidio's arbitration demand, DMS argued that Presidio somehow failed to allege that DMS breached its duty to defend under Florida's pleading standards. DMS further claimed that Presidio's headings referring to counts as

5

"indemnity" claims excluded DMS's duty to defend despite expressly plead allegations otherwise. As such, DMS maintained that the Arbitrator exceeded her authority by finding DMS breached its duty to defend and awarding Presidio damages on that theory.

28. The motion was, and is, sanctionably frivolous for multiple independent reasons. Initially, the arbitration was pending before the AAA, so Florida's pleading standards didn't apply. Even if they had, Presidio's demand easily satisfied Florida's pleading standards by specifically and repeatedly alleging that DMS "breached" its "duty to defend" Presidio in the Antosi Action, and that Presidio was seeking to recover its "attorneys' fees" incurred in that action as a result. Moreover, DMS's duty to indemnify included damages Presidio incurred defending the Antosi Action under Florida law. *Hiller Grp., Inc. v. Redwing Carriers, Inc.*, 779 So. 2d 602, 604 (Fla. 2nd DCA 2001). And DMS's position that the caption of a count controls the scope of the claims asserted therein was a form-over-substance argument that flies in the face of established case law.

29. Presidio alleged that DMS breached its duty to defend, the parties extensively briefed and argued that issue, and the Arbitrator properly awarded damages. That is what the entire Arbitration was about.

30. But DMS never intended to win on its groundless motion to vacate. The purpose was instead to improperly delay Presidio from confirming its arbitration award and collecting a judgment against DMS until it was too late because of the bankruptcy. Consistent with that goal, DMS did not set its own motion for hearing.

31. Presidio responded to DMS's motion to vacate on August 15, 2024, and asked DMS's counsel to agree to a hearing on September 3, 2024, about a week before DMS declared bankruptcy. DMS's counsel refused, claiming he had a conflict, which he refused to identify. Upon information and belief, DMS knew that its bankruptcy filing was imminent and wanted to avoid

the risk that the judge might deny DMS's motion to vacate and grant Presidio's petition to confirm the arbitration before DMS could file bankruptcy. As a result of DMS's continued efforts to delay, the motion was set for hearing on October 25, 2024.

32. On September 11, 2024, DMS filed its chapter 11 petition in this Court. *In re Digital Media Solutions, Inc.*, No. 4-24-BK-90468-ARP (Bankr. S.D. Tex.), ECF No. 1.

33. On September 12, 2024, the Court restated and enforced an automatic stay of proceedings against DMS. *Id.*, ECF No. 50. DMS filed a notice of the stay in the Florida Circuit Court on the same day.

34. On October 22, 2024, in compliance with the stay, Presidio canceled the motion-to-vacate hearing.

35. Presidio now brings this adversary proceeding to confirm the Award and recover the substantial harm DMS's bad-faith filings caused to Presidio. Presidio incurred costs prosecuting Presidio's claim before an AAA arbitrator and seeking confirmation of the arbitrator's Award, all while responding to DMS's frivolous motions that were meant to delay Presidio from resolving its claims until DMS declared bankruptcy.

36. DMS has exhibited bad faith at every turn. DMS has broken its agreements, stonewalled, wasted court resources on frivolous motions, and abused judicial processes, including the bankruptcy system. DMS's abusive tactics were willful and malicious.

37. The Court should confirm the Award and find Presidio's claims against DMS non-dischargeable under 11 U.S.C. § 523(a)(6).

## COUNT I
### *Confirmation of Award*

38. Presidio incorporates by reference the foregoing paragraphs as though set forth in full herein.

7

39. Within a year of receiving an arbitration award, "any party to the arbitration may apply to the court so specified for an order confirming the award[.]" 9 U.S.C. § 9.

40. This Court has authority to confirm or vacate an arbitration award under the standards of the Federal Arbitration Act ("FAA"). *See, e.g.*, *In re Texans CUSO Ins. Group, LLC*, 421 B.R. 769, 777 (Bankr. N.D. Tex. 2009) (bankruptcy court confirming arbitration award).

41. The Award constitutes a final, binding arbitration award validly rendered by the AAA, pursuant to DMS and Presidio's agreement, and is ripe for confirmation.

42. Presidio moved to confirm the Award in the Florida Circuit Court but could not continue with that action as DMS initiated this bankruptcy.

43. Accordingly, Presidio asks the Court to enter an order confirming the Award. Ex. 1.

## COUNT II
### *Abuse of Process*

44. Presidio incorporates by reference the foregoing paragraphs as though set forth in full herein.

45. A defendant is liable for abuse of process where he willfully uses a judicially sanctioned process in a wrongful manner for an improper purpose and the wrongful use of that process caused the plaintiff injury.

46. Title 11, U.S. Code section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . or to prevent an abuse of process."

47. Under section 105, bankruptcy judges have broad authority to take necessary or appropriate actions to prevent an abuse of the judicial process, including imposition of sanctions.

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-46 (1991).

48. The imposition of sanctions—which may consist of attorney's fees—under section 105(a) must be accompanied by a specific finding of bad-faith conduct. *Leonard v. Luedtke* (*In re Yorkshire, LLC*), 540 F.3d 328, 332 (5th Cir. 2008); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980); *Chambers*, 501 U.S. at 42-44.

49. Bad-faith conduct may be established if a court finds that the party "deliberately abused the judicial process." *The Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 730 (5th Cir. 2014).

50. While "abuse of process" under section 105(a) is not defined in the Bankruptcy Code, this Court has "essentially define[d] it as 'maneuvers or schemes which would have the effect of undermining the integrity of'" judicial processes. *In re Trevino*, 615 B.R. 108, 128 (Bankr. S.D. Tex. 2020) (quoting *In re Calder*, 93 B.R. 739, 740 (Bankr. D. Utah 1988), and *In re Burrell*, 148 B.R. 820, 824 (Bankr. E.D. Va. 1992)).

51. In addition, 11 U.S.C. § 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

52. An injury is willful and malicious "where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Shcolnik v. Rapid Settlements Ltd.* (*In re Shcolnik*), 670 F.3d 624, 629 (5th Cir. 2012) (quoting *Miller v. J.D. Abrams Inc.* (*In re Miller*), 156 F.3d 598, 606 (5th Cir. 1998)).

53. "The objective standard is met when a court finds that a debtor intentionally took action(s) that necessarily caused, or were substantially certain to cause the injury." *Chowdary v.*

*Ozcelebi* (*In re Ozcelebi*), 640 B.R. 884, 905 (Bankr. S.D. Tex. 2022) (citing *Rainey v. Davenport* (*In re Davenport*), 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006)).

54. The subjective standard is met when "the debtor intended the actual injury that resulted." *Id.* (citing *Davenport*, 353 B.R. at 202).

55. DMS's conduct in filing multiple frivolous motions in the underlying arbitration and confirmation process to prevent Presidio from obtaining an award and confirming it until DMS could claim bankruptcy protection was willful, malicious, and calculated to delay Presidio from resolving its claims until DMS was ready to file bankruptcy.

56. DMS's actions were intended to and substantially certain to harm Presidio.

57. DMS's intentional, willful, and malicious actions caused Presidio substantial injury in evading payment of damages owed to Presidio, as determined in the arbitration Award, and in Presidio's costs to prosecute the Underlying Action. Presidio's injuries include legal expenses it would not have had not pay but for DMS's dilatory tactics. Presidio also suffered harm from DMS's actions because its claim in this proceeding consequently arises from an unconfirmed arbitration award.

WHEREFORE, Presidio prays for the following relief:

(a) That the Court confirm Presidio's Award against DMS;

(b) That the Court enter a non-dischargeable judgment in Presidio's favor and against DMS for actual damages incurred as a consequence of DMS's willful and malicious actions intended and substantially certain to cause Presidio harm, including the amount of the arbitration Award against DMS;

(c) That the Court enter a non-dischargeable judgment in Presidio's favor and against DMS for punitive damages in an amount appropriate to address DMS's willful,

malicious, and intentional conduct and to deter similar conduct in the future;

(d) That the Court enter a non-dischargeable judgment in Presidio's favor and against DMS for Presidio's expenses of litigation, including reasonable attorneys' fees and costs, incurred in the Underlying Action;

(e) That the Court enter a non-dischargeable judgment in Presidio's favor and against DMS for Presidio's expenses of bringing this adversary proceeding; and

(f) That the Court award such other and further relief as it deems just and appropriate under the circumstances.

Respectfully submitted, this 10th day of December 2024.

**WATSTEIN TEREPKA, LLP**

*/s/ Patrick J. Fitzgerald*
Ryan D. Watstein (*pro hac vice* pending)
Patrick J. Fitzgerald (*pro hac vice* pending)
Logan R. Leonard (*pro hac vice* pending
**WATSTEIN TEREPKA, LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Telephone:  (404) 782-0695
ryan@wtlaw.com
pfitzgerald@wtlaw.com
lleonard@wtlaw.com

*Attorneys for Petitioner Presidio Interactive Corporation*

# EXHIBIT 1

# AMERICAN ARBITRATION ASSOCIATION

Case No.: Case No. 01-23-0002-8197

PRESIDIO INTERACTIVE CORPORATION,

    Claimant,

v.

DIGITAL MEDIA SOLUTIONS, LLC,

    Respondent.

_____/

## ORDER ON CLAIMANT'S REQUEST FOR ATTORNEYS' FEES & INTERIM AWARD

Pursuant to the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, on December 21, 2023 the Arbitrator issued its order ("**Order**") on Claimant Presidio Interactive Corporation ("**Presidio**") and Respondent Digital Media Solution, LLC's ("**DMS**") competing motions for summary judgment. In that Order, Presidio was adjudged entitled to reimbursement of the attorneys' fees and costs it incurred in resolving the underlying action ("**Underlying Action**"), which concerned a purported breach of the Telephone Consumer Protection Act ("**TCPA**"),[1] but not entitled to reimbursement for the fees and costs it incurred in bringing the arbitration against DMS to enforce the DMS Call Center Service Agreement ("**Agreement**"), in which DMS had agreed to indemnify Presidio in situations like the Underlying Action.

In light of that ruling, an evidentiary hearing was held on January 25, 2024 to address the parties' positions on what particular fees and costs were recoverable. By agreement of the parties

---

[1]     The Underlying Action involved a claim by a third party, Ideda Antosi, who initiated a nationwide class action against Presidio and co-defendant MG LLC d/b/a Tranzact ("**Tranzact**")).

and per the Order, the parties' filed briefs in support of its positions—DMS filed its Post-Hearing Brief Objecting to Presidio's Damages ("**DMS Brief**") and Presidio filed its Response to DMS's Objection to Damages ("**Presidio's Response**"). Having reviewed and considered these briefs along with testimony and evidence presented at the January 25th hearing and all exhibits and case law submitted therewith, the Arbitrator FINDS as follows:

## STANDARD OF REVIEW

The elements of a breach of contract claim are (1) the existence of a contract, (2) breach of that contract, and (3) damages resulting therefrom. The damages must be proven to be proximately caused by the breach. When a party seeks to recover previously incurred attorneys' fees as an element of a damages in a breach of contract action, the burden of proof is "the presentation of evidence 'sufficient to satisfy the mind of a prudent, impartial person' as to the amount of awardable damages. That is, there must be a reasonable basis in the evidence for the amount awarded." *Sea World of Florida, Inc. v. Ace Am. Ins. Companies, Inc.*, 28 So. 3d 158, 160 (Fla. 5th DCA 2010) (quoting *Schimpf v. Reger*, 691 So. 2d 579, 580 (Fla. 2d DCA 1997)).

## ANALYSIS

For its reimbursement claim, Presidio submitted three separate invoices for its services: Invoice 21881 dated May 10, 2023 and detailing services rendered from January 30, 2023 through February 27, 2023 ("**May 10 Invoice**"); Invoice 21197 dated May 26, 2024 and detailing services rendered from March 1, 2023 through April 3, 2023 ("**May 26 Invoice**"); and Invoice 655 dated January 16, 2024 and detailing services rendered from April 2, 2023 through August 8, 2023 ("**January 2024 Invoice**").

Based on the fact that the vast majority of the billing entries in these three invoices appear to have been part of Presidio's strategy to defend itself and minimize its exposure in the Underlying

2

Action and that DMS did not dispute these entries, the fees associated with these services have been awarded in full. This strategy included Presidio's efforts to obtain insurance coverage in the Underlying Action in an effort to minimize its exposure.

To the extent Presidio's billed services fell outside the scope of the Agreement or were not submitted by Presidio (a) prior to filing Presidio's Response or (b) to DMS earlier in the dispute (indicating that it sought indemnification for certain expenses), those fees have been denied in full or in part and have been subtracted from the amount sought as detailed in **Exhibit A** (attached). Exhibit A includes only those billing entries disputed by DMS.

Specifically, services excluded or reduced from the award concerned the following: Presidio's assumption of its co-defendant's, Tranzact's defense, and overly general billing entries. Regarding Presidio's assumption of Tranzact's defense, it is undisputed that Presidio agreed to defend Tranzact pursuant to an indemnity demand. Based on the evidence of record, it appears that Presidio did not provide notice to DMS of its intent to seek indemnification for its expenses related to Tranzact when the Underlying Action was pending (*see e.g.*, Ex. D to DMS Response (Feb. 23, 2023 letter from Presidio to DMS)), and Presidio did not put DMS on notice at any time prior to its submission of it proof of damages that it believed this claim fell within the scope of the Agreement and it would seek reimbursement. Additionally, other billed services lacked sufficient clarity to identify whether the service pertained to indemnification regarding Presidio's claim against DMS or Tranzact's claim against Presidio. The Arbitrator, therefore, considered Presidio's request and made reasonable reductions in the fees for such services.

3

In sum, the following amounts were deducted from the three invoices to determine the total amount awarded:

| Invoice | Total billed | Amount excluded | Fee awarded |
|---|---|---|---|
| May 10 Invoice | $11,518.50 | $385.00 | $11,133.50 |
| May 26 Invoice | $4,841.50 | $901.25 | $3,940.25 |
| Jan. 2024 Invoice | $100,855.00 | $15,184.98 | $85,670.02 |
| Total fee awarded: | | | $100,743.77 |

How the "amount excluded" was calculated is detailed in Exhibit A.

## INTERIM AWARD

Claimant, Presidio Interactive Corporation's claim for breach of contract is GRANTED. Respondent, Digital Media Solutions, LLC shall pay Presidio's attorneys' fees in the sum of ONE HUNDRED THOUSAND SEVEN HUNDRED AND FORTY THREE DOLLARS AND SEVENTY SEVEN CENTS ($100,743.77) within 30 days of the date of this Interim Award.

The Arbitrator retains jurisdiction to hear Presidio's request for an award of attorneys in the ongoing Arbitration proceeding. Presidio may file a request to recover attorneys' fees and costs incurred in the Arbitration under the Florida Offer of Judgment and Demand for Judgment statute. DMS will be given an opportunity to respond. The parties shall advise the Arbitrator whether they are going forward with this action 10 days from the date of this Award. In the event the parties pursue another action, a new briefing scheduling will be entered. This interim Award shall remain in full force and effect until such time as a Final Award is rendered.

DONE AND ORDERED this 21st day of March 2024.

*Elaine E. Feldman*
Elaine E. Feldman
Arbitrator

# Exhibit A

| Invoice | Service date | Attorney initials | Description of excluded service | Hourly rate | Hours billed | Total billed | Amount excluded | Fee awarded |
|---|---|---|---|---|---|---|---|---|
| May 10, 2023 Invoice | 2/14/23 | MSQ | Compose initial case assessment; conference with R. Watstein regarding indemnification; teleconference with clients regarding case strategy. | $ 525 | 2.20 | $ 1,155.00 | $ 385.00 | $ 770.00 |
| SUBTOTAL | | | | | | | $ 385.00 | |
| May 26, 2023 Invoice | 3/6/23 | MSQ | Draft email to DMS to ping regarding call records; correspond with P. Bond regarding TZ's indemnity demand. | $ 525 | 0.30 | $ 157.50 | $ 78.75 | $ 78.75 |
| May 26, 2023 Invoice | 3/7/23 | MSQ | Review insurance policies; conference with clients regarding indemnity demand from TZ; draft email to R. Watstein summarizing call. | $ 525 | 1.50 | $ 787.50 | $ 525.00 | $ 262.50 |
| May 26, 2023 Invoice | 3/17/23 | MSQ | Draft update email to clients regarding TZ defense demand renewal. | $ 525 | 0.10 | $ 52.50 | $ 52.50 | $ - |
| May 26, 2023 Invoice | 3/3/23 | MSQ | Conference with R. Watstein regarding case strategy; review indemnity demand from TZ; draft update email to clients regarding indemnity demand | $ 525 | 0.70 | $ 367.50 | $ 245.00 | $ 122.50 |
| SUBTOTAL | | | | | | | $ 901.25 | |
| Jan. 2024 Invoice | 4/19/23 | PF | Prepare for call with Presidio team about indemnity demand to call vendor and call records; conference cal with Presidio team | $ 475 | 1.00 | $ 475.00 | $ 475.00 | $ - |
| Jan. 2024 Invoice | 4/25/23 | PF | Prepare conflict waiver for Transact describing potential conflict of interest | $ 475 | 1.99 | $ 945.25 | $ 945.25 | $ - |
| Jan. 2024 Invoice | 4/26/23 | PF | Continue to prepare conflict waiver agreement by describing potential conflict of interest; prepare joint defense agreement by describing reservation of rights; determine whether we have a defense to personal jurisdiction | $ 475 | 4.20 | $ 1,995.00 | $ 1,330.00 | $ 665.00 |
| Jan. 2024 Invoice | 4/27/23 | PF | Continue to prepare joint defense agreement with Tranzact by merging reservation of rights into engagement agreement | $ 475 | 2.42 | $ 1,149.50 | $ 1,149.50 | $ - |
| Jan. 2024 Invoice | 5/13/23 | PF | Correspond with client to provide update; prepare a notice of joint contact information for video conference; discuss proposed third party complaint and naming Tranzact as a plaintiff | $ 475 | 0.90 | $ 427.50 | $ 332.50 | $ 95.00 |
| Jan. 2024 Invoice | 6/2/23 | RDW | Prepare for and participate in call with client regarding update and next steps; manage preparation of third party complaint; outline same; telephone conference with Tranzact's counsel regarding various issues. | $ 695 | 1.40 | $ 973.00 | $ 243.25 | $ 729.75 |
| Jan. 2024 Invoice | 6/4/23 | RDW | Correspond with Tranzact counsel regarding dismissal issues; investigate right of assignment in DMS contract. | $ 695 | 0.20 | $ 139.00 | $ 139.00 | $ - |
| Jan. 2024 Invoice | 6/16/23 | MN | Attention to arbitration provision in contract; strategize with P. Fitzgerald re: same. | $ 420 | 0.20 | $ 84.00 | $ 84.00 | $ - |
| Jan. 2024 Invoice | 6/16/23 | JB | Confer with working group regarding objections to Rule 30(b)(6) Notices of Deposition to Presidio and Tranzact; revise Third Party Complaint; confer with P. Fitzgerald regarding same. | $ 290 | 1.30 | $ 377.00 | $ 251.33 | $ 125.67 |
| Jan. 2024 Invoice | 6/20/23 | JB | Draft responses and objections to First Discovery Requests to Tranzact; revise responses and objections to First and Second Discovery Requests to Presidio; confer with P. Fitzgerald regarding same. | $ 290 | 1.90 | $ 551.00 | $ 367.33 | $ 183.67 |
| Jan. 2024 Invoice | 6/21/23 | PF | Prepare update to client describing proposed arbitration against DMS and impact it could have on defense; prepare update to co-defendant counsel. | $ 475 | 2.90 | $ 1,377.50 | $ 1,377.50 | $ - |

1

| Invoice | Date | Atty | Description | Rate | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|---|---|
| Jan. 2024 Invoice | 6/22/23 | RDW | Revise and comment on discovery responses; telephone conference with DMS's counsel regarding subpoena, response and counterclaim. | $ 695 | 1.60 | $ 1,112.00 | $ 370.67 | $ 741.33 |
| Jan. 2024 Invoice | 6/24/23 | RDW | Attention to discovery issues | $ 695 | 0.10 | $ 69.50 | $ 34.75 | $ 34.75 |
| Jan. 2024 Invoice | 6/25/23 | PF | Correspondence with Tranzact counsel PF responding to criticism about discovery request response; prepare discovery responses by identifying objections based on overbreadth; correspondence about initial disclosures. | $ 475 | 2.99 | $ 1,420.25 | $ 710.13 | $ 710.12 |
| Jan. 2024 Invoice | 6/26/23 | PF | Prepare responses to discovery; correspondence with co-defendant counsel to discuss terms of conflict waiver; prepare motion to enter protective order. | $ 475 | 2.48 | $ 1,178.00 | $ 225.00 | $ 953.00 |
| Jan. 2024 Invoice | 6/26/23 | MN | Prepare draft Rule 26 initial disclosures for both defendants. | $ 420 | 1.10 | $ 462.00 | $ 231.00 | $ 231.00 |
| Jan. 2024 Invoice | 6/26/23 | RDW | Attention to joint defense issues; correspond with P. Fitzgerald regarding same. | $ 695 | 0.20 | $ 139.00 | $ 139.00 | $ - |
| Jan. 2024 Invoice | 6/28/23 | PF | Prepare timeline of events that impact liability; prepare discovery responses on behalf of Tranzact; prepare discovery responses on behalf of Presidio. | $ 475 | 1.89 | $ 897.75 | $ 299.25 | $ 598.50 |
| Jan. 2024 Invoice | 6/29/23 | JB | Review second set of discovery requests from plaintiff and confer with P. Fitzgerald regarding same | $ 290 | 0.40 | $ 116.00 | $ 58.00 | $ 58.00 |
| Jan. 2024 Invoice | 6/29/23 | RDW | Review Plaintiffs list of discovery dispute topics and strategize regarding responses to same; plan regarding evidence we will need for summary judgment. | $ 695 | 0.40 | $ 278.00 | $ 139.00 | $ 139.00 |
| Jan. 2024 Invoice | 6/30/23 | RDW | Revise and comment on multiple sets of discovery responses for Presidio and Tranzact; review and comment on initial disclosures; review and comment on timeline in connection with same; conference with client regarding various issues. | $ 695 | 1.90 | $ 1,320.50 | $ 660.25 | $ 660.25 |
| Jan. 2024 Invoice | 6/30/23 | PF | Prepare client update to describe discovery requests, the status of insurance demand, and DMS response to arbitration | $ 475 | 1.69 | $ 802.75 | $ 267.58 | $ 535.17 |
| Jan. 2024 Invoice | 7/1/23 | RDW | Revise and comment on Tranzact discovery responses. | $ 695 | 0.50 | $ 347.50 | $ 347.50 | $ - |
| Jan. 2024 Invoice | 7/3/23 | PF | Correspondence with client about discovery responses and prepare revisions to clarify that Presidio has no knowledge whether calls were placed by DMS; finalize responses to discovery for Tranzact and Presidio; correspondence with insurer. | $ 475 | 2.90 | $ 1,377.50 | $ 459.17 | $ 918.33 |
| Jan. 2024 Invoice | 7/3/23 | RDW | Review communication from insurer and correspond with P. Fitzgerald regarding same; review client responses regarding discovery; comment on revisions to discovery responses. | $ 695 | 0.30 | $ 208.50 | $ 159.17 | $ 49.33 |
| Jan. 2024 Invoice | 7/6/23 | JB | Finalize conflict waiver and engagement letter to Tranzact; email to P. Bond regarding same; confer with P. Fitzgerald regarding same; research regarding .1 Antosi; review and analyze Peoplemap report regarding same; confer with P. Fitzgerald regarding same; revise Objections to Plaintiffs Notice of Rule 30(b)(6) Deposition; confer with P. Fitzgerald regarding same. | $ 290 | 2.60 | $ 754.00 | $ 377.00 | $ 377.00 |
| Jan. 2024 Invoice | 7/7/23 | PF | Prepare responses to notice of deposition to Tranzact by stating objections to requests that require information only known to DMS and determine best representative to testify to discoverable topics. | $ 475 | 2.80 | $ 1,330.00 | $ 1,330.00 | $ - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan. 2024 Invoice | 7/10/23 | PF | Prepare responses to discovery for Tranzact by reviewing its counsel's changes; review subpoena to calling vendor; prepare for meet and confer with opposing counsel regarding discovery responses; prepare correspondence to insurer regarding status of claim. | $ | 475 | 4.60 | $ | 2,185.00 | $ | 950.00 | $ | 1,235.00 |
| Jan. 2024 Invoice | 7/12/23 | PF | Correspondence with client about meet and confer with opposing counsel; correspond with co-defendant counsel about counsel's inability to contact plaintiff; determine whether new action against Tranzact is related to Presidio. | $ | 475 | 1.50 | $ | 712.50 | $ | 237.50 | $ | 475.00 |
| Jan. 2024 Invoice | 7/12/23 | DM | Emails with Patrick Fitzgerald re discovery DM responses and telephone call re case background; review objections to deposition notice and prepare email to Patrick with edits and comments to same. | $ | 595 | 2.30 | $ | 1,368.50 | $ | 684.25 | $ | 684.25 |
| Jan. 2024 Invoice | 7/13/23 | PF | Prepare conflict checklist for arbitration action by identifying relevant parties. | $ | 475 | 0.90 | $ | 427.50 | $ | 427.50 | $ | - |
| Jan. 2024 Invoice | 7/17/23 | JB | Revise/finalize Joint Request for Protective Order; revise/finalize proposed Protective Order; review Judge Rochon's rules regarding same; confer with P. Fitzgerald regarding same; update discovery documents regarding Tranzact discovery responses responses and production and initial disclosures; confer with P. Fitzgerald regarding same. | $ | 290 | 1.70 | $ | 493.00 | $ | 98.60 | $ | 394.40 |
| Jan. 2024 Invoice | 7/26/23 | PF | Correspondence with opposing counsel about dismissal; correspondence with Tranzact about stipulation language; determine whether Tranzact approval is needed | $ | 475 | 1.20 | $ | 570.00 | $ | 285.00 | $ | 285.00 |
| SUBTOTAL: | | | | | | | | | | | $ | 15,184.98 |

3