United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 15, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 24-90468 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### FINDINGS OF FACT, CONCLUSIONS
### OF LAW, AND ORDER APPROVING THE DEBTORS'
### DISCLOSURE STATEMENT AND THE JOINT CHAPTER 11 PLAN
### OF DIGITAL MEDIA SOLUTIONS, INC. AND ITS DEBTOR AFFILIATES

[Relates to Docket Nos. 448, 521, 522, 592, 632, 636, 637, 638]

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a. commenced, on September 11, 2024 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code");

b. continued to operate and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. obtained, on September 13, 2024, entry of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition Secured*

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2] All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein). The rules of interpretation set forth in Article I.B of the Plan apply.

       *Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 66];

d.      obtained, on October 16, 2024, entry of the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 193];

e.      obtained, on October 16, 2024, entry of the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 194];

f.      obtained, on November 4, 2024, entry of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 423];

g.      obtained, on November 4, 2024, entry of the *Order (I) Authorizing the Sale of the ClickDealer Assets to Imon Media Ltd Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform Their Obligations Under the Imon Asset Purchase Agreement, and (III) Granting Related Relief* [Docket No. 424] (the "<u>Imon Sale Order</u>");

h.      obtained, on November 4, 2024, entry of the *Order (I) Authorizing the Sale of Certain of the Debtors' Assets to the Stalking Horse Bidder Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 425] (the "<u>Stalking Horse Sale Order</u>" and, together with the Imon Sale Order, the "<u>Sale Orders</u>");

i.      filed, on November 20, 2024, the *Disclosure Statement for the Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 446], the *Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 447], and the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures with Respect to Confirmation of the*

*Debtors' Proposed Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 448] (the "<u>Conditional Disclosure Statement Motion</u>");

j.      filed, on December 9, 2024, the *Disclosure Statement for the Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 522] (the "<u>Disclosure Statement</u>") and the *Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 521] (as may be further modified, supplemented, or amended from time to time, the "<u>Plan</u>");

k.      caused notice of the Combined Hearing (the "<u>Combined Hearing Notice</u>") to be published, on December 16, 2024, in *The New York Times* (national edition) and the *Financial Times* (global edition), as evidenced by the *Certificates of Publication* [Docket Nos. 541, 542];

l.      filed, on December 23, 2024, the *Notice of Filing of Plan Supplement* [Docket No. 592] (the "<u>Initial Plan Supplement</u>");

m.      filed, on January 10, 2025, the *Notice of Filing of First Amended Plan Supplement* [Docket No. 632] (the "<u>First Amended Plan Supplement</u>" and, together with the Initial Plan Supplement, the "<u>Plan Supplement</u>");

n.      filed, on January 14, 2025, the *Declaration of Jeriad R. Paul of Omni Agent Solutions, Inc., Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 636] (the "<u>Voting Report</u>");

o.      filed, on January 14, 2025, the *Declaration of Zachary Rose, Chief Restructuring Officer of Digital Media Solutions, Inc., in Support of (I) Approval of the Debtors' Disclosure Statement on a Final Basis and (II) Confirmation of the Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 638] (the "<u>Rose Declaration</u>"); and

p.      filed, on January 14, 2025, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates and Omnibus Reply to Objections Thereto* [Docket No. 637] (the "<u>Confirmation Brief</u>").

The Bankruptcy Court, having:

a.      reviewed the procedures for voting on the Plan and for opting out of the Third-Party Release (the "<u>Solicitation Procedures</u>");

b.      entered, on December 9, 2024, the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures With Respect to Confirmation of the Debtors' Proposed Chapter 11 Plan,*

*(III) Approving the Forms of Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. 518] (the "<u>Conditional Disclosure Statement Order</u>"), which, among other things, set (i) January 7, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for objections to approval of the Disclosure Statement and Confirmation of the Plan (the "<u>Plan and Disclosure Statement Objection Deadline</u>"); and (ii) January 15, 2025, at 10:00 a.m. (prevailing Central Time) as the date and time for the Combined Hearing;

c.  reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Rose Declaration, the Voting Report, the Plan Supplement, the Combined Hearing Notice, the Solicitation Package, the Publication Notice, and all other filed pleadings, exhibits, statements, affidavits, declarations, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

d.  reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

e.  held the Combined Hearing;

f.  heard and considered the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto;

g.  overruled any and all objections (if any) to Confirmation of the Plan, and any and all statements and reservations of rights related thereto not consensually resolved or withdrawn;

h.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval or Confirmation of the Plan, including any objections thereto; and

i.  taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

**NOW, THEREFORE**, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and the arguments and evidence presented at

the Combined Hearing establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

A.       **Findings of Fact and Conclusions of Law.**

1.       The findings of fact and conclusions of law set forth herein, and in the record of the Combined Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

B.       **Jurisdiction and Venue, Eligibility for Relief.**

2.       The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.  Each of the Debtors was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

C.       **Commencement and Joint Administration of these Chapter 11 Cases.**

3.       On the Petition Date, the Debtors commenced filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On September 12, 2024, the Bankruptcy Court entered the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting*

*Related Relief* [Docket No. 28] pursuant to which the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). On September 23, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 127]. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**D.     Bankruptcy Rule 3016.**

4.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**E.     Judicial Notice, Objections.**

5.     The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases. All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objection to final approval of the Disclosure Statement and Confirmation of the Plan and all objections, statements, informal objections, and reservations of rights not consensually resolved, agreed to, or withdrawn, if any, related to the Disclosure Statement, Plan, or Confirmation are hereby overruled on the merits with prejudice.

**F.**     **Final Approval of the Disclosure Statement.**

6.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including, to the extent applicable, the Securities Act and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code), and is approved in all respects.  The Debtors' use of the Disclosure Statement in solicitation of acceptances of the Plan is approved and the Disclosure Statement is approved on a final basis pursuant to this Confirmation Order.

7.      On December 9, 2024, the Bankruptcy Court entered the Conditional Disclosure Statement Order, which, among other things, established January 7, 2025, at 4:00 p.m. (prevailing Central Time) as the Plan and Disclosure Statement Objection Deadline, January 7, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for voting to accept or reject the Plan (the "Voting Deadline"), and January 15, 2025, at 10:00 a.m. (prevailing Central Time) as the date and time for the commencement of the Combined Hearing.

**G.**     **Solicitation and Voting; Notice.**

8.      The Debtors provided due, adequate, and sufficient notice of the Voting Deadline, the Plan and Disclosure Statement Objection Deadline, the deadlines to opt-out of, or otherwise object to, the Third-Party Release, and the Combined Hearing in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Conditional Disclosure Statement Order, and any other applicable rules, laws, and regulations.  No other or further notice is or shall be required.

9.      As described in the Voting Report, the Debtors transmitted the Solicitation Package to all Holders of Claims entitled to vote on the Plan (as of the Voting Record Date) and the Combined Hearing Notice to all parties in interest.  Transmission and service of the

foregoing, and any and all other documents associated with the Debtors' solicitation, complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Conditional Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation, and were timely, adequate, and sufficient, and no other or further notice is or shall be required.

10.     Under the circumstances of these Chapter 11 Cases, the period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.  The process for solicitation of votes to accept or reject the Plan was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Conditional Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.  The Debtors, the Released Parties, the Exculpated Parties, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys are hereby granted the protections provided under section 1125(e) of the Bankruptcy Code.

11.     Holders of Claims in Class 3 and Class 4 were eligible to vote on the Plan in accordance with the procedures delineated in the Solicitation Package.  The Ballots used to solicit votes to accept or reject the Plan from Holders in the Voting Classes were appropriate and adequately addressed the particular needs of these Chapter 11 Cases.  As evidenced by the Voting Report, the majority (86.22%) of the Holders in Class 3 and the majority (70.59%) of the Holders in Class 4, voted to accept the Plan.

12.     With respect to each applicable Debtor, Class 1 and Class 2, are Unimpaired and are each presumed to accept the Plan by operation of law, and are not entitled to vote on the Plan; all Interests in DMS Inc. in Class 7 and Section 510(b) Claims in Class 8 are impaired and

are each deemed to reject the Plan by operation of law; and Intercompany Claims in Class 5 and Intercompany Interests in Class 6 are either deemed to reject the Plan or presumed to accept Plan, but will not receive a distribution under the Plan (the foregoing Classes, collectively, the "Non-Voting Classes").  The Debtors were not required to solicit votes from Holders of Claims or Interests, as applicable, in the Non-Voting Classes.

13.     The solicitation of votes on the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Conditional Disclosure Statement Order, and all applicable non-bankruptcy rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

**H.     Burden of Proof—Confirmation of the Plan.**

14.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**I.     Plan Supplement.**

15.     The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good, proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable laws, rules, and regulations, and no other or further notice is or shall be required with respect to the Plan Supplement and all of the documents included therein.

16.     All documents included in the Plan Supplement, including any amendments, modifications, and supplements thereto, and all documents and agreements related thereto

(including all exhibits and attachments thereto), are integral to, part of, and incorporated by reference into the Plan and this Confirmation Order.

17.     Subject to the terms of the Plan and/or this Confirmation Order, the Debtors' right to alter, amend, update, or modify the Plan Supplement on or before the Effective Date is reserved.  All parties were provided due, adequate, and sufficient notice of the Plan Supplement.

**J.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

18.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

   **a.      Compliance of the Plan with Applicable Provisions or the Bankruptcy Code—Section 1129(a)(1).**

19.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

   **i.       Proper Classification—Sections 1122 and 1123.**

20.     The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into eight Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

   **ii.      Specified Unimpaired Classes—Section 1123(a)(2).**

21.     The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes

(the "<u>Unimpaired Classes</u>") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
| --- | --- |
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 5 | Intercompany Claims |
| 6 | Intercompany Interests |

22. Additionally, Article IV of the Plan specifies that Allowed Administrative Claims, Priority Tax Claims, DIP Facility Claims, Professional Fee Claims, and all fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

### iii. Specified Treatment of Impaired Classes—Section 1123(a)(3).

23. The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "<u>Impaired Classes</u>") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and describes the treatment of such Classes:

| Class | Designation |
| --- | --- |
| 3 | Prepetition Loan Claims |
| 4 | General Unsecured Claims |
| 5 | Intercompany Claims |
| 6 | Intercompany Interests |
| 7 | Existing DMS Inc. Interests |
| 8 | Section 510(b) Claims |

### iv. No Discrimination—Section 1123(a)(4).

24. The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each

respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### v.     Adequate Means for Plan Implementation—Section 1123(a)(5).

25.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the various documents included in the Plan Supplement provide adequate and proper means for execution and implementation of the Plan, including, among other things: (a) the Sale Transactions; (b) implementation of the Committee Settlement; (c) the sources of consideration for Plan distributions; (d) a description of the Wind-Down; and (e) establishment and appointment of the Plan Administrator.   In addition to these core transactions, the Plan sets forth other critical mechanics of the Debtors' Wind-Down, such as the cancellation of securities and agreements and payment of certain fees.

### vi.     Non-Voting Equity Securities—Section 1123(a)(6).

26.     The Plan does not provide for the issuance of equity or other securities of the Debtors, including non-voting equity securities.   Thus, section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan.

### vii.     Directors and Officers—Section 1123(a)(7).

27.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.K of the Plan, on the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.   In addition, Article IV.F provides that, as of the Effective Date, the

Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers and officers. The selection of the Plan Administrator and the process therefore is consistent with the interests of Holders of Claims and Interests and public policy.

> **b.** **Discretionary Contents of the Plan—Section 1123(b).**

28. The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are consistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

> **i.** **Impairment or Unimpairment of Classes—Section 1123(b)(1).**

29. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan leaves each Class of Claims and Interests Impaired, Unimpaired, or Impaired / Unimpaired.

> **ii.** **Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

30. The provisions governing the treatment of Executory Contracts and Unexpired Leases are set forth in Article V of the Plan.

31. On the Effective Date each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan, including the Schedule of Assumed Executory Contracts and Unexpired Leases, or otherwise is specifically described in the Plan to not be rejected; (ii) is subject to a pending motion to assume such Unexpired Lease or Executory Contract (or one of the Sale

Orders contemplating the assumption and assignment of such Unexpired Lease or Executory Contract) as of the Confirmation Date (unless the counterparty to such Unexpired Lease or Executory Contract and the Debtors agree otherwise); (iii) has been previously assumed or rejected by the Debtors pursuant to a Bankruptcy Court order; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a D&O Liability Insurance Policy; (vi) is the Sale Transaction Documentation; or (vii) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any Sale Transactions.

32.     The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases.

33.     Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to 45 days after the Effective Date.

      **iii.     Settlement, Releases, Exculpation, Injunction, and Release of Claims and Interests--Section 1123(b)(3).**

34.     ***Settlement, Compromise, and Release of Claims and Interests***.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the Plan is and shall be deemed a good-faith compromise, and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, satisfied, or otherwise resolved pursuant to the Plan, including resolutions of intercompany liabilities,

14

allocation of value among the Debtors, and treatment of Holder of General Unsecured Claims against each of the Debtors. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of the Plan.

35. ***Release of Liens.*** Except as otherwise specifically provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Wind-Down Debtors. Any Holder of such Secured Claim (and the applicable agents of such Holder) is authorized and directed, at the sole cost and expense of the Wind-Down Debtors, to release any Collateral or other property of any Debtor (including any cash Collateral and possessory Collateral) held by such Holder (and the applicable agents for such Holder), and to

take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Liens and/or security interest, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interest.

36.     To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interest to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall, at the Wind-Down Debtors' sole cost and expense, take any and all steps reasonably requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

37.     ***Debtor Releases.***  Article VIII.C of the Plan provides for releases by the Debtors, as of the Effective Date, of, among other things, certain claims, rights, and causes of action that the Debtors, the Wind-Down Debtors, and their Estates may have against the Released Parties (the "Debtor Release").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Each of the Released Parties has made a substantial contribution to the Plan, and the Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  Accordingly, and for the reasons set forth herein and in the Confirmation

16

Brief, the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' substantial contributions to facilitating the Sale Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by Article VIII.C of the Plan; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

38.     ***Third Party Releases.***     Article VIII.D of the Plan describes certain releases granted by the Releasing Parties (the "<u>Third-Party Release</u>"). Each of the Released Parties has made a substantial contribution to the Plan, and the Third-Party Release is an essential component of the Plan. In addition, the Third-Party Release is consensual in that all parties to be bound by the Third-Party Release were given due and adequate notice of the Third-Party Release and sufficient opportunity and instruction to elect to opt out of the Third-Party Release. Accordingly, for the reasons set forth herein and in the Confirmation Brief, the Third Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' substantial contributions to facilitating the Sale Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by Article VIII.D of the Plan; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

39.     The Releasing Parties were provided proper and sufficient notice of these Chapter 11 Cases, the Plan, the Third-Party Releases, and the Plan and Disclosure Statement Objection Deadline through the service of the Solicitation Materials and distribution of the Ballots.  No further notice is necessary.   The Plan and each of the Solicitation Materials included the Third-Party Releases provision in conspicuous, boldface type, and the Non-Voting Status Notice informed Holders of Claims or Interests in the Debtors that they would be deemed to have consented to the Third-Party Release if they did not timely return the Opt-Out Form included in the Non-Voting Status Notice by the Voting Deadline.   The Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary.  The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

40.     ***Exculpation.***   The Exculpation provided by Article VIII.E of the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these Chapter 11 Cases.  The Exculpated Parties have participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.   Article VIII.E shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date or after the Effective Date.

41.     ***Injunction.***   The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the

Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII.F of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

42.    ***Retained Causes of Action***.    In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, any applicable Final Order, and any applicable Sale Transaction Documentation, each Wind-Down Debtor shall retain and may enforce, all rights to commence and pursue as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any action specifically enumerated in the Schedule of Retained Causes of Action or the Schedule of Reserved Claims, and the Wind-Down Debtors' or Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including Article VIII of the Plan, pursuant to a Final Order, or as assigned and transferred pursuant to any applicable Sale Transaction Documentation, which, in each case, shall be deemed released and waived by the Debtors as of the Effective Date. For the avoidance of doubt, the Wind-Down Debtors will retain the right to enforce the terms of the Sale Transaction Documentation. Any retained Causes of Action shall remain with the Debtors and shall vest with the Wind-Down Debtors as of the Effective Date.

43.    The Wind-Down Debtors may pursue any Causes of Action. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released under the Plan or pursuant to a Final Order or as assigned or transferred pursuant to any Sale Transaction Documentation, the

Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity. Unless otherwise agreed upon in writing by the Debtors or the Wind-Down Debtors, all objections to the Schedule of Retained Causes of Action or the Schedule of Reserved Claims must be Filed with the Bankruptcy Court within the 30-day period following the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Wind-Down Debtor, without the need for any objection or responsive pleading by a representative of any Wind-Down Debtor or Plan Administrator or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. The Wind-Down Debtor may settle any such objection without further notice or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action or the Schedule of Reserved Claims that remains unresolved by the Wind-Down Debtors and the objecting party for 30 days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, transferred, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or any applicable Sale Transaction Documentation, the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

44.     The Wind-Down Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contracts or Unexpired Leases during the Chapter 11 Cases or pursuant to the Plan. In accordance with section

1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provide in the Plan, including Article VIII of the Plan.   The applicable Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.   The Wind-Down Debtors shall have the right and authority to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### iv.      Cure of Defaults—1123(d)

45.      Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed by the Debtors, as set forth in the Plan and as reflected in the Cure Notice, in accordance with section 365(b)(1) of the Bankruptcy Code.   The Debtors or the Wind-Down Debtors, as applicable, shall pay the Cure Costs in Cash on or about the Effective Date, subject to the terms of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.   In the event of a dispute regarding (i) the Cure Costs, (ii) the ability of any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.   As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed

Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**K.      Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

46.      The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. The Debtors each are eligible debtors under section 109, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code. Each Debtor complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule, and regulation, the Conditional Disclosure Statement Order, and all other applicable law in transmitting the Solicitation Packages, related documents and notices, and in soliciting and tabulating the votes on the Plan.

**L.      Plan Proposed in Good Faith—Section 1129(a)(3).**

47.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the support of Holders of Claims and/or Interests for the Plan, and the transactions to be implemented pursuant thereto. The Debtors' good faith is evident from the facts and the record of these Chapter 11 Cases, the Plan, the Disclosure Statement, the record of the Combined Hearing and other proceedings held in these Chapter 11 Cases.

48.      These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors' business. The Plan was the product of extensive

negotiations conducted at arm's length among the Debtors and certain of their key stakeholders. The Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

49.    The Debtors and each of the constituents who negotiated the Plan, and each of their respective officers, directors, managers, members, employees, advisors, and professionals (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.

**M.    Payment for Services or Costs and Expenses—Section 1129(a)(4).**

50.    The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**N.    Directors, Officers, and Insiders—Section 1129(a)(5).**

51.    Because the Plan provides for the dissolution of the Debtors' Estates and the existing board of directors or managers, as applicable, of the Debtors and the dismissal of any remaining officers, directors, managers, or managing members of any Debtor, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors.  To the extent section 1129(a)(5) applies

to the Debtors during the Wind-Down, they have satisfied the requirements of this provision by, among other things, disclosing the identity and compensation of the Plan Administrator.

**O.**     **No Rate Changes—Section 1129(a)(6).**

52.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Section 1129(a)(6) of the Bankruptcy Code therefore does not apply to the Plan.

**P.**     **Best Interests of Creditors—Section 1129(a)(7).**

53.     Each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  The Liquidation Analysis (as defined in the Disclosure Statement and attached as Exhibit B thereto), and the other evidence related thereto, including the Rose Declaration, as supplemented by any evidence proffered or adduced at or prior to the Combined Hearing, are persuasive and credible. The methodology used and assumptions made in the Liquidation Analysis, as supplemented by any evidence proffered or adduced at or prior to the Combined Hearing, are reasonable.  The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**Q.**     **Acceptance by Certain Classes—Section 1129(a)(8) and Section 1129(b).**

54.     Classes 1 and 2 are Unimpaired under the Plan and are each presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 3 voted to accept the Plan. Nevertheless, because the Plan has not been accepted by certain Holders of Claims in Class 4, all of Class 7, and all of Class 8 (the "Rejecting Classes"), the Debtors seek Confirmation under section 1129(b), solely with respect to the Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the

Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to each of the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**R.      Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

55.      The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed DIP Facility Claims, Allowed Priority Tax Claims, Statutory Fees, and Restructuring Expenses under Article II of the Plan, and of Other Priority Claims under Article III.B.2 of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**S.      Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

56.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, the Holders of Claims in Class 3 and Holders of Claims in Class 4, other than with respect to Debtor Digital Media Solutions, LLC and Debtor Forte Media Solutions, LLC, voted to accept the Plan or were presumed to accept the Plan, as applicable, by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**T.      Feasibility of the Plan—Section 1129(a)(11).**

57.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the distribution of the proceeds from the Sale Transactions in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan, including the Committee

Settlement. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization, except as set forth in the Plan; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

**U.**     **Payment of Statutory Fees—Section 1129(a)(12).**

58.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.E of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930(a) in accordance with section 1128 of the Bankruptcy Code.

**V.**     **Continuation of Employee Benefits—Section 1129(a)(13).**

59.     The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases and the Plan.

**W.**     **Non-Applicability of Certain Sections—Sections 1129(a)(14-16).**

60.     The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**X.**     **Confirmation of Plan Over Nonacceptance of Impaired Classes—Section 1129(b).**

61.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.

**Second**, the Plan is fair and equitable with respect to each of the Rejecting Classes. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests, as applicable, in the Rejecting Classes. **Third**, the Plan does not discriminate unfairly with respect to the Rejecting Classes because similarly-situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such Class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**Y.     Only One Plan—Section 1129(c).**

62.     The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases. The Plan therefore satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**Z.     Principal Purpose of the Plan—Section 1129(d).**

63.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e. Moreover, no governmental unit or any other party has requested that the Bankruptcy Court decline to confirm the Plan on such grounds. The Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**AA.    Not Small Business Cases—Section 1129(e).**

64.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**BB.**    **Good Faith Solicitation—Section 1125(e).**

65.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith within the meaning of section 1125(e) of the Bankruptcy Code if they proceed to: (a) consummate the Plan, the Sale Transactions, and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.

**CC.**    **Satisfaction of Confirmation Requirements.**

66.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**DD.**    **Likelihood of Satisfaction of Conditions Precedent.**

67.    Each of the conditions precedent to Confirmation and consummation of the Plan, as set forth in Article IX of the Plan has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article IX.B of the Plan.

EE.     **Implementation**.

68.     The provisions governing the means for implementation of the Plan in Article IV therein shall be, and hereby are, approved in their entirety.  All documents and agreements necessary to implement the Plan and the Sale Transactions, and all other relevant and necessary documents with respect to the Sale Transactions, including:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Retained Causes of Action; (b) any other documents contained in the Plan Supplement; and (c) all other relevant and necessary documents, have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors and the Debtors' Estates and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements.

FF.     **Good Faith**.

69.     The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to effectuate the Plan.  The Released Parties have made a substantial contribution to these Chapter 11 Cases.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

70.     **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

71.     **Solicitation**.   To the extent applicable, the solicitation of votes on the Plan complied with section 1125 of the Bankruptcy Code, Bankruptcy Rule 3017, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

72.     **Approval of the Disclosure Statement**.   The Disclosure Statement is approved on a final basis.

73.     **Confirmation of the Plan**.   The Plan, a copy of which is attached hereto as **Exhibit A**, as may be amended by this Confirmation Order, is approved in its entirety and confirmed pursuant to section 1129 of the Bankruptcy Code.

74.     The terms of the Plan, including the Plan Supplement (including all documents included therein, exhibits thereto, and any supplements, amendments, or modifications thereof in accordance with this Confirmation Order and the Plan), are incorporated by reference into and are an integral part of this Confirmation Order.   The terms of the Plan, the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications thereof made or to be made in accordance with the Plan and this Confirmation Order, are hereby approved in all respects and shall be immediately effective, enforceable, and binding as of the Effective Date.   The Debtors and the Plan Administrator, in consultation with the DIP Lenders and the Prepetition Lenders, without further order of the Bankruptcy Court, are authorized to take all actions as may be necessary, appropriate, or required under the Plan and the Plan Supplement documents to effectuate the Plan.

75.     **Objections**.   All objections (including any statements and reservations of rights contained therein) to Confirmation of the Plan that have not been withdrawn, waived, or settled

prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record of the Combined Hearing, are hereby overruled on the merits.

76.    All objections to Confirmation, if any, not filed and served prior to the Plan and Disclosure Statement Objection Deadline set forth in the Combined Hearing Notice or such other applicable deadline are deemed waived and shall not be considered by the Bankruptcy Court.

77.    **Classifications**.  The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

78.    **Compromise and Settlement of Claims, Interests, and Controversies**.  To the extent provided for by the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan, including those resolved by the Committee Settlement. To the extent provided for by the Bankruptcy Code, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of

Action, and controversies, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

79.    **The Debtor Release, the Third-Party Release, Exculpation, and Injunction**. The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved in their entirety, including, but not limited to, the Debtor Release, the Third-Party Release, the exculpation provision, and the injunction provision.

80.    **Sources of Plan Consideration**.  In order to fund the distributions to Holders of Allowed Claims and/or Interests against the Debtors in accordance with the treatment of such Claims and/or Interests and subject to the terms provided in the Plan, the sources shall be Cash on hand, the Wind-Down Amount, the Debtors' rights under the Sale Transaction Documentation, the Unsecured Claims Recovery Pool, and all Causes of Action not previously settled, released, or exculpated under the Plan, if any.

81.    **Approval of Sale Transactions**.  The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, without further order of the Bankruptcy Court, are authorized to take all actions as may be necessary or appropriate to effect any Sale Transactions, to the extent not already effectuated as approved by the Sale Orders, and all other transactions described in, approved by, contemplated by, or necessary to effectuate or in connection with the Sale Transaction Documentation that are consistent with and pursuant to the terms and conditions of the Sale Transaction Documentation, including:  (a) the execution and delivery of

all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation; (c) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; *provided* that, with respect to clauses (a) through (d) above, in the event of a conflict between the Plan and the Sale Orders, the Sale Orders shall control.

82.     **Committee Settlement**.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates and implements the Committee Settlement, which is a compromise and settlement of numerous issues and disputes among (a) the Debtors, (b) the Committee, (c) the Prepetition Lenders, and (d) the DIP Lenders.  The Committee Settlement is designed to achieve a reasonable and effective resolution of the Chapter 11 Cases.  Except as otherwise expressly set forth herein, the Committee Settlement constitutes a settlement of all potential issues and claims between among (a) the Debtors, (b) the Committee, (c) the Prepetition Lenders, and (d) the DIP Lenders.  The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, without further order of the Bankruptcy Court, are authorized to take all actions as may be necessary or appropriate to effectuate the Committee Settlement.

83.     **Corporate Existence**.  Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the

Wind-Down Debtors, including the filing of any documentation with the secretary of state for the states in which the Wind-Down Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from the applicable state(s). The directors, managers, and officers of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate to implement the provisions of Article IV of the Plan.

84. **Vesting of Assets**. Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the Distributable Proceeds, the Unsecured Claims Recovery Pool, and the Wind-Down Amount shall vest in the Wind-Down Debtors for the purpose of making distributions pursuant to the Plan and liquidating the Estates, free and clear of all Liens, Claims, charges, and other encumbrances; *provided* that, after funding the Professional Fee Escrow Account, the Collateral, or proceeds of sales of such Collateral, of the Wind-Down Debtors securing the DIP Facility Claims and the Prepetition Loan Claims, other than the Unsecured Claims Recovery Pool, shall remain subject to the Liens and Claims of the Agents, the DIP Lenders and the Prepetition Lenders, as applicable, to the same extent and in the same priority as such Liens and Claims were enforceable against the Debtors and the Debtors' assets, until such Claims are satisfied in accordance with the Plan.

85. On and after the Effective Date, except as otherwise provided in the Plan, the Wind-Down Debtors may use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the

Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, those Causes of Action listed on the Schedule of Retained Causes of Action shall vest in the Wind-Down Debtors on the Effective Date for prosecution, settlement, or other action as determined by the Plan Administrator and those Causes of Action listed on the Schedule of Reserved Claims shall vest in the Wind-Down Debtors on the Effective Date for prosecution, settlement, or other action as determined by the Plan Administrator consistent with the terms of the Committee Settlement.

86.     This Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

87.     **Plan Administrator**.  The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and as otherwise provided in this Confirmation Order.

88.     The Plan Administrator shall discharge its duties as set forth in the Plan Administrator Agreement, Plan, and this Confirmation Order consistent with the Wind-Down Budget; *provided however*, that nothing in the Plan Administrator Agreement, Plan, or this Confirmation Order shall require the Plan Administrator to treat any amount ascribed to an individual line item of the Wind-Down Budget as a cap on cost for such item, and the Plan Administrator is authorized to allocate the Wind-Down Budget as it deems necessary to discharge its duties under the Plan Administrator Agreement, Plan, and this Confirmation Order; *provided*, *further* that the Plan Administrator shall not exceed the aggregate amount of the Wind-Down Amount.

89.    The Plan Administrator shall Wind Down the Chapter 11 Cases using the $1,500,000 designated to fund the Wind-Down Amount on the Effective Date; *provided* that such amount shall be reduced dollar for dollar by the Allowed amount of the Committee's pre-Effective Date Professional Fee Claims that exceed $1,900,000 or such greater amount as agreed to by the Debtors, Committee, the DIP Lenders, and the Prepetition Lenders under the Committee Settlement or otherwise.

90.    The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtors, including:  (i) overseeing the maintenance of the books, records, and accounts of the Debtors' Estates and the wind down and dissolution of the Debtors after the Effective Date; (ii) being responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases; (iii) prosecuting, settling, and/or pursuing the Reserved Claims in accordance with the Committee Settlement; (iv) prosecuting, settling, and/or pursuing the Retained Causes of Action (if any); (v) ensuring the Debtors' compliance with the terms of the Transition Services Agreement (if applicable and solely to the extent set forth in the Transition Services Agreement); (vi) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Debtors remaining after the Effective Date; (vii) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (viii) making distributions as contemplated under the Plan; (ix) establishing and maintaining bank accounts in the name of the Debtors; (x) subject to the terms set forth in the Plan, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (xi) paying all reasonable fees, expenses, debts, charges, and

liabilities of the Debtors; (xii) administering and paying taxes of the Debtors, including filing tax returns and overseeing all other tax compliance matters; (xiii) representing the interests of the Debtors before any taxing authority in all matters, including any action, suit, proceeding or audit; (xiv) preparing, filing, and prosecuting any necessary filings and/or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described in the Plan Administrator Agreement; (xv) subject to Bankruptcy Court Approval when necessary, except to the extent Claims have been previously Allowed, controlling and effectuating the Claims reconciliation process; (xvi) making all necessary filings in accordance with any applicable law, statute, or regulation, including, but not limited to, file certificates of dissolution and any and all other corporate or company documents necessary to effectuate the Wind-Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders or Governing Bodies of the Debtors; and (xvii) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.  The Plan Administrator may consult with the Prepetition Lenders in connection with the implementation of the Wind Down.

91.    **Wind-Down**.  On and after the Effective Date, the Plan Administrator is authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to effectuate the Wind-Down.  As soon as practicable after the Effective Date, the Plan Administrator shall:  (i) cause the Wind-Down Debtors to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (ii) take any actions necessary to wind down the Wind-Down Debtors' Estates; and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  From and after the

Effective Date, except as set forth herein, the Wind-Down Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, and (y) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

92.     The Wind-Down Debtors and the Stalking Horse Bidder, as applicable, shall, upon reasonable notice, use commercially reasonable efforts to cooperate with the Plan Administrator to effectuate the Wind-Down, including by providing the Plan Administrator commercially reasonable access, during normal business hours, to the Wind-Down Debtors' and the Stalking Horse Bidder's personnel and books and records, as applicable, to the extent the Wind-Down Debtors or the Stalking Horse Bidder, as applicable, have such information and/or documents reasonably necessary to enable the Plan Administrator to perform its duties expressly authorized hereunder and as set forth in greater detail in the Plan Administrator Agreement. Such access and documents shall be provided to the Plan Administrator without charge; *provided, however*, that to the extent that the Wind-Down Debtors or the Stalking Horse Bidder, as applicable, determine that responding to any particular information request from the Plan Administrator requires the Wind-Down Debtors, the Stalking Horse Bidder, or their respective personnel, as applicable, to expend material time or resources outside the ordinary course of their operations or responsibilities, the Wind-Down Debtors, the Stalking Horse Bidder, or their respective personnel, as applicable, shall communicate the same to the Plan Administrator, together with a range of expected costs to satisfy such access or information request.  To the extent the parties are unable to reach an agreement on such costs, the Plan Administrator may

withdraw its information request and the Wind-Down Debtors or the Stalking Horse Bidder, as applicable, may determine not to satisfy such request, and all parties' rights are reserved to raise any such disputes with the Bankruptcy Court.

93.     The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports shall be the responsibility of the Plan Administrator.

94.     **Tax Returns**.  After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

95.     **Cancellation of Notes, Instruments, Certificates, and Other Documents**.  On the Effective Date, except for the purpose of evidencing a Claim or Interest or a right to distribution under the Plan and except as otherwise provided in the Plan or this Confirmation Order, or to the extent otherwise assumed by the Debtors or assumed and assigned to the Purchasers, all notes, bonds, certificates, securities (including any preferred stock, common stock or other capital), purchase rights, options, restricted stock or restricted stock units (or any other incentive equity interest), limited liability company units or interests, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents (including any indentures or credit agreements) directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of the Debtors giving rise to any rights or obligations relating to Claims against the Debtors (other than those Claims or Interests Reinstated under the Plan), shall be deemed satisfied in full, canceled, and of no force or effect,

and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect, and the Agents and their respective agents, successors and assigns shall be automatically and fully discharged and released from all duties and obligations thereunder; *provided, however,* that the Prepetition Credit Documents and the DIP Documents shall continue in effect solely for the purposes of (a) allowing Holders of Prepetition Loan Claims and DIP Facility Claims to receive and accept distributions under the Plan on account of such Claims; (b) allowing and preserving the rights of the Agents to (i) maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, priority of payment, subrogation, immunity, exculpation, or contribution, or any other claim or entitlement that the Agents may have under the Plan, the Prepetition Credit Documents, the DIP Documents, and this Confirmation Order (which shall survive the occurrence of the Effective Date, remain binding and enforceable in accordance with the terms of such documents, and shall not be subject to discharge, impairment, or release under the Plan or this Confirmation Order), (ii) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce any obligation under the Plan or this Confirmation Order owed to the Agents or Holders of such Claims, and (iii) perform any functions that are necessary to effectuate the foregoing; and (c) allowing and preserving the Liens and Claims of the Agents, the DIP Lenders, and the Prepetition Lenders as provided in Article IV.E of the Plan; *provided, however*, that the preceding provisos shall not result in any expense or liability to the Wind-Down Debtors after the Effective Date.  Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment

provided for pursuant to the Plan or this Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors or assumed and assigned to the Purchasers, pursuant to a Final Order or hereunder.

96.     If the record Holder of the Securities (including any warrants, preferred stock, common stock or capital stock, or derivative securities of the foregoing) is DTC or its nominee (including Cede & Co.) or another securities depository or custodian thereof, and such Securities are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each such Holder of such Securities shall be deemed to have surrendered such Holder's certificate, instrument or other evidence of such Security upon surrender of such global security by DTC or such other securities depository or custodian thereof. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan.

97.     **Plan Distributions**.  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan and the timing of distributions required under the Plan shall be made in accordance with and as set forth in the Plan.

98.     **Effectiveness of All Actions**.  All actions authorized to be taken pursuant to the Plan, the Committee Settlement, and the Plan Supplement shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of

the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

99.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

100.     **Professional Fee Escrow Account**.  As set forth in Article II.B.2 of the Plan, as soon as possible after Confirmation and not later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders.  Such funds shall not be considered property of the Debtors' Estates.  The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the DIP Lenders on behalf of their DIP Facility Claims without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

101.     Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees incurred before and as of the Confirmation Date, and deliver such estimate and any other documents required by the Debtors to fund the Professional Fee Escrow Amount, including an applicable W-9, to the Debtors no later than four Business Days prior to the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

102.     **Governmental Approvals Not Required**.   Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

103.     **Directors and Officers**.  In accordance with Article IV.K of the Plan, as of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

104.     From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors.

43

105.     **Dissolution of the Committee**.  Notwithstanding anything contrary provided in the Plan, on the Effective Date, the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases.  After the Effective Date, the Committee shall continue in existence for the sole purposes of (a) filing and prosecuting applications for the payment of fees and the reimbursement of expenses incurred by the Committee or its Professionals, (b) in the event that the Bankruptcy Court's entry of this Confirmation Order is appealed, participating in such appeal, and (c) reviewing and responding to inquiries from Holders of Claims regarding implementation of the Plan.

106.     Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.  The Wind-Down Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Confirmation Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified above.

107.     **Payment of Statutory Fees**.  All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Wind-Down Debtors (or the Disbursing Agent on behalf of each of the Wind-Down Debtors) for each quarter (including any fraction thereof)

until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.

108.     **Certain Filings and Reporting Requirements**.  After the Confirmation Date, the Debtors, unless otherwise specified herein, shall have no obligation to (a) provide any reports to any parties otherwise required under any orders entered in the Chapter 11 Cases or (b) file with the Bankruptcy Court or serve on any party reports that the Debtors were obligated to file under the Bankruptcy Code or a Bankruptcy Court order; *provided* that the Wind-Down Debtors or the Plan Administrator, as applicable, will seek authority to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules; and *provided*, *further*, that, notwithstanding the foregoing, the Wind-Down Debtors or the Plan Administrator, as applicable, shall timely file all required monthly operating reports and post-confirmation quarterly reports in a form prescribed by the U.S. Trustee until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

109.     **Notice of Confirmation and Effective Date**.  The Wind-Down Debtors shall serve notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (as may be revised, the "Confirmation Order and Effective Date Notice"), in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Interests within 10 Business Days after the Effective Date. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed the Combined Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that

Entity's new address.  The Combined Hearing Notice and this Confirmation Order and Effective Date Notice are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

110.    **Plan Modifications.**  This Confirmation Order includes certain modifications to the Plan to address formal and informal objections raised by various parties (the "<u>Plan Modifications</u>").  The Plan Modifications do not materially and adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.  After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

111.    **Provisions Regarding the United States**.  Notwithstanding any provision in the Plan, the Plan Supplement, this Confirmation Order or the related Plan documents (collectively, "<u>Plan Documents</u>"):

> Nothing discharges or releases the Debtors, the Wind-Down Debtors, or any non-debtor from any right, claim, liability, defense, or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any right, claim, liability, defense, or Cause of Action against any Debtor, Wind-Down Debtor, or non-debtor.  Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights

46

agreements, or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or the Wind-Down Debtors, under applicable non-bankruptcy law, paid, treated, determined, and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed, and the Debtors and the Wind Down Debtors shall comply with all applicable non-bankruptcy law.  All rights, claims, liabilities, defenses, or Causes of Action, of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses, or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; provided, that nothing in the Plan Documents shall:  (i) alter any legal or equitable rights or defenses of the Debtors or Wind-Down Debtors under non-bankruptcy law with respect to any such claim, liability, or cause of action; or (ii) deprive this Bankruptcy Court of jurisdiction to determine the Debtors' or Wind-Down Debtors' rights (if any) to estimate claims of the United States or any State pursuant to 11 U.S.C. §502(c) and related Bankruptcy Code provisions.  Without limiting the foregoing, for the avoidance of doubt, nothing shall:  (i) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Wind-Down Debtors, or any non-debtor; (ii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants,

guaranties, indemnifications, operating rights agreements, or other interests; (iii) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Wind-Down Debtors and such rights and defenses are expressly preserved; (iv) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (v) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law. For the avoidance of doubt, the United States opts out of the releases provided in Article VIII.D of the Plan and is not a Releasing Party.

112.     **Provisions Regarding Albany Road**.  Notwithstanding anything contained in the Plan, the Plan Supplement, or this Confirmation Order, the deadline for Albany Road – Meridian Concourse LLC and its successors and assigns ("Albany Road") to file a proof of claim with respect to any prepetition or postpetition claim relating to the Debtors' lease with Albany Road, which expired on December 31, 2024, shall be the Administrative Claims Bar Date; *provided* that the Debtors', the Wind-Down Debtors', and Albany Road's rights and defenses with respect to such claim are reserved and preserved.  For the avoidance of doubt, this paragraph 112 supersedes and resolves the agreement between the Debtors and Albany Road as set forth in paragraph 34 of the Sale Order at Docket no. 425.

113.     **Provisions Regarding Clearwater**.  The Debtors and Clearwater Realty IN, LLC ("Clearwater") will be parties to that certain month to month lease (the "Clearwater Lease"), which, for the avoidance of doubt and to the extent applicable, shall not be automatically rejected upon the Effective Date.  In connection with the Stalking Horse Agreement and the closing of

the Sale Transaction set forth therein, the Stalking Horse Bidder and Clearwater shall enter into a new lease, upon which time the Clearwater Lease shall terminate and the Debtors' rights and obligations under the Clearwater Lease shall terminate; *provided however*, that, if applicable, Clearwater's deadline to file a proof of claim or administrative claim related to the termination of the Clearwater Lease shall be the later of 30 days after (i) the date of termination of the lease or (ii) the date that the premises covered by the lease is surrendered to Clearwater; *provided further* that the Debtors', the Wind-Down Debtors', and Clearwater's rights and defenses with respect to such claim are reserved and preserved.  Clearwater is in possession of a security deposit which it will retain until the new lease is fully executed.  To the extent that there are any unpaid obligations arising under the Clearwater Lease, Clearwater may offset the security deposit against the unpaid obligations.  If there are no remaining unpaid obligations, then the security deposit will be dealt with as provided in the new lease.  The Clearwater Lease is not assignable to the Stalking Horse Bidder unless the parties agree otherwise.

114.    **Successors and Assigns**.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

115.    **Reservation of Rights**.  Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters this Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtors with respect to the Holders of Claims or

Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

116. **Nonseverability**.    This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, and (3) nonseverable and mutually dependent.

117. **Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor, or to any other Entity) of property under the Plan or pursuant to:  (i) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, or the Committee Settlement, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents

shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

118.    **Continued Effect of Stays and Injunctions.**  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

119.    **Exhibits; Plan Supplement**.  All exhibits to the Plan, and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, are hereby incorporated herein by this reference and shall be fully enforceable as if stated in full herein.

120.    **Governing Law**.  Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

121.    **Tax-Reporting and Compliance**.  The Debtors are authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

122.    **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

123.    **Effect of Non-Occurrence of Conditions to the Effective Date**.  If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

124.    **Binding Nature of Plan**.  Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

125. **Retention of Jurisdiction**.  The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan or this Confirmation Order, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, and section 1142 of the Bankruptcy Code, including enforcement of the Committee Settlement.

126. **Headings**.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

127. **References to and Omissions of Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

128. **Controlling Document**.  To the extent that any provision of the Plan, the Plan Supplement, or any other order (other than this Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

129. **Waiver of Stay**.  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

130. **Final Order**. This Confirmation Order is a final order that shall be effective and enforceable immediately upon entry, its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any party obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

 Signed: January 15, 2025

Alfredo R Pérez
United States Bankruptcy Judge

## Exhibit A

**Plan**

*Solicitation Version*

> **THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 24-90468 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## JOINT CHAPTER 11 PLAN OF
## DIGITAL MEDIA SOLUTIONS, INC. AND ITS DEBTOR AFFILIATES

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:     (713) 226-6000
Facsimile:     (713) 226-6248
Email:          jhiggins@porterhedges.com
                sjohnson@porterhedges.com
                myoung-john@porterhedges.com
                jkeefe@porterhedges.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Elizabeth H. Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                elizabeth.jones@kirkland.com

-and-

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

Date: December 9, 2024

---

[1]   A complete list of each of the Debtors in the Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS. The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in the Chapter 11 Cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
AND GOVERNING LAW** ....................................................................................................................1
    A.     Defined Terms. ..........................................................................................................1
    B.     Rules of Interpretation. .............................................................................................13
    C.     Computation of Time. ...............................................................................................13
    D.     Governing Law. .........................................................................................................14
    E.     Reference to Monetary Figures. ................................................................................14
    F.     Reference to the Debtors or the Wind-Down Debtors. ............................................14
    G.     Controlling Document. ..............................................................................................14

**ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL  FEE CLAIMS, DIP FACILITY
CLAIMS, AND PRIORITY TAX CLAIMS** .....................................................................................14
    A.     Administrative Claims. .............................................................................................14
    B.     Professional Fee Claims. ...........................................................................................15
    C.     DIP Facility Claims. ..................................................................................................16
    D.     Priority Tax Claims. ..................................................................................................16
    E.     Payment of Statutory Fees. .......................................................................................17
    F.     Payment of Restructuring Expenses. ........................................................................17

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............17
    A.     Classification of Claims and Interests. .....................................................................17
    B.     Treatment of Claims and Interests. ..........................................................................18
    C.     Special Provision Governing Unimpaired Claims. ...................................................20
    D.     Elimination of Vacant Classes. .................................................................................21
    E.     Voting Classes; Presumed Acceptance by Non-Voting Classes. .............................21
    F.     Intercompany Interests. .............................................................................................21
    G.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................21
    H.     Subordinated Claims and Interests. ..........................................................................21

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ...............................................22
    A.     General Settlement of Claims and Interests. .............................................................22
    B.     Committee Settlement. ..............................................................................................22
    C.     Sources of Plan Consideration. .................................................................................24
    D.     Sale Transactions. .....................................................................................................24
    E.     Vesting of Assets in the Wind-Down Debtors. .........................................................25
    F.     Plan Administrator. ...................................................................................................25
    G.     Wind-Down. ..............................................................................................................26
    H.     Tax Returns. ..............................................................................................................27
    I.     Cancellation of Notes, Instruments, Certificates, and Other Documents.................27
    J.     Corporate Action. .....................................................................................................28
    K.     Dissolution of the Board of the Debtors. ..................................................................28
    L.     Section 1146 Exemption. ..........................................................................................28
    M.     Director and Officer Liability Insurance. ..................................................................29
    N.     Preservation of Causes of Action. ............................................................................29
    O.     Closing the Chapter 11 Cases. ..................................................................................30
    P.     Dissolution of the Committee. ..................................................................................30

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ......30
    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases..............30
    B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...............31
    C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ...............31
    D.     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. .........32

E. Modifications, Amendments, Supplements, Restatements, or Other Agreements. .......................32
F. Reservation of Rights. .......................32
G. Nonoccurrence of Effective Date. .......................33

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** .......................**33**
A. Distributions on Account of Claims Allowed as of the Effective Date. .......................33
B. Disbursing Agent. .......................33
C. Rights and Powers of the Disbursing Agent. .......................33
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. .......................34
E. Compliance with Tax Requirements. .......................35
F. Allocations. .......................35
G. No Postpetition Interest on Claims. .......................35
H. Foreign Currency Exchange Rate. .......................35
I. Setoffs and Recoupment. .......................36
J. Claims Paid or Payable by Third Parties. .......................36
K. Matters Pertaining to the Agents. .......................36

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** .......................**37**
A. Allowance of Claims and Interests. .......................37
B. Claims Administration Responsibilities. .......................37
C. Disputed Claims Process. .......................37
D. Estimation of Claims and Interests. .......................37
E. Adjustment to Claims or Interests Without Objection. .......................38
F. Time to File Objections to Claims. .......................38
G. Reservation of Rights to Object to Claims. .......................38
H. Disallowance of Claims. .......................38
I. Amendments to Claims or Interests. .......................39
J. No Distributions Pending Allowance. .......................39
K. Distributions After Allowance. .......................39
L. Single Satisfaction of Claims. .......................39

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** .......................**39**
A. Settlement, Compromise, and Release of Claims. .......................39
B. Release of Liens. .......................40
C. Releases by the Debtors. .......................40
D. Releases by the Releasing Parties. .......................41
E. Exculpation. .......................42
F. Injunction. .......................43
G. Protection Against Discriminatory Treatment. .......................43
H. Document Retention. .......................44
I. Reimbursement or Contribution. .......................44

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ..........**44**
A. Conditions Precedent to the Effective Date. .......................44
B. Waiver of Conditions. .......................45
C. Effect of Failure of Conditions to the Effective Date. .......................45
D. Substantial Consummation. .......................45

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .......................**45**
A. Modification and Amendments. .......................45
B. Effect of Confirmation on Modifications. .......................45
C. Revocation or Withdrawal of the Plan. .......................45

**ARTICLE XI RETENTION OF JURISDICTION** ...................................................................................**46**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ..............................................................................**47**

    A.      Immediate Binding Effect. ..........................................................................................47
    B.      Additional Documents. ...............................................................................................48
    C.      Reservation of Rights. ................................................................................................48
    D.      Successors and Assigns. .............................................................................................48
    E.      Notices. .......................................................................................................................48
    F.      Term of Injunctions or Stays. ....................................................................................49
    G.      Entire Agreement. ......................................................................................................49
    H.      Plan Supplement. .......................................................................................................49
    I.      Nonseverability of Plan Provisions. ..........................................................................50
    J.      Votes Solicited in Good Faith. ..................................................................................50
    K.      Closing of the Chapter 11 Cases. ..............................................................................50
    L.      Waiver or Estoppel. ...................................................................................................50
    M.      Creditor Default. ........................................................................................................50
    N.      Removal or Abandonment of Third Parties' Property. ...............................................51

**INTRODUCTION**

Digital Media Solutions, Inc. and the above-captioned debtors and debtors in possession (collectively, the "Debtors") propose this joint chapter 11 plan (including all exhibits, supplements (including the Plan Supplement), appendices, and schedules, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof, this "Plan") for the resolution of outstanding Claims against, and Interests in, the Debtors. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion on the Debtors' history, business, properties and operations, risk factors, a summary and analysis of the Plan, the Sale Transactions, and certain related matters. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A. *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Acquired Assets*" has the meanings set forth in the Asset Purchase Agreements.

2.      "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors; (b) the Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code.

3.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which shall be (a) 30 days after the Effective Date for Administrative Claims other than Professional Fee Claims and (b) 60 days after the Effective Date for Professional Fee Claims.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

5.      "*Agents*" means, collectively, the Prepetition Agent, the DIP Agent, and any other administrative agent, collateral agent, or similar Entity under the Credit Agreement and the DIP Credit Agreement, including any successors thereto.

6.      "*Allowed*" means, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order, including the DIP Order); *provided* that no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or a timely objection is interposed and the Claim has been Allowed by a Final Order; (b) a Claim that is scheduled by the Debtors as neither contingent, unliquidated, nor Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order, including the DIP Order. For the avoidance of doubt, any Claim that has been or is hereafter scheduled by the Debtors as contingent, unliquidated, or Disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the

1

Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Wind-Down Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

7. "*Asset Purchase Agreements*" means the Stalking Horse Agreement and the Imon APA, as the definitive asset purchase agreements approved by the Sale Orders, together with all exhibits, appendices, supplements, and documents, and agreements ancillary thereto, in each case as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

8. "*Assumed Liabilities*" has the meanings set forth in the Asset Purchase Agreements.

9. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims and Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

10. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

11. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division presiding over the Chapter 11 Cases, or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of the Judicial Code, the United States District Court for the Southern District of Texas.

12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

13. "*Bar Date*" means the applicable bar date by which Proofs of Claim or Proofs of Interest, if applicable, must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan; *provided* that if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

14. "*Bar Date Order*" means the *Order (I) Establishing Deadlines for the Filing of Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof, (III) Approving the Form and Manner of Filing Proofs of Claim, and (IV) Granting Related Relief* [Docket No. 47] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

15. "*Bidding Procedures*" means the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order, as such bidding procedures may be amended from time to time in accordance with its terms.

16. "*Bidding Procedures Order*" means the *Order (I) Approving the Bidding Procedures (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof (IV) Approving the Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 194] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

17.     "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks in the State of Texas or the State of New York are closed for business as a result of a federal, state, or local holiday.

18.     "*Case Milestones*" has the meaning set forth in Article IV.B.7 hereof.

19.     "*Cash*" means the legal tender of the United States of America or the equivalents thereof, including bank deposits and checks.

20.     "*Cause of Action*" or "*Causes of Action*" means any and all actions, claims, causes of action, controversies, demands, rights, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "*Causes of Action*" also includes:  (a) any rights of setoff, counterclaims, or recoupments and any claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all claims or defenses including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any and all state or foreign law fraudulent transfer or similar claims; and (g) any other Avoidance Actions.

21.     "*Challenge*" means a claim or Cause of Action challenging the validity, perfection, priority, extent, or enforceability of the Prepetition Liens (as defined in the DIP Orders) or Prepetition Obligations (as defined in the DIP Orders), or otherwise prosecuting any Avoidance Actions (as defined in the DIP Orders) or any other claims, counterclaims, or causes of action, objections contests, or defenses, pursuant to terms and conditions of the DIP Orders.

22.     "*Challenge Period*" has the meaning set forth in the DIP Orders.

23.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

25.     "*Claims and Balloting Agent*" means Omni Agent Solutions, Inc., solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

26.     "*Claims Register*" means the official register of Claims maintained by the clerk of the Bankruptcy Court or the Claims and Balloting Agent.

27.     "*Class*" means a class of Claims or Interests as set forth in Article III of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

28.     "*ClickDealer*" means, collectively, non-Debtor DMS CV Holdings (UK) Limited, non-Debtor DMS CD (Ukraine) LLC, and non-Debtor DMS CD (Netherlands) B.V.

29.     "*ClickDealer Assets*" means (a) the ClickDealer Equity and (b) any assets held by the Debtors that are primarily related to, or primarily used in, the ClickDealer business.

30. "*ClickDealer Equity*" means the Debtors' equity interests in non-Debtor DMS CD Holdings (UK) Limited.

31. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing System.

32. "*Collateral*" means any property or interest in property of the Estates of any Debtors subject to a Lien, charge, or other encumbrance to secure the payment of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance under the Bankruptcy Code.

33. "*Committee*" means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code on September 23, 2024 [Docket No. 127], the membership of which may be reconstituted from time to time.

33. "*Committee Settlement*" means the comprehensive global settlement between the Settling Parties as set forth in Article IV.B.

34. "*Conditional Disclosure Statement Order*" means the order (and all exhibits thereto), entered by the Bankruptcy Court conditionally approving the Disclosure Statement and approving the Solicitation Materials, and allowing solicitation of the Plan to commence, entered on December 9, 2024 [Docket No. 518] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

35. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

36. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

37. "*Confirmation Hearing*" means the hearing(s) to be held by the Bankruptcy Court to consider Confirmation of the Plan and final approval of the Disclosure Statement, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1125, 1128, and 1129 of the Bankruptcy Code, as applicable, as such hearing(s) may be adjourned or continued from time to time.

38. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement on a final basis pursuant to section 1125 of the Bankruptcy Code.

39. "*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

40. "*Credit Agreement*" means that certain Credit Agreement, dated as of May 25, 2021 (as amended, restated, amended and restated, supplemented, or otherwise modified in accordance with the terms thereof), by and between certain of the Debtors party thereto, Truist Securities, Inc. and Fifth Third Bank, National Association as joint lead arrangers, the Prepetition Agent, and the Prepetition Lenders.

41. "*Cure Costs*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors or assumed and assigned by the Debtors, as applicable, pursuant to sections 365 or 1123(a) of the Bankruptcy Code.

42. "*Cure Notice*" has the meaning set forth in the Bidding Procedures Order.

43. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to any of the Debtors providing current or former directors',

managers', officers' and/or employees' liability coverage, and all agreements, documents, or instruments relating thereto.

44.     "*Debtor Release*" means the releases given on behalf of the Debtors and their Estates as set forth in Article VIII.C of the Plan.

45.     "*Debtors*" has the meaning set forth in the preamble.

46.     "*Definitive Documents*" means, without limitation, the following documents:  (a) the Plan; (b) the Confirmation Order; (c) the Disclosure Statement; (d) the Conditional Disclosure Statement Order; (e) the Solicitation Materials; (f) the Plan Supplement; (g) the Sale Transaction Documentation; and (h) such other agreements and documentation reasonably desired or necessary to consummate and document the transactions contemplated by the Plan.

47.     "*DIP Agent*" means Ankura Trust Company, LLC, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, and its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Credit Agreement.

48.     "*DIP Credit Agreement*" means that certain Senior Secured Superpriority Priming Debtor-in-Possession Credit Agreement, dated as of September 13, 2024, by and among the Debtors, the DIP Lenders, and the DIP Agent, as may be amended, restated, supplemented, or otherwise modified from time to time.

49.     "*DIP Documents*" means the DIP Credit Agreement, the DIP Orders, and any other agreements, documents, and instruments delivered or executed in connection therewith and all other "Loan Documents" (as defined in the DIP Credit Agreement).

50.     "*DIP Facility*" means that certain debtor-in-possession financing facility provided to the Debtors on the terms and conditions of the DIP Credit Agreement and the DIP Orders.

51.     "*DIP Facility Claim*" means any Claim held by the DIP Lenders or the DIP Agent, in their capacities as such, arising under or relating to the DIP Documents or the DIP Orders, including any and all fees, interest paid in kind, and accrued but unpaid interest and fees arising under the DIP Documents and all other DIP Obligations (as defined in the DIP Orders).

52.     "*DIP Facility Deficiency Claims*" means any DIP Facility Claim that is not a Secured Claim.

53.     "*DIP Lenders*" means the lenders from time-to-time party to the DIP Credit Agreement.

54.     "*DIP Orders*" means the interim orders approving the DIP Facility [Docket Nos. 66, 193] and the Final DIP Order.

55.     "*Disbursing Agent*" means the Debtors or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions pursuant to the Plan; *provided* that no Agent shall be required to act as Disbursing Agent without such Agent's prior written consent.

56.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* (including all exhibits, supplements, appendices, and schedules, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time) [Docket No. 513], conditionally approved pursuant to the Conditional Disclosure Statement Order and to be finally approved pursuant to the Confirmation Order.

57.     "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest:  (a) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment; (b) that is not Allowed; and (c) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable.

58.     "*Distributable Proceeds*" means all Cash and other assets of the Debtors on the Effective Date, after giving effect to the funding of the Professional Fee Escrow Account and less (a) the Wind-Down Amount and (b) the Unsecured Claims Recovery Pool.

59.     "*Distribution Record Date*" means, other than with respect to Securities of the Debtors deposited with DTC, the date for determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions hereunder, which shall be the Confirmation Date, or such other date as is announced by the Debtors or designated in a Final Order.  For the avoidance of doubt, the Distribution Record Date shall not apply to any Securities of the Debtors deposited with the DTC, and the Holders of such Securities shall receive a distribution in accordance with the Plan and, as applicable, the customary procedures of DTC.

60.     "*DMS Inc.*" means Digital Media Solutions, Inc.

61.     "*DTC*" means The Depository Trust Company or its nominees (or any successors thereto, in each case).

62.     "*Effective Date*" means the date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B and (b) the Plan is declared effective by the Debtors.

63.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

64.     "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

65.     "*Exculpated Parties*" means (a) the Debtors and (b) the members of the Committee, solely in their capacity as such.

66.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

67.     "*Existing DMS Inc. Interests*" means any Interests in DMS Inc.

68.     "*Federal Judgment Rate*" means the federal judgment interest rate specified by 28 U.S.C. § 1961 in effect as of the Petition Date.

69.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

70.     "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 423].

71.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that is in full force and effect and has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceeding for a new trial, reargument, or rehearing shall then be pending; or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, no stay pending appeal has been granted or such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure,

or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

72.     "*General Unsecured Claim*" means any Unsecured Claim (including any DIP Facility Deficiency Claims and Prepetition Loan Deficiency Claims) against any of the Debtors that is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; or (e) an Intercompany Claim.  For the avoidance of doubt, (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases and (ii) Unsecured Claims resulting from litigation against one or more of the Debtors shall be General Unsecured Claims.  For the further avoidance of doubt, all General Unsecured Claims that are assumed by the Purchasers pursuant to the Sale Transaction Documentation shall be satisfied by the Purchasers following the Effective Date on the terms set forth in the Sale Transaction Documentation and shall not be entitled to vote on the Plan or receive the treatment provided for General Unsecured Claims under this Plan.

73.     "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, strategic committee, or such similar governing body of any of the Debtors.

74.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

75.     "*Holder*" means an Entity holding a Claim against, or an Interest in, any of the Debtors, as applicable.

76.     "*Imon APA*" means the *Securities and Asset Purchase Agreement, Dated as of November 4, 2024, By and Among Imon Media LTD, as Purchaser, and Digital Media Solutions Inc. and Its Subsidiaries Named Herein as Sellers*, as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time by the parties thereto.

77.     "*Impaired*" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

78.     "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in place immediately prior to the Effective Date, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, equity holders, attorneys, other professionals, and agents and such current and former directors, officers, and managers' respective Affiliates.

79.     "*Intercompany Claim*" means any Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor.  For the avoidance of doubt, all Intercompany Claims that are transferred to the Purchasers pursuant to the Sale Transaction Documentation shall be satisfied by the Purchasers following the Effective Date on the terms set forth in the Sale Transaction Documentation and shall not receive the treatment provided for Intercompany Claims under this Plan.

80.     "*Intercompany Interest*" means any Interest held by one Debtor in another Debtor.

81.     "*Interest*" means any equity security as such term is defined in section 101(16) of the Bankruptcy Code), including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of any Debtor, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to or right to payment may be satisfied by, any such interest or other ownership interest (including any existing earn-out or phantom interests or similar agreement tied to dividends, distributions, return of capital, consideration or similar payments in respect of (or on account of) such Interests) in any Debtor, whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a

similar security, including any Claim against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

82. "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 226] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

83. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

84. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

85. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

86. "*Non-Debtor Affiliate*" means any Affiliate of DMS Inc. that is not a Debtor in the Chapter 11 Cases.

87. "*Ordinary Course Professional*" means an Entity (other than a Professional) retained or compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

88. "*Ordinary Course Professionals Order*" means the *Amended Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business, and (II) Granting Related Relief* [Docket No. 172] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

89. "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

90. "*Other Secured Claim*" means any Secured Claim other than a DIP Facility Claim or a Prepetition Loan Claim.

91. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

92. "*Petition Date*" means September 11, 2024, the first date on which the Debtors commenced filing the Chapter 11 Cases.

93. "*Plan*" has the meaning set forth in this preamble.

94. "*Plan Administrator*" means that Entity, or any successor thereto, designated by the Committee in its sole discretion in accordance with the Committee Settlement, to have all powers and authorities set forth in this Plan and the Plan Administrator Agreement.

95. "*Plan Administrator Agreement*" means that certain agreement that sets forth the identity of the Entity to serve initially as the Plan Administrator setting forth, among other things, the Plan Administrator's rights, powers, obligations, and compensation, all of which shall be consistent with the applicable provisions of the Plan.

96. "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules), which documents shall be consistent with the terms of the Committee Settlement and reasonably acceptable to the Required Lenders (as defined in the DIP Credit Agreement), including the following, as applicable: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the identity of the Plan Administrator, the terms of compensation of the Plan Administrator, and the Plan Administrator Agreement; (c) the Schedule of Retained Causes of Action; (d) Schedule of Reserved Claims; and (e) the Wind-Down Budget. The Debtors shall have the right

to alter, amend, modify, or supplement the documents contained in the Plan Supplement in accordance with this Plan on or before the Effective Date; *provided, however*, that the consent of the Committee (which consent shall not be unreasonably withheld) shall be required to alter, amend, modify or supplement the documents contained in the foregoing to the extent any such alteration, amendment, modification, or supplement materially affects the treatment or any other rights of the Holders of the General Unsecured Claims. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full; *provided*, *however*, that in the event of a conflict between the Plan and the Plan Supplement, the Plan Supplement shall control in accordance with Article I.G and Article XII.H.

97.    "*Prepetition Agent*" means Ankura Trust Company, LLC, as successor to Truist Bank, solely in its capacity as administrative agent and collateral agent for the Prepetition Lenders under the Credit Agreement.

98.    "*Prepetition Credit Documents*" means the Credit Agreement and any other agreements, documents, and instruments delivered or executed in connection therewith and all other "Loan Documents (as defined in the Credit Agreement).

99.    "*Prepetition Lenders*" means those lenders party to the Credit Agreement.

100.    "*Prepetition Loan Claims*" means any Claim arising out of or related to the Prepetition Credit Documents, including any Claim for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations, and all other "Prepetition Obligations" (as defined in the DIP Orders).

101.    "*Prepetition Loan Deficiency Claims*" means any Prepetition Loan Claim that is not a Secured Claim.

102.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

104.    "*Professional*" means an Entity (other than an Ordinary Course Professional): (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

105.    "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred on or after the Petition Date by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

106.    "*Professional Fee Escrow Account*" means an account funded by the Debtors with Cash as soon as practicable after Confirmation and not later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

107.    "*Professional Fee Escrow Amount*" means the reasonable estimate of the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of the Plan.

108. "*Proof of Claim*" or "*Proofs of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

109. "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

110. "*Purchaser(s)*" has the meanings set forth in the applicable Asset Purchase Agreements.

111. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim or an Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

112. "*Related Party*" means, collectively, with respect to any Entity, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current and former associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, investment or fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such Entity's predecessors, successors, assigns, heirs, executors, estates, and nominees of the foregoing.

113. "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the DIP Lenders; (d) the Agents; (e) all Releasing Parties; (f) the members of the Committee; and (g) each Related Party of each such Entity in clause (a) through (f); *provided, however* that any Holder of a Claim or Interest that opts out of the releases contained in the Plan shall not be a "Released Party."

114. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the DIP Lenders; (d) the Agents; (e) all Holders of Claims that vote to accept the Plan; (f) all Holders of Claims or Interests that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (g) all Holders of Claims that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (h) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; and (i) each Related Party of each Entity in clauses (a) through (h), solely in their respective capacities as such and to the maximum extent permitted by the law.

115. "*Reserved Claims*" means (a) any and all Causes of Action against Zeeto arising out of that certain *Zeeto Publisher Terms of Service*, executed on August 23, 2018, including but not limited to any Causes of Action relating to revenue generated by the Debtors on Zeeto's platform, with alleged damages of $944,176.27, and currently pending in the Superior Court of California, San Diego County and (b) certain Causes of Action of the Debtors arising out of or related to the Debtors' aged accounts receivable, as set forth in the Schedule of Reserved Claims.

116. "*Restructuring Expenses*" means the reasonable and documented fees and expenses of the Agents, the DIP Lenders, and the Prepetition Lenders, including the reasonable and documented fees and expenses of (i) Ropes & Gray, LLP, as counsel to the Prepetition Lenders and the DIP Lenders; (ii) Ropes & Gray, LLP, as counsel to the Agents; and (iii) FTI Consulting, Inc., as financial advisor to the Prepetition Lenders and the DIP Lenders.

117. "*Sale Orders*" means the *Order (I) Authorizing the Sale of the Debtors' Assets to the Stalking Horse Bidder Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 425] and the *Order Authorizing the Sale of the ClickDealer Assets to Imon Media LTD Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform Their Obligations Under the Imon Asset Purchase Agreement, and (III) Granting Related relief* [Docket No. 424] (each as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

118. "*Sale Transaction Documentation*" means all motions, Filings, documents, and agreements related to the Sale Transactions, including, the Asset Purchase Agreements, the Sale Orders, the Bidding Procedures, and the Bidding Procedures Order, pursuant to which the Debtors will effectuate the Sale Transactions.

119. "*Sale Transaction Proceeds*" means any Cash or Cash equivalents that are proceeds from the Sale Transactions.

120. "*Sale Transactions*" means the sale of the ClickDealer Assets to Imon Media LTD pursuant to the Imon APA and the sale of substantially all other assets of the Debtors to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, free and clear of all Liens, Claims, Charges, and other encumbrances, and the assumption by the Purchasers of the applicable Assumed Liabilities, on the terms and conditions set forth in the in the applicable Asset Purchase Agreement and applicable Sale Order.

121. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be assumed by the Debtors or assumed by the Debtors and assigned to the Plan Administrator, a Wind-Down Debtor, a Purchaser, or any other Entity pursuant to the Plan. For the avoidance of doubt, the schedule shall be included in the Plan Supplement.

122. "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action of the Debtors that shall vest in the Wind-Down Debtors on the Effective Date, that are not settled, released, waived, exculpated, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

123. "*Schedule of Reserved Claims*" means the schedule of the Reserved Claims that shall vest in the Wind-Down Debtors on the Effective Date, the proceeds of which shall be used to fund the Unsecured Claims Recovery Pool.

124. "*Schedules*" means, collectively, the schedules of assets and liabilities, statements of financial affairs, lists of Holders of Claims and Interests, and all amendments or supplements thereto to be Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

125. "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

126. "*Secured Claim*" means a Claim that is: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

127. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

128. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

129. "*Settling Parties*" means the Debtors, the Committee, certain of the Prepetition Lenders, the DIP Lenders, and the Agents, each in their capacity as participants in the Committee Settlement.

130. "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

131. "*Stalking Horse Agreement*" means that certain stalking horse credit bid asset purchase agreement for the sale of all or substantially all of the Debtors' assets, except the ClickDealer Assets and certain other Excluded Assets (as defined therein), dated November 4, 2024, between Ankura Trust Company, LLC, as the Credit Bid Party (as defined therein), the Stalking Horse Bidder, and the Debtors, as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time by the parties thereto.

132. "*Stalking Horse Bidder*" means the newly-formed Delaware acquisition Entity, or other form of Entity or Entities as selected by the DIP Lenders, to serve as the Purchaser under the Stalking Horse Agreement.

133. "*Successful Bidder*" has the meaning set forth in the Bidding Procedures Order.

134. "*Third-Party Release*" means the releases set forth in Article VIII.D of the Plan.

135. "*U.S. Trustee*" means the United States Trustee for the Southern District of Texas.

136. "*Undeliverable Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

137. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

138. "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

139. "*Unsecured Claim*" means any Claim that is not a Secured Claim.

140. "*Unsecured Claims Recovery Pool*" means (a) $750,000 in Cash and (b) any proceeds of the Reserved Claims, if any. For the avoidance of doubt, the Unsecured Claims Recovery Pool shall not be available to Holders of any Allowed DIP Facility Deficiency Claims or Allowed Prepetition Loan Deficiency Claims.

141. "*Waterfall Recovery*" means the priority distribution of Distributable Proceeds, which shall be allocated and paid to the Holders of Claims or Interests, as applicable, until paid in full from time to time in the following priority (in each case on a Pro Rata basis): (a) *first,* on account of Allowed Administrative Claims (that are not assumed by the Purchasers), DIP Facility Claims (in accordance with the priorities set forth in the DIP Credit Agreement), and Priority Tax Claims; (b) *second,* on account of Allowed Other Secured Claims (to the extent applicable); (c) *third,* on account of Allowed Other Priority Claims; (d) *fourth,* on account of Allowed Prepetition Loan Claims (in accordance with the priorities set forth in the Credit Agreement); (e) *fifth,* on account of any Allowed General Unsecured Claims; and (f) *sixth*, on account of Allowed Existing DMS Inc. Interests.

142. "*Wind-Down*" means the wind down and dissolution of the Debtors' Estates, to be effectuated in accordance with Article IV.G and the terms of the Plan Administrator Agreement.

143. "*Wind-Down Amount*" means Cash in the amount of $1,500,000, which shall be retained by the Wind-Down Debtors and used by the Plan Administrator to fund the Wind-Down, in a manner consistent with the Wind-Down Budget; *provided* that such amount shall be reduced dollar for dollar by the amount of professional fees and expenses incurred prior to the Effective Date by the Committee in excess of $1,500,000.

144. "*Wind-Down Budget*" means the budget approved by the DIP Lenders pursuant to which the Wind-Down Debtors and the Plan Administrator shall fund the Wind-Down; *provided* that in no event shall the

Wind-Down Budget be used to pay any fees or expenses incurred by the Debtors' Professionals prior to the Effective Date.

145. "*Wind-Down Debtor(s)*" means any Debtor(s) that shall continue in existence on or after the Effective Date.

146. "*Wind-Down Professional Fee Escrow Account*" means the segregated escrow account funded by the Debtors or the Plan Administrator with Cash on or before the Effective Date, in an amount equal to the estimated professional fees reflected in the Wind-Down Budget.

147. "*Zeeto*" means ZeetoGroup LLC or its affiliates.

B. *Rules of Interpretation*.

For purposes of the Plan: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (iv) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections hereof; (vi) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vii) subject to the provisions of any contract, charter, certificate of incorporation, bylaw, partnership agreement, operating agreement, limited liability company agreement, or other organizational documents or shareholder agreements, as applicable, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable Law, including the Bankruptcy Code and Bankruptcy Rules; (viii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (ix) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (x) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (xi) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xii) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xiii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (xiv) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (xv) any effectuating provisions (including any immaterial effectuating provisions) may be interpreted by the Debtors, the Wind-Down Debtors, or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (xvi) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (xvii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (xviii) except as otherwise provided in the Plan, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C. *Computation of Time*.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding

Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.   *Governing Law.*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

E.   *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided herein.

F.   *Reference to the Debtors or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.   *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and any document included in the Plan Supplement, including the schedules or exhibits, the terms of the relevant provision in the Plan Supplement shall control (unless expressly stated otherwise in the applicable provision of the Plan Supplement or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan, including the Plan Supplement, or the Disclosure Statement, the Confirmation Order shall control.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL
## FEE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III hereof.

A.   *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) that has not been paid in full prior to the Effective Date will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind-Down Debtors, as applicable; or (v) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim that has been

expressly assumed by the Purchasers under the Sale Transaction Documentation shall not be an obligation of the Debtors as of or after the closing of any Sale Transactions.

Except as otherwise provided by Article II.A of this Plan or by a Final Order entered by the Bankruptcy Court (including the Bar Date Order) on or prior to the Administrative Claims Bar Date, as applicable, unless previously Filed, requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims) must be Filed and served on the Debtors. Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the requesting party no later than 60 days after the applicable Administrative Claims Bar Date, subject to further extension by order of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

**Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, their Estates, or their property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date without the need for any objection from the Debtors, the Wind-Down Debtors or the Plan Administrator, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

B. *Professional Fee Claims.*

    1. <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred during the period from the Petition Date through the Confirmation Date must be Filed no later than 60 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Wind-Down Debtors or the Plan Administrator, as applicable, shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows, including from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A the Plan.

    2. <u>Professional Fee Escrow Account</u>.

As soon as possible after Confirmation and not later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Debtors' Estates. The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Claims are Allowed by a Final Order.

When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the DIP Lenders on behalf of their DIP Facility Claims without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

    3. <u>Wind-Down Professional Fee Escrow Account</u>.

Pursuant to the Committee Settlement, on or prior to the Effective Date, the Debtors or the Plan Administrator, as applicable, shall cause the estimated professional fees reflected in the Wind-Down Budget to be

held in the Wind-Down Professional Fee Escrow Account for the benefit of the Professionals incurring fees in connection with the Wind-Down.

4.  Estimation of Professional Fees and Expenses.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred before and as of the Confirmation Date, and shall deliver such estimate and any other documents required by the Debtors to fund the Professional Fee Escrow Amount, including an applicable W-9, to the Debtors no later than four Business Days prior to the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

5.  Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.  *DIP Facility Claims.*

All DIP Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to the full amount due and owing under the DIP Credit Agreement, including, for the avoidance of doubt, (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued and unpaid fees and expenses payable under the DIP Facility and the DIP Orders. Except to the extent that a Holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, each DIP Facility Claim shall, except to the extent such DIP Facility Claim was credit bid pursuant to the terms of the Sale Transaction Documentation, be paid in full in Cash. Except as otherwise provided in the Plan, all Liens and security interests granted by the Debtors to secure the obligations under the DIP Facility shall be of no further force or effect. For the avoidance of doubt, the DIP Facility Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable Law or regulation.

For the avoidance of doubt, pursuant to the Committee Settlement, the Holders of any DIP Facility Deficiency Claims shall be deemed to waive, and agree to waive, the right to receive any distributions from the Unsecured Claims Recovery Pool. Notwithstanding the foregoing, from and after the Effective Date, to the extent there are Distributable Proceeds available, each Holder of a DIP Facility Claim shall receive its Pro Rata share of the Distributable Proceeds, if any, in accordance with the Waterfall Recovery.

D.  *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed Priority Tax Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter).

E.   *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Wind-Down Debtors (or the Disbursing Agent on behalf of each of the Wind-Down Debtors) for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.

F.   *Payment of Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases), without any requirement to File a fee application with the Bankruptcy Court or for Bankruptcy Court review or approval, without the need for itemized time detail, and without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least two Business Days before the anticipated Effective Date; *provided, however,* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.   *Classification of Claims and Interests.*

This Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors (except for Class 7 Existing DMS Inc. Interests, which shall only apply to Debtor DMS Inc.).  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

All of the potential Classes for the Debtors are set forth herein.  Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Prepetition Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 7 | Existing DMS Inc. Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests.*

Except to the extent that the Debtors or the Plan Administrator, as applicable, and a Holder of an Allowed Claim or Interest, as applicable, agrees to different treatment, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes Allowed.

1.    Class 1—Other Secured Claims.

(a)    *Classification*: Class 1 consists of all Allowed Other Secured Claims.

(b)    *Treatment*: Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor:

(i)    payment in full in Cash of its Allowed Other Secured Claim;

(ii)    the Collateral securing its Allowed Other Secured Claim;

(iii)    Reinstatement of its Allowed Other Secured Claim; or

(iv)    such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2—Other Priority Claims.

(a)    *Classification*: Class 2 consists of all Allowed Other Priority Claims.

(b)    *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3—Prepetition Loan Claims</u>.

(a)    *Classification*: Class 3 consists of all Allowed Prepetition Loan Claims.

(b)    *Allowance*: Solely with respect to the Prepetition Loan Claims, on the Effective Date, the Prepetition Loan Claims shall be Allowed in the aggregate principal amount of $273,430,197.21, plus any accrued, unpaid pre- and postpetition interest on such principal amount at the applicable contractual interest rate, any unpaid fees and expenses payable in accordance with the Prepetition Credit Documents, and any other obligations payable under the Prepetition Credit Documents.

(c)    *Treatment*: Each Holder of an Allowed Prepetition Loan Claim shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

(d)    *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Prepetition Loan Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 4—General Unsecured Claims</u>.

(a)    *Classification*: Class 4 consists of all Allowed General Unsecured Claims.

(b)    *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery; *plus*, each Holder of an Allowed General Unsecured Claim that is not a Holder of an Allowed Prepetition Loan Deficiency Claim or an Allowed DIP Facility Deficiency Claim shall receive its Pro Rata share of the Unsecured Claims Recovery Pool.

(c)    *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5—Intercompany Claims</u>.

(a)    *Classification*: Class 5 consists of all Intercompany Claims.

(b)    *Treatment*: Each Holder of an Intercompany Claim that is not transferred to the Purchasers, at the option of the applicable Debtor, shall be (i) Reinstated or (ii) distributed, contributed, set off, settled, canceled and released, or otherwise addressed; *provided* that no distribution shall be made on account of any such Intercompany Claims.

(c)    *Voting*: Class 5 is Unimpaired under the Plan if Intercompany Claims are Reinstated or Impaired under the Plan if Intercompany Claims are distributed, contributed, set off, settled, canceled and released, or otherwise addressed. Holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or rejected

the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6.    <u>Class 6—Intercompany Interests</u>.

    (a)    *Classification*: Class 6 consists of all Intercompany Interests.

    (b)    *Treatment*: Each Holder of an Intercompany Interest, at the option of the applicable Debtor, shall be (i) Reinstated or (ii) distributed, contributed, set off, settled, canceled and released, or otherwise addressed; *provided* that no distribution shall be made on account of any such Intercompany Interests.

    (c)    *Voting*: Class 6 is Unimpaired under the Plan if Intercompany Interests are Reinstated or Impaired under the Plan if Intercompany Interests are distributed, contributed, set off, settled, canceled and released, or otherwise addressed. Holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7—Existing DMS Inc. Interests</u>.

    (a)    *Classification*: Class 7 consists of all Allowed Existing DMS Inc. Interests.

    (b)    *Treatment*: Each Holder of an Allowed Existing DMS Inc. Interest will receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

    (c)    *Voting*: Class 7 is Impaired under the Plan. Holders of Existing DMS Inc. Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders of Existing DMS Inc. Interests are not entitled to vote to accept or reject the Plan.

8.    <u>Class 8—Section 510(b) Claims</u>.

    (a)    *Classification*: Class 8 consists of all Allowed Section 510(b) Claims.

    (b)    *Allowance*: Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

    (c)    *Treatment*: All Section 510(b) Claims against any applicable Debtor shall be cancelled, released, and extinguished and will be of no further force or effect, and Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of such Section 510(b) Claims.

    (d)    *Voting*: Class 8 is Impaired under the Plan. Holders (if any) of Allowed Section 510(b) Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Section 510(b) Claims (if any) are not entitled to vote to accept or reject the Plan.

C.  *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Wind-Down Debtors, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D. *Elimination of Vacant Classes*.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E. *Voting Classes; Presumed Acceptance by Non-Voting Classes*.

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

F. *Intercompany Interests*.

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interest but for the purposes of administrative convenience, and in exchange for the Debtors' agreement under the Plan to make certain distributions to the Holders of the Allowed Claims. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Wind-Down Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

G. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired or reclassifying Claims to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H. *Subordinated Claims and Interests*.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

I. *No Substantive Consolidation*.

Although this Plan is presented as a joint plan of liquidation for administrative purposes, this Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as expressly provided herein, nothing in this Plan, the Confirmation Order, or the Disclosure Statement shall constitute or be deemed to constitute a representation that any one or all of the Debtors is subject to or liable for any Claims or Interests against or in any other Debtor. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed the amount of the Allowed Claim.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. *General Settlement of Claims and Interests*.

Except as otherwise expressly provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, satisfied, or otherwise resolved pursuant to the Plan, including resolutions of intercompany liabilities, allocation of value among the Debtors, and treatment of Holder of General Unsecured Claims against each of the Debtors.  The Plan shall be deemed a motion, proposed by the Debtors, to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, including as pursuant to the Committee Settlement, under Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of its Affiliates, which Claims and Causes of Action have been settled, and such settlement is reflected in the treatment of the Intercompany Claims and the Claims against and Interests in each Debtor entity.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

B. *Committee Settlement*.

On November 3, 2024, the Settling Parties agreed to the terms of the Committee Settlement to be implemented through the Plan, the DIP Orders, and the Wind-Down Budget, and to be approved by the Court in connection with Confirmation of the Plan.  Except as otherwise expressly set forth herein or in the Confirmation Order, the Committee Settlement constitutes a settlement of all potential issues and claims arising between and among the Settling Parties.  The principal terms of the Committee Settlement are reflected below and are incorporated into the Plan as further set forth herein.

1.    Unsecured Claims Recovery Pool.

On the Effective Date, the Wind-Down Debtors and the Plan Administrator shall fund the Unsecured Claims Recovery Pool with:  (i) $750,000 in Cash; and (ii) the Reserved Claims.  The Unsecured Claims Recovery Pool will exclusively fund distributions to the Holders of Allowed General Unsecured Claims that are not Allowed Prepetition Deficiency Claims or DIP Facility Deficiency Claims in accordance with Article III.B.4.

The Prepetition Agent and DIP Agent, on behalf of and at the direction of, the Prepetition Lenders and the DIP Lenders, each agree to waive all recoveries on behalf of the DIP Facility Deficiency Claims and the Prepetition Loan Deficiency Claims, as applicable, solely with respect to the Unsecured Claims Recovery Pool.

2.      Releases.

The members of the Committee, solely in their capacity as such, shall be "Released Parties," and "Exculpated Parties" under the Plan.  The Settling Parties have agreed, following arm's-length negotiations, to the releases, injunction, and exculpation set forth in Article VIII.C – F herein.

3.      Wind-Down Budget.

The Settling Parties have negotiated the Wind-Down Amount and Wind-Down Budget to effectuate the Wind-Down of the Chapter 11 Cases as set forth in Article IV.G hereof.  On the Effective Date, $1,500,000 shall be designated to fund the Wind-Down Amount; *provided* such amount shall be reduced dollar for dollar by the Allowed amount of the Committee's pre-Effective Date Professional Fee Claims that exceed $1,500,000.  The Wind-Down Budget shall be included in the Plan Supplement and may be amended by agreement of the Settling Parties.

4.      Plan Administrator.

The Committee shall appoint the Plan Administrator.  The Plan Administrator shall have the authority and duties as set forth in Article IV.F of this Plan and further detailed in the Plan Administrator Agreement.

5.      Cooperation of the Stalking Horse Bidder.

The Stalking Horse Bidder shall give the Plan Administrator access to its books and records to assist with any work reasonably required for the Plan Administrator to effectuate the Wind-Down, including the preparation of any tax returns and providing responses to diligence requests related to the pursuit of any Claims' objections; *provided* that any fees or expenses arising out of any requests by the Plan Administrator shall be borne by the Plan Administrator.

6.      Committee Obligations.

As set forth in paragraph 26 of the Final DIP Order, the Committee agreed to terminate the Challenge Period on November 4, 2024, subject to the effectuation of the Committee Settlement on the terms set forth in this Plan.  The Committee further agrees to:  (a) forgo pursuing any claims and/or Causes of Action against the Prepetition Lenders relating to aiding or abetting breach of fiduciary duty; (b) support of Confirmation of the Plan, including the releases set forth herein, and encourage Holders of General Unsecured Claims to vote in favor of the Plan; and (c) limit all work and incurrence of Professional Fees Claims following November 4, 2024, to only those which are necessary to effectuate the terms of the Committee Settlement and fulfill the duties of the Committee pursuant to the Bankruptcy Code.

7.      Case Milestones.

The Debtors shall abide by the following case milestones (the "Case Milestones"), to the extent not already satisfied as of the date of filing this Plan, to facilitate an efficient resolution of the Chapter 11 Cases:

- file the Notice of Successful Bidder(s) (as defined in the Bidding Procedures) as soon as reasonably practicable after October 29, 2024;

- obtain entry of the Final DIP Order no later than November 4, 2024;

- hold a hearing on the Sale Transactions no later than November 4, 2024;

- obtain entry of the Sale Orders with respect to the Sale Transactions by no later than November 8, 2024;

- file the Plan and Disclosure Statement by no later than November 20, 2024;

- obtain Bankruptcy Court approval of the Disclosure Statement by no later than December 18, 2024;

- close the Sale Transactions by no later than January 3, 2025;

- obtain entry of the Confirmation Order by no later than January 22, 2025; and

- achieve the Effective Date by no later than January 29, 2025.

The Settling Parties may agree in writing (email being sufficient) to modify any of the remaining Case Milestones.

8.  Termination.

The Committee Settlement shall terminate and be of no further force and effect if any of the Case Milestones are not timely satisfied, unless the Settling Parties otherwise agree in writing to extend such dates.

Upon the termination of the Committee Settlement: (i)(a) the termination of the Challenge Period set forth in paragraph 26 of the Final DIP Order shall be null and void *ab initio*, solely with respect to the Debtors and the Committee, (b) any stipulations or releases subject to the Challenge Period in the Final DIP Order shall be deemed null and void *ab initio*, solely with respect to the Debtors and the Committee, and (c) the Debtors and/or the Committee shall have the right, prior to 11:59 p.m. (prevailing Central Time) on the date that is 21 calendar days following the occurrence of the termination of the Committee Settlement, to assert a Challenge or file a motion seeking standing to file a Challenge, as applicable, consistent with the requirements and other conditions set forth in the Final DIP Order (other than, for the avoidance of doubt, the requirement to commence such action prior to November 22, 2024), without prejudice to the fact that the Challenge Period was previously terminated; and (ii) the Settling Parties under the Committee Settlement shall be vested with all of their respective rights, claims, Causes of Action, and defenses as they existed immediately prior to the effective date of the Committee Settlement.

C.  *Sources of Plan Consideration.*

Cash on hand, the Sale Transaction Proceeds, the Wind-Down Amount, the Debtors' rights under the Sale Transaction Documentation, the Unsecured Claims Recovery Pool, and all Causes of Action not previously settled, released, or exculpated under the Plan, if any, shall be used to fund the distributions to Holders of Allowed Claims in accordance with the treatment of such Claims and subject to the terms provided herein.

D.  *Sale Transactions.*

Upon the entry of the Confirmation Order, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, without further order of the Bankruptcy Court, are authorized to take all actions as may be necessary or appropriate to effect any Sale Transactions, to the extent not already effectuated as approved by the Sale Orders, and all other transactions described in, approved by, contemplated by, or necessary to effectuate or in connection with the Sale Transaction Documentation that are consistent with and pursuant to the terms and conditions of the Sale Transaction Documentation, including: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation; (c) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; *provided* that, with respect to clauses (a) through (d) above, in the event of a conflict between the Plan and the Sale Orders, the Sale Orders shall control.

1.  Assumed Liabilities in Connection with the Sale Transactions.

The Sale Transaction Documentation provides that as part of the Sale Transactions, the Purchasers assumed certain obligations owed by the Debtors. Following such assumption by the Purchasers, the Purchasers shall satisfy such obligations in accordance with the Sale Documentation and the Sale Orders, and for the avoidance of doubt, any

obligations that were assumed by the Purchasers shall cease to be Claims against the Debtors following such assumption.

2. Payments of Cure Costs and Other Amounts.

On the Effective Date, the Debtors shall pay all Cure Costs that are required to be paid (if any) pursuant to and in accordance with sections 365 or 1123 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases that are assumed by the Debtors pursuant to the Plan, if any. For the avoidance of doubt, the Debtors shall have no obligations to pay any Cure Costs for any Executory Contracts or Unexpired Leases that were assumed by the Purchasers pursuant to the Sale Orders.

E. *Vesting of Assets in the Wind-Down Debtors.*

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the Distributable Proceeds, the Unsecured Claims Recovery Pool, and the Wind-Down Amount shall vest in the Wind-Down Debtors for the purpose of making distributions pursuant to the Plan and liquidating the Estates, free and clear of all Liens, Claims, charges, and other encumbrances; *provided* that, after funding the Professional Fee Escrow Account, the Collateral, or proceeds of sales of such Collateral, of the Wind-Down Debtors securing the DIP Facility Claims and the Prepetition Loan Claims, other than the Unsecured Claims Recovery Pool, shall remain subject to the Liens and Claims of the Agents, the DIP Lenders and the Prepetition Lenders, as applicable, to the same extent and in the same priority as such Liens and Claims were enforceable against the Debtors and the Debtors' assets, until such Claims are satisfied in accordance with the Plan.

On and after the Effective Date, except as otherwise provided in the Plan, the Wind-Down Debtors may use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, those Causes of Action listed on the Schedule of Retained Causes of Action shall vest in the Wind-Down Debtors on the Effective Date for prosecution, settlement, or other action as determined by the Plan Administrator and those Causes of Action listed on the Schedule of Reserved Claims shall vest in the Wind-Down Debtors on the Effective Date for prosecution, settlement, or other action as determined by the Plan Administrator consistent with the terms of the Committee Settlement.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

F. *Plan Administrator.*

On and after the Effective Date, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, and Governing Bodies, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). The Plan Administrator shall be appointed by the Committee, and any professional retained by the Plan Administrator shall be selected by the Committee; *provided* that the Plan Administrator shall be required to retain Kirkland & Ellis LLP as sole counsel for the Wind-Down Debtors with respect to any and all matters related to Civil Investigative Demand No. 24-1009, which fees shall not be included in the Wind-Down Amount. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under the Plan, and as otherwise provided in the Confirmation Order. The rights, powers, privileges, obligations, and compensation of the Plan Administrator shall be set forth in the Plan Administrator Agreement, which shall be set forth as part of the Plan Supplement, and shall include: (a) the power and authority to effectuate the Wind-Down; (b) prosecute and resolve objections to Claims it determines to be wrongly asserted against the Debtors; (c) make distributions in accordance with the Plan; and (d) prosecute and otherwise monetize the Reserved Claims.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors to continue the employment any former manager or officer. Following the Effective Date, the Plan Administrator shall not operate any remaining operations of the Debtors (to the extent any remain) and shall work to ensure all of the Debtors' business operations are promptly shut down to ensure the Debtors do not incur any additional debts or administrative expenses.

G.  *Wind-Down.*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to effectuate the Wind-Down.

As soon as practicable after the Effective Date, the Plan Administrator shall: (i) cause the Wind-Down Debtors to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (ii) take any actions necessary to wind down the Wind-Down Debtors' Estates; and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, except as set forth herein, the Wind-Down Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, and (y) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports shall be the responsibility of the Plan Administrator.

1.    Wind-Down Amount.

The Wind-Down Amount shall be used by the Plan Administrator solely to satisfy the distributions set forth herein, and the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan. The Wind-Down Amount shall be used by the Plan Administrator as set forth in the Plan. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets or the Unsecured Claims Recovery Pool for such purposes. Further, pursuant to the Committee Settlement, in no event shall the Wind Down Amount be used to pay the fees and expenses of the Debtors' Professionals incurred prior to the Effective Date.

2.    Wind-Down Debtors.

On and after the Effective Date, the Wind-Down Debtors shall continue in existence for purposes of: (i) winding down the Debtors' business and affairs as expeditiously as reasonably possible in accordance with the Wind-Down Budget; (ii) resolving Disputed Claims; (iii) making distributions on account of Allowed Claims as provided hereunder; (iv) funding distributions in accordance with the Wind-Down Budget; (v) filing appropriate tax returns and regulatory notice; (vi) complying with their continued obligations under the Plan, the Confirmation Order, the Sale Transaction Documentation, and the DIP Orders (if applicable); and (vii) administering the Plan in an efficacious manner.

The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, (b) the DIP Orders (if applicable), and (c) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

3.    Dissolution of the Wind-Down Debtors.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the

Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documentation with the secretary of state for the states in which the Wind-Down Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from the applicable state(s).

The filing by the Plan Administrator of any of the Debtors' certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their Affiliates.

H. *Tax Returns.*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

I. *Cancellation of Notes, Instruments, Certificates, and Other Documents.*

On the Effective Date, except for the purpose of evidencing a Claim or Interest or a right to distribution under the Plan and except as otherwise provided in the Plan or the Confirmation Order, or to the extent otherwise assumed by the Debtors or assumed and assigned to the Purchasers, all notes, bonds, certificates, securities (including any preferred stock, common stock or other capital), purchase rights, options, restricted stock or restricted stock units (or any other incentive equity interest), limited liability company units or interests, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents (including any indentures or credit agreements) directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of the Debtors giving rise to any rights or obligations relating to Claims against the Debtors (other than those Claims or Interests Reinstated under the Plan), shall be deemed satisfied in full, canceled, and of no force or effect, and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect, and the Agents and their respective agents, successors and assigns shall be automatically and fully discharged and released from all duties and obligations thereunder; *provided, however,* that the Prepetition Credit Documents and the DIP Documents shall continue in effect solely for the purposes of (a) allowing Holders of Prepetition Loan Claims and DIP Facility Claims to receive and accept distributions under the Plan on account of such Claims; (b) allowing and preserving the rights of the Agents to (i) maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, priority of payment, subrogation, immunity, exculpation, or contribution, or any other claim or entitlement that the Agents may have under the Plan, the Prepetition Credit Documents, the DIP Documents, and the Confirmation Order (which shall survive the occurrence of the Effective Date, remain binding and enforceable in accordance with the terms of such documents, and shall not be subject to discharge, impairment, or release under this Plan or the Confirmation Order), (ii) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce any obligation under the Plan or the Confirmation Order owed to the Agents or Holders of such Claims, and (iii) perform any functions that are necessary to effectuate the foregoing; and (c) allowing and preserving the Liens and Claims of the Agents, the DIP Lenders, and the Prepetition Lenders as provided in Article IV.E; *provided, however*, that the preceding provisos shall not result in any expense or liability to the Wind-Down Debtors after the Effective Date. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors or assumed and assigned to the Purchasers, pursuant to a Final Order or hereunder.

If the record Holder of the Securities (including any warrants, preferred stock, common stock or capital stock, or derivative securities of the foregoing) is DTC or its nominee (including Cede & Co.) or another securities depository or custodian thereof, and such Securities are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each such Holder of such Securities shall be deemed to have surrendered

such Holder's certificate, instrument or other evidence of such Security upon surrender of such global security by DTC or such other securities depository or custodian thereof. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan.

J. *Corporate Action*.

Upon the Effective Date, all actions contemplated by the Plan (including any action to be undertaken by the Wind-Down Debtors, as applicable) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Plan Administrator, or any other Entity. All matters provided for in the Plan involving the corporate structure of the Debtors shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, the Debtors, the Debtors' Estates, the Plan Administrator, or the Wind-Down Debtors, as applicable.

On or prior to the Effective Date, as applicable, the appropriate officers of the Wind-Down Debtors shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.

The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under applicable nonbankruptcy law (including any non-U.S. law to the extent available).

K. *Dissolution of the Board of the Debtors*.

As of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

L. *Section 1146 Exemption*.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor, or to any other Entity) of property under the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, or the Committee Settlement, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M. *Director and Officer Liability Insurance.*

Notwithstanding anything in the Plan to the contrary, to the extent that the D&O Liability Insurance Policies are Executory Contracts, the Wind-Down Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date. To the extent required, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Wind-Down Debtors' assumption of all such D&O Liability Insurance Policies, and all D&O Liability Insurance Policies and obligations thereunder shall remain in full force and effect in accordance with their terms. For the avoidance of doubt, the Wind-Down Debtors shall not have any obligation to pay any deductible, retention, or any other cost or expense under, arising from, or related to, the D&O Liability Insurance Policies in connection with any such policy or claim made thereunder.

None of the Debtors or the Wind-Down Debtors shall, before or after the Effective Date, terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies in effect on or after the Petition Date; *provided*, *however*, that the foregoing shall not limit the Debtors' ability to utilize the D&O Liability Insurance Policies prior to the Effective Date.

N. *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, any applicable Final Order, and any applicable Sale Transaction Documentation, each Wind-Down Debtor shall retain and may enforce, all rights to commence and pursue as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any action specifically enumerated in the Schedule of Retained Causes of Action or the Schedule of Reserved Claims, and the Wind-Down Debtors' or Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the debtors pursuant to the releases and exculpations contained in the Plan, including Article VIII hereof, pursuant to a Final Order, or as assigned and transferred pursuant to any applicable Sale Transaction Documentation, which, in each case, shall be deemed released and waived by the Debtors as of the Effective Date. For the avoidance of doubt, the Wind-Down Debtors will retain the right to enforce the terms of the Sale Transaction Documentation. Any retained Causes of Action shall remain with the Debtors and shall vest with the Wind-Down Debtors as of the Effective Date.

The Wind-Down Debtors may pursue any Causes of Action. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released under the Plan or pursuant to a Final Order or as assigned or transferred pursuant to any Sale Transaction Documentation, the Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity. Unless otherwise agreed upon in writing by the Debtors or the Wind-Down Debtors, all objections to the Schedule of Retained Causes of Action or the Schedule of Reserved Claims must be Filed with the Bankruptcy Court within the 30-day period following the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Wind-Down Debtor, without the need for any objection or responsive pleading by a representative of any Wind-Down Debtor or Plan Administrator or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. The Wind-Down Debtor may settle any such objection without further notice or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action or the Schedule of Reserved Claims that remains unresolved by the Wind-Down Debtors and the objecting party for 30 days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action against an Entity are expressly waived, transferred, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or any applicable Sale Transaction Documentation, the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and therefore, no preclusion doctrine, include the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.**

The **Wind-Down Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contracts or Unexpired Leases during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provide in the Plan, including Article VIII hereof. The applicable Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Debtors shall have the right and authority to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgement any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.**

O.   *Closing the Chapter 11 Cases.*

For the avoidance of doubt, upon the occurrence of the Effective Date, the Debtors or Plan Administrator, as applicable, shall be permitted to close all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of Aimtell HoldCo, Inc., and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Aimtell HoldCo, Inc., irrespective of whether such Claim(s) were Filed against a Debtor whose Chapter 11 Case was closed.

When all Disputed Claims have become Allowed or disallowed and all remaining Distributable Proceeds have been distributed in accordance with the Plan, the Debtors or Plan Administrator, as applicable, shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

P.   *Dissolution of the Committee.*

On the Confirmation Date, the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases. After the Confirmation Date, the Committee shall continue in existence for the sole purposes of (a) Filing and prosecuting applications for the payment of fees and the reimbursement of expenses incurred by the Committee or its Professionals, (b) in the event that the Bankruptcy Court's entry of the Confirmation Order is appealed, participating in such appeal, and (c) reviewing and responding to inquiries from Holders of Claims regarding implementation of the Plan solely with respect to the time period from the Confirmation Date to the Effective Date.

Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases. The Wind-Down Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Confirmation Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified above.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.   *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan, including the Schedule of Assumed Executory Contracts and Unexpired Leases, or otherwise is specifically described in the Plan to not be rejected; (ii) is subject to a pending motion to assume such Unexpired Lease or Executory Contract (or one of the Sale Orders contemplating the

assumption and assignment of such Unexpired Lease or Executory Contract) as of the Confirmation Date (unless the counterparty to such Unexpired Lease or Executory Contract and the Debtors agree otherwise); (iii) has been previously assumed or rejected by the Debtors pursuant to a Bankruptcy Court order; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a D&O Liability Insurance Policy; (vi) is the Sale Transaction Documentation; or (vii) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any Sale Transactions.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re vest in and be fully enforceable by the applicable contracting Wind-Down Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

To the maximum extent permitted by Law, to the extent any provision in an Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan conditions, restricts or prevents, or purports to condition, restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition or renewal or extension or modify any term or condition upon any assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to 45 days after the Effective Date.

B.   *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim based on the rejection of the Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Plan Administrator, as applicable, no later than 30 days after the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date.

**Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind-Down Debtors, or the property of the foregoing without the need for any objection by the Debtors or the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.4 of the Plan. For the avoidance of doubt, nothing provided herein shall extend or modify any previously established deadline to File a claim arising from the rejection of an Executory Contract or Unexpired Lease previously rejected by the Debtors.

C.   *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed by the Debtors as set forth in Article V.A and as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the

Bankruptcy Code, by payment of such Cure Costs in Cash on or about the Effective Date, subject to the limitations described below and set forth in Article V.C herein, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the Cure Costs, (ii) the ability of any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. **All liabilities reflected in the Schedules and any Proof of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

D.   *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the Sale Transactions or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Wind-Down Debtors and the Plan Administrator expressly reserve and do not waive the right to receive, nor any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.   *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

F.   *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Wind-Down Debtor, as applicable, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, or the Plan Administrator shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G. *Nonoccurrence of Effective Date.*

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided in the Plan, in a Final Order, or as otherwise agreed to by the Wind-Down Debtors and the Holder of the applicable Allowed Claim on the Effective Date, the Wind-Down Debtors shall make initial distribution under the Plan on account of Claims Allowed as of the Effective Date, subject to the Wind-Down Debtors' right to object to Claims; *provided* that (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practices, and (ii) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Wind-Down Debtors, as applicable, and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.

B. *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtors.

C. *Rights and Powers of the Disbursing Agent.*

    1.    <u>Powers of the Debtors and the Disbursing Agent.</u>

The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

    2.    <u>Expenses Incurred On or After the Effective Date.</u>

Except as otherwise ordered by the Bankruptcy Court, the reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney fees and expenses) made by the Disbursing Agent, in each case directly related to distributions under the Plan, shall be paid in Cash by the Wind-Down Debtors in the ordinary course of business. In the event that the Wind-Down Debtors object to all or any portion of the amounts requested to be reimbursed in a Disbursing Agent's invoice, the Wind-Down Debtors and such Disbursing Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Wind-Down Debtors and the Disbursing Agent are unable to resolve any

differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.    <u>Record Date for Distribution</u>.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred 20 or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

    2.    <u>Delivery of Distributions in General</u>.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by such Holder; *provided* that the manner of such distributions shall be determined at the discretion of the Wind-Down Debtors.

Notwithstanding any policies, practices, or procedures of DTC, DTC shall cooperate with and take all actions reasonably requested by the Debtors or the Disbursing Agent to facilitate distributions to Holders without requiring that such distributions be characterized as dividends (or any other corporate action) or repayments of principal or interest. No Disbursing Agent or any other Person shall be required to provide indemnification or other security to DTC in connection with any distributions to Holders through the facilities of DTC. For the avoidance of doubt, the Distribution Record Date shall not apply to Securities held through DTC, which shall receive distributions in accordance with the applicable procedures of DTC.

    3.    <u>Minimum Distributions</u>.

Notwithstanding any other provision of the Plan, neither the Wind-Down Debtors nor the Disbursing Agent shall have any obligation to make distributions of Cash less than $100 in value, and such Claim to which this limitation applies shall be settled and enjoined pursuant to this Article VI and its Holder is forever barred pursuant to this Article VI from asserting Claims against the Debtors, the Wind-Down Debtors, or their property.

    4.    <u>Undeliverable Distributions and Unclaimed Property</u>.

If any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no further distribution to such Holder shall be made unless and until the Disbursing Agent, is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next distribution date without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is first attempted to be made. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, or unclaimed property Laws to the contrary), and the Claim or Interest of any Holder to such property or Interest in property shall be released, settled, compromised, and forever barred.

    5.    <u>Surrender of Cancelled Instruments or Securities</u>.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.I hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument

shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor with third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging Liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired or Reinstated under this Plan.

      6.    <u>Manner of Payment Pursuant to the Plan</u>.

All distributions of Distributable Proceeds to Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Wind-Down Debtor.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors (and any distributions of Securities, if any, may be made in accordance with the customary procedures of DTC).

E.   *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Wind-Down Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Wind-Down Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other similar spousal awards, Liens, and encumbrances.

Any Person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.

F.   *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

G.   *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Orders, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

H.   *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* (National Edition), on the Effective Date.

I.    *Setoffs and Recoupment.*

Except as expressly provided in the Plan, each Wind-Down Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount by the relevant Wind-Down Debtor(s) and Holder of the Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Code or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Wind-Down Debtor or its successor of any and all claims, rights, and Causes of Action that such Wind-Down Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Wind-Down Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.E hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties.

The Debtors or the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Wind-Down Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Wind-Down Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Wind-Down Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holder of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of a Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

K.    *Matters Pertaining to the Agents.*

The Register (as defined in the Credit Agreement) shall be closed as of the Effective Date, the Prepetition Agent shall deliver such Register to the Disbursing Agent within five Business Days after the Effective Date, the Disbursing Agent shall be responsible for all distributions to the Holders of Allowed Prepetition Loan Claims (which shall be made directly by the Disbursing Agent to such Holders in accordance with the Plan and Confirmation Order),

and the Prepetition Agent shall have no responsibility or liability for such distributions. The Register (as defined in the DIP Credit Agreement) shall be closed as of the Effective Date, the DIP Agent shall deliver such Register to the Disbursing Agent within five Business Days after the Effective Date, and the Disbursing Agent shall be responsible for all distributions to the Holders of Allowed DIP Facility Claims (which shall be made directly by the Disbursing Agent to such Holders in accordance with the Plan and Confirmation Order), and the DIP Agent shall have no responsibility or liability for such distributions. From and after the Effective Date, the Prepetition Lenders and the DIP Lenders shall not be permitted to make assignments of record of their loans under the Credit Agreement and DIP Credit Agreement, as applicable.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Allowance of Claims and Interests.*

After the Effective Date, each of the Wind-Down Debtors shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

B. *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Wind-Down Debtors and the Plan Administrator shall have the sole authority to: (i) File and prosecute objections to Claims; (ii) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (iii) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iv) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, the Wind-Down Debtors and the Plan Administrator shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of the Plan.

C. *Disputed Claims Process.*

If the Wind-Down Debtors or the Plan Administrator dispute any Proof of Claim that is Filed on account of an Unimpaired Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided* that the Wind-Down Debtors or the Plan Administrator, as applicable, or the Holder of such Claim may elect to have the validity or amount of any Claim adjudicated by the Bankruptcy Court instead. If a Holder makes such an election, the Bankruptcy Court shall apply the Law that would have governed the dispute if the Chapter 11 Cases had not been Filed.

If the Wind-Down Debtors dispute any Impaired Claim that is not Allowed as of the Effective Date pursuant to Article III.B or a Final Order entered by the Bankruptcy Court (which may include the Confirmation Order), the Wind-Down Debtors or the Plan Administrator, as applicable, may File an objection with the Bankruptcy Court, in which case such dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

D. *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable Law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason,

regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest and does not provide otherwise, such estimated amounts shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the applicable Wind-Down Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven days after the date on which such Claim or Interest is estimated. Each of the foregoing Claims or Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.   *Adjustment to Claims or Interests Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be a adjusted or expunged on the Claims Register by the Wind-Down Debtors or the Plan Administrator without the Wind-Down Debtors or the Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.   *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the later of (a) 180 days after the Effective Date and (b) such other period of limitations as may be specifically filed by the Wind-Down Debtors, or by a Final Order of the Bankruptcy Court for objecting to such Claims.

G.   *Reservation of Rights to Object to Claims.*

The failure of the Debtors or the Wind-Down Debtors, as applicable, to object to any Claim shall not be construed as an admission to the validity or amount of any such Claim, any portion thereof, or any other claim related thereto, whether or not such claim is asserted in any currently pending or subsequently initiated proceeding, and shall be without prejudice to the right of the Debtors or the Wind-Down Debtors, as applicable, to contest, challenge the validity of, or otherwise defend against any such claim in the Bankruptcy Court or non-bankruptcy forum.

H.   *Disallowance of Claims.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Wind-Down Debtors allege is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed if: (i) the Entity, on the one hand, and the Debtors or the Wind-Down Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (ii) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Except as otherwise provided herein or as agreed to by the Debtors or the Wind-Down Debtors, any and all Proofs of Claims Filed after the Bar Date or the Administrative Claims Bar Date, as applicable, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or**

approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

I.     *Amendments to Claims or Interests.*

On or after the Effective Date, no Claim or Interest shall be Filed or amended without the prior authorization of the Bankruptcy Court or the Wind-Down Debtors and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

J.     *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and any payment or distribution shall be made on account of such undisputed amount.

K.     *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

L.     *Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the Debtor(s) obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Settlement, Compromise, and Release of Claims.*

Pursuant to the Bankruptcy Code and Bankruptcy Rules and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Intercompany Claims resolved or compromised after the Effective Date by the Debtors, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities, of Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to service performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representation or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right,

or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such Claim or Interest has accepted the Plan.

B.    *Release of Liens.*

**Except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Wind-Down Debtors.  Any Holder of such Secured Claim (and the applicable agents of such Holder) shall be authorized and directed, at the sole cost and expense of the Wind-Down Debtors, to release any Collateral or other property of any Debtor (including any cash Collateral and possessory Collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Liens and/or security interest, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interest.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interest to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall, at the Wind-Down Debtors' sole cost and expense, take any and all steps reasonably requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.    *Releases by the Debtors.*

**Except as otherwise specifically provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, the Wind-Down Debtors, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Credit Agreement, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their Non-Debtor Affiliates, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Conditional Disclosure Statement Order, the DIP Documents, the Plan, or any Sale Transaction Documentation, contract, instrument, release, or other agreement or document**

(including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Disclosure Statement, the Conditional Disclosure Statement Order, the DIP Documents, or the Sale Transaction Documentation, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Sale Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action or the Schedule of Reserved Claims.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Sale Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

D. *Releases by the Releasing Parties.*

Except as otherwise expressly set forth in this Plan, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Credit Agreement, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Conditional Disclosure Statement Order, the DIP Documents, the Prepetition Credit Documents, the Plan, or any Sale Transaction Documentation, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Disclosure Statement, the Conditional Disclosure Statement Order, the DIP Documents, or the Sale Transaction Documentation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except

as may be expressly amended or modified by the Plan) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Sale Transaction Documentation, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Sale Transactions (including serving as the Stalking Horse Bidder), implementing the Plan, providing postpetition financing in accordance with the DIP Documents, and funding the Wind-Down Amount; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in this Article VIII.D may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action.

E.  *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, from the Petition Date through the Effective Date, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of related prepetition transactions, the Plan, the Confirmation Order, the Disclosure Statement, the Conditional Disclosure Statement Order, the DIP Documents, the Prepetition Credit Documents, and any Sale Transaction Documentation, contract, instrument, release or other agreement or document created or entered into in connection with the Plan, the Confirmation Order, the Disclosure Statement, the Conditional Disclosure Statement Order, the DIP Documents, the Sale Transaction Documentation, the Filing of the Chapter 11 Cases, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of

acceptances or rejections of the Plan, or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity or any post-Effective Date obligation under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.  *Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties: (i) commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has timely Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related thereto, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with Confirmation, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

G.  *Protection Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors or another Entity with whom the Wind-Down Debtors have been associated, solely because the Wind-Down Debtors have been debtors under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.  *Document Retention*.

On and after the Effective Date, the Wind-Down Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended and modified, or supplemented by the Wind-Down Debtors, so long as such alteration, amendment, modification, or supplement is not inconsistent with the state law or regulations.

I.  *Reimbursement or Contribution*.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.  *Conditions Precedent to the Effective Date*.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B hereof:

1. the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal;

2. the Bankruptcy Court shall have entered the Sale Orders and the Sale Orders shall remain in full force and effect;

3. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

4. the Definitive Documents shall contain terms and conditions consistent in all material respects with the Plan;

5. all Professional fees and expenses of retained Professionals that require the Bankruptcy Court's approval shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in a Professional Fee Escrow Account pending the Bankruptcy Court's approval of such fees and expenses;

6. the Closing (as such term is defined and described in the Sale Transaction Documentation) shall have occurred;

7. the DIP Orders shall have been entered by the Bankruptcy Court and shall remain in full force and effect and become Final Orders;

8. the Wind-Down Budget shall have been funded in the Wind-Down Amount; and

9. all Restructuring Expenses and all other fees and expenses owing to the Agents, the DIP Lenders, and the Prepetition Lenders under the DIP Orders, shall have been paid in full in Cash, which may occur concurrently with the Effective Date.

B.    *Waiver of Conditions.*

Except as otherwise specified in the Plan, any one or more of the conditions to Consummation set forth in this Article IX may be waived by the Debtors, with the consent of the Required Lenders (as defined in the DIP Credit Agreement), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; *provided* that the condition set forth in Article IX.A.6 may not be waived without the consent of the Stalking Horse Purchaser and the condition set forth in Article IX.A.9 may not be waived without the consent of the parties affected thereby.

C.    *Effect of Failure of Conditions to the Effective Date.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

D.    *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, with the consent of the Required Lenders (as defined in the DIP Credit Agreement), whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that, solely to the extent that such modification relates to Article IV.B of this Plan, any such modifications must be agreed to by the Settling Parties.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans.  If the Debtors revoke or withdraw the Plan or if Confirmation or Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; *provided* that so long as the Debtors are in compliance with the Case Milestones, the revocation of the Plan, or the failure to confirm or consummate the Plan,

shall not result in the termination of the Committee Settlement; and (iii) nothing contained in the Plan shall, (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

A.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

B.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

C.      resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Wind-Down Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

D.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

E.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

F.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

G.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created ore entered into in connection with the Plan, the Confirmation Order, or the Disclosure Statement;

H.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

I.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

J.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

K. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement or enforce such releases, injunctions, and other provisions;

L. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI;

M. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

N. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

O. adjudicate any and all disputes arising from or relating to distributions under the Plan;

P. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

Q. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

R. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

S. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

T. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpation, injunctions, and releases granted in the Plan, including under Article IX hereof, regardless of whether such termination occurred prior to or after the Effective Date;

U. enforce all orders previously entered by the Bankruptcy Court; and

V. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B. *Additional Documents*.

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Wind-Down Debtors, as applicable, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights*.

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to Holders of Claims or Interests prior to the Effective Date.

D. *Successors and Assigns*.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E. *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| If to the Debtors: | If to the Agent: |
|---|---|
| Digital Media Solutions, Inc.<br>4800 140th Ave N, Suite #101<br>Clearwater, FL 33762<br>Attention: Tony Saldana<br>Email address: tsaldana@dmsgroup.com<br><br>    with copies to:<br><br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Attention: Joshua A. Sussberg, P.C.; Elizabeth H. Jones<br>Email address: joshua.sussberg@kirkland.com<br>         elizabeth.jones@kirkland.com<br><br>    -and-<br><br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Attention: Alexandra F. Schwarzman, P.C.<br>Email address: alexandra.schwarzman@kirkland.com | Ankura Trust Company, LLC<br>140 Sherman Street, 4th Floor<br>Fairfield, CT 06824<br>Attention: Gayani Crawford; Beth Micena; Krista Gulalo<br>Email address: gayani.crawford@ankura.com<br>         beth.micena@ankura.com<br>         krista.gulalo@ankura.com<br><br>    with copies to:<br><br>Ropes & Gray LLP<br>1211 Avenue of the Americas,<br>New York, NY 10036-8704<br>Attention: Mark Somerstein; Patricia Chen<br>Email address: mark.somerstein@ropesgray.com<br>         patricia.chen@ropesgray.com |

| If to the Committee: | If to the U.S. Trustee: |
|---|---|
| Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019-6099<br>Attention:  Brian S. Lennon; James H. Burbage<br>Email address:  blennon@willkie.com<br>jburbage@willkie.com<br><br>-with copies to-<br><br>Venable LLP<br>151 W 42nd St<br>New York, NY 10036<br>Attention:  Jeffrey S. Sabin; Andrew J. Currie<br>Email address:  jssabin@venable.com<br>ajcurrie@venable.com | Office of the U.S. Trustee for the Southern District of Texas<br>Suite 3516<br>Houston, TX 77002<br>Attention:  Jana Whitworth; Andrew Jimenez<br>Email address:  jana.whitworth@usdoj.gov<br>andrew.jimenez@usdoj.gov |
| **If to the DIP Lenders** | |
| Ropes & Gray LLP<br>1211 Avenue of the Americas,<br>New York, NY 10036-8704<br>Attention: Benjamin M. Rhode; Eric P. Schriesheim<br>Email address:  benjamin.rhode@ropesgray.com<br>eric.schriesheim@ropesgray.com | |

After the Effective Date, the Wind-Down Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Wind-Down Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

F.    *Term of Injunctions or Stays*.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.    *Entire Agreement*.

Except as otherwise indicated, and without limiting the effectiveness of the Plan, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    *Plan Supplement*.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website https://omniagentsolutions.com/DMS or the Bankruptcy Court's website at https://ecf.txsd.usccourts.gov/.  To the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan Supplement

document or exhibit shall control (unless stated otherwise in such Plan Supplement document or exhibit or in the Confirmation Order).

I.    *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Wind-Down Debtors, as applicable; and (iii) nonseverable and mutually dependent.

J.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1123(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore no such parties nor individuals will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan.

K.    *Closing of the Chapter 11 Cases.*

The Wind-Down Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

L.    *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

M.    *Creditor Default.*

An act or omission by a Holder of a Claim or Interest or the Purchasers in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the Plan Administrator may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Plan Administrator in remedying such default. Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (a) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Plan Administrator in an amount, including interest, if applicable, to compensate the Wind-Down Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

N.   *Removal or Abandonment of Third Parties' Property.*

Nothing in the Plan shall impose upon the Wind-Down Debtors any obligation to store or protect any third party's property, all of which property will be deemed abandoned and surrendered to the Wind-Down Debtors if such property has not been removed (by its owner in a commercially reasonable manner, and with insurance to cover any damage from such removal) from any real property owned or leased by the Wind-Down Debtors within 45 days after Confirmation of the Plan.  Following the abandonment and surrender of any such property, the Plan Administrator may sell, transfer, assign, scrap, abandon, or otherwise dispose of such property and retain any proceeds resulting therefrom.

*[Remainder of page intentionally left blank.]*

Respectfully submitted,

Dated:  December 9, 2024

DMS Inc.
on behalf of itself and all other Debtors

_/s/ Joe Marinucci_

| | |
|---|---|
| Name: | Joe Marinucci |
| Title: | Chief Executive Officer |
| Company: | Digital Media Solutions, Inc. |

**<u>Exhibit B</u>**

**Confirmation Order and Effective Date Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIGITAL MEDIA SOLUTIONS, INC., *et al.*,[1] | ) Case No. 24-90468 (ARP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (I) ENTRY OF AN ORDER APPROVING
THE DEBTORS' DISCLOSURE STATEMENT AND THE
JOINT CHAPTER 11 PLAN OF DIGITAL MEDIA SOLUTIONS, INC.
AND ITS DEBTOR AFFILIATES AND (II) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on January 15, 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *Joint Chapter 11 Plan of Digital Media Solutions, Inc. and Its Debtor Affiliates* [Docket No. 521] (as amended, supplemented, or otherwise modified from time to time, the "Plan") of the above-captioned debtors and debtors in possession (the "Debtors").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date occurred on [●], 2025. Each of the conditions precedent to consummation of the Plan enumerated in Article IX has been satisfied or waived in accordance with the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order, the Plan, and copies of all documents filed in these Chapter 11 Cases are available free of charge by visiting https://omniagentsolutions.com/DMS and are on file with the Clerk of the Bankruptcy Court and may be reviewed during the regular hours of the Bankruptcy Court or online through the Bankruptcy Court's internet website at http://ecf.txsb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that the terms of the Confirmation Order and the Plan (which, for the avoidance of doubt, includes the Plan Supplement and all exhibits and documents related thereto) are binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/DMS.  The location of Debtor Digital Media Solutions, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 4800 140th Avenue North, Suite 101, Clearwater, Florida 33762.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Order.

accepted the Plan); all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; each Entity acquiring property under the Plan; and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** all requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 60 days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.

*[Remainder of page intentionally left blank]*

Houston, Texas
Dated:  [●], 2025

/s/  *DRAFT*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 226-6248
Email:          jhiggins@porterhedges.com
                sjohnson@porterhedges.com
                myoung-john@porterhedges.com
                jkeefe@porterhedges.com

*Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Elizabeth H. Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                elizabeth.jones@kirkland.com

-and-

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*